THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS, | § § § § § § § § § | |
| *Plaintiffs,* | § § | CIVIL ACTION NO. 21-1089 |
| v. | § § | |
| JOHN B. SCOTT, in his official capacity as the Secretary of State of the State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas, | § § § § § § | |
| *Defendants.* | § § | |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY

OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA;

KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS, IV; MARK TIPPETTS; and

LIBERTARIAN PARTY OF TEXAS file their *Complaint for Declaratory and Injunctive Relief*

as follows:

**STATEMENT & RELIEF REQUESTED**

1.      Section 181.0311 of the Texas Election Code is unconstitutional on its own and

operating through other provisions of the code. It is unconstitutional on its face and as applied to

Plaintiffs. It severely infringes on Plaintiffs' rights of free speech, association, and equal

protection. It serves no legitimate state purpose. Defendants should be enjoined from enforcing it.

## JURISDICTION AND VENUE

2.      This Court has personal jurisdiction over the Defendants because they are officials of Texas, residing in Texas.

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, and 1357; 42 U.S.C. § 1983; and 52 U.S.C. § 10301 *et seq*.

4.      Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure.

5.      Jurisdiction for Plaintiffs' claim for costs and attorney fees is based upon Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and 52 U.S.C. § 10310(e).

6.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims in this case occurred in the Western District of Texas, and Defendants are state officials who maintain an office in Austin, Texas. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

7.      Plaintiff MARK ASH resides in Harris County, Texas, where he is registered to vote and intends to remain and vote in future elections. Ash ran for election to serve as the Place 1, Chief Justice of the Texas Supreme Court as the LPTexas nominee in 2020, and he also ran for Judge, Place 8, Texas Court of Criminal Appeals as the LPTexas nominee in 2018. Ash wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from

attempting to do so. Ash seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention or nomination petition, and he is harmed by the lack of such candidates on Texas's general election ballot.

8.      Plaintiff STEPHANIE BERLIN resides in Bexar County, Texas, where she is registered to vote and intends to remain and vote in future elections. Berlin ran for election to serve as the District 5 representative to the Texas State Board of Education as the LPTexas nominee in 2020. Berlin wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill her from attempting to do so. Berlin seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention or nomination petition, and she is harmed by the lack of such candidates on Texas's general election ballot.

9.      Plaintiff WHITNEY BILYEU, individually and in her official capacity as the Chair of the Libertarian Party of Texas, resides in Harris County, Texas. She currently serves as the chair of LPTexas and as chair of the Libertarian National Committee, the governing body of the Libertarian Party. In her role as chair of LPTexas, pursuant to Texas Election Code § 181.032(b), Bilyeu is responsible for delivering to the Texas Secretary of State a list of the names, addresses, office sought, date of application, and additional required information for all candidates for placement on the ballot across Texas. The challenged law adversely affects her ability to carry out her statutory duties and fulfil her obligations of the Libertarian Party of Texas. Bilyeu seeks to campaign for, speak and associate with, and vote for candidates who must be nominated by convention or nomination petition, and she is harmed by the lack of such candidates on Texas's general election ballot.

10.     Plaintiff JOE BURNES resides in Llano County, Texas, where he is registered to vote and intends to remain and vote in future elections. Burnes ran to serve as Texas's 19th Congressional District representative in the U.S. House of Representatives as the LPTexas nominee in 2020. Burnes wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. Burnes seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention or nomination petition, and he is harmed by the lack of such candidates on Texas's general election ballot.

11.     Plaintiff ARTHUR DIBIANCA resides in Travis County, Texas, where he is registered to vote and intends to remain and vote in future elections. DiBianca ran to serve as Texas' 21st Congressional District representative in the U.S. House of Representatives as the LPTexas nominee in 2020. DiBianca wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. DiBianca seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention or nomination petition, and he is harmed by the lack of such candidates on Texas's general election ballot.

12.     Plaintiff KEVIN HALE resides in Dallas County, Texas, where he is registered to vote and intends to remain and vote in future elections. Hale ran to serve as Texas's 5th Congressional District representative in the U.S. House of Representatives as the LPTexas nominee in 2020. Hale wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. Hale seeks to campaign for, speak and

associate with, and vote for candidates that must be nominated by convention or nomination

petition, and he is harmed by the lack of such candidates on Texas's general election ballot.

13.    Plaintiff DESARAE LINDSEY resides in Henderson County, Texas, where she is

registered to vote and intends to remain and vote in future elections. Lindsey ran to serve as

Texas's 25th Congressional District representative in the U.S. House of Representatives as the

LPTexas nominee in 2018. Lindsey wants to run for office in future elections in Texas as an

LPTexas candidate nominated by convention, but the pre-convention requirements that Texas

imposes upon such candidates chill her from attempting to do so. Lindsey seeks to campaign for,

speak and associate with, and vote for candidates that must be nominated by convention or

nomination petition, and she is harmed by the lack of such candidates on Texas's general

election ballot.

14.    Plaintiff ARTHUR THOMAS, IV, resides in Bexar County, Texas, where he is

registered to vote and intends to remain and vote in future elections. Thomas ran for election to

represent District 119 in the Texas House of Representatives as the LPTexas nominee in 2020.

Thomas wants to run for office in future elections in Texas as an LPTexas candidate nominated

by convention, but the pre-convention requirements that Texas imposes upon such candidates

chill him from attempting to do so. Thomas seeks to campaign for, speak and associate with, and

vote for candidates that must be nominated by convention or nomination petition, and he is

harmed by the lack of such candidates on Texas's general election ballot.

15.    Plaintiff MARK TIPPETTS resides in Travis County, Texas, where he is

registered to vote and intends to remain and vote in future elections. Tippetts ran for Governor of

Texas as the LPTexas nominee in 2018. Tippetts wants to run for office in future elections in

Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements

that Texas imposes upon such candidates chill him from attempting to do so. Tippetts seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention or nomination petition, and he is harmed by the lack of such candidates on Texas's general election ballot.

16.     Plaintiff Libertarian Party of Texas, or LPTexas, is the Texas state affiliate of the national Libertarian Party. LPTexas seeks to elect candidates at all levels of government in Texas. LPTexas is injured by the associational burden and monetary expense that Texas's statutory scheme imposes on convention-nominating political parties, which diminishes its capacity to participate effectively in Texas's electoral process and hinders LPTexas's ability to grow and develop as a political party.

17.     Defendant John B. Scott is sued in his official capacity as the Secretary of State of Texas. Mr. Scott is "the chief election officers of the state," Tex. Elec. Code § 31.001(a), and is required to "obtain and maintain uniformity in the application, operation, and interpretation of" Texas election laws, such as by issuing directives and instructions to all state and local authorities having duties in the administration of these laws, *id.* § 31.003. As Secretary of State, Mr. Scott is empowered to remedy voting rights violations by ordering any official to correct conduct that "impedes the free exercise of a citizen's voting rights." *Id.* § 31.005(b). Mr. Scott prescribes the forms used for petitions in lieu of the filing fee, *see id.* §§ 172.021-.024 & 181.0311. A political party wishing to nominate candidates must register with Mr. Scott in a manner he prescribes, sets the deadlines for payment of the filing fee, makes other rules relating to the nominations, and must certify to Mr. Scott the name of each candidate who has qualified for placement on the general election ballot.

18.     Defendant Jose A. "Joe" Esparza is the Deputy Secretary of State of Texas. In the Secretary's absence, the Deputy Secretary shall perform the duties prescribed by law to the Secretary of State. Tex. Gov't Code § 405.004.

## **FACTUAL ALLEGATIONS**

### *Primary Parties/Parties in Power*

19.     In Texas, political parties that received at least 20 percent of the vote in the last gubernatorial election nominate their candidates by primary election. *See* Tex. Elec. Code § 172.001. For at least the last century, only the Democratic Party and Republican Party—the two parties in power—have qualified as "Primary Parties."

20.     To be entitled to a place on the general primary election ballot, Primary Party candidates must make an application for a place on the ballot. Tex. Elec. Code § 172.021(a). As part of that, Primary Party candidates are required to: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code §§ 173.031-173.034. The state (run by members of the Primary Parties) justifies this admitted infringement by the need for candidates to show a modicum of support to prevent ballot overcrowding.

21.     The filing fees paid by the Primary Party candidates are *paid to the Primary Party itself* and are used to reimburse the Primary Party for the costs it incurs "in connection with the primary election."[1] *See* Tex. Elec. Code §§ 173.033-.034. The primary elections themselves are largely paid for with taxpayer funds. *See* Tex. Elec. Code § 173.001. Because the state runs the

---

[1] Some of the fees are retained by the party and some are remitted to the Secretary of State for use in the primary fund. *See* Tex. Elec. Code §§ 173.061-173.063.

primary election, its exercise of oversight requirements of the payment of a filing fee or petition in lieu thereof, to borrow a phrase from the state, "makes good sense."

22.     For the Primary Parties, access to the general election ballot is determined by the outcome of the primary election and the certification of its results. *See* Tex. Elec. Code § 172.122(a). The winners of each primary race are designated as the party's nominee, and the nominees are placed on the general election ballot.[2] *See* Tex. Elec. Code §§ 172.116; 172.117(a); 172.120(a),(h); 172.122.

### *Ballot-Qualified Convention Parties*

23.     In contrast to the Primary Parties, all other political parties, i.e., those that are not required or authorized by Texas Election Code to nominate candidates by primary election, *must* nominate their candidates by convention. *See* Tex. Elec. Code §§ 181.002, 181.003, 172.002. A Convention Party is entitled to have its candidates placed on the general election ballot if, within the last five years, one of its statewide candidates receives a number of votes equal to at least two percent of the total number of votes received by all candidates for that office. *See* Tex. Elec. Code § 181.005(c). That is, after meeting such requirements, it becomes a ballot-qualified Convention Party ("Qualified Convention Party"). Under this construct, the State has protected its legitimate interests—having a party demonstrate a modicum of support for both the party and its candidates—because, coming out of a convention, that party can only add *one* candidate to each race on the general election ballot. This also eliminates any danger of ballot overcrowding and voter confusion.

---

[2]  The Primary Parties do hold conventions, but not for the purpose of nominating their candidates (except for President and Vice President).

24.     To be eligible for nomination at a convention, a candidate must file an application with the Secretary of State, which contains the information necessary to show that the candidate is eligible for public office should that candidate win election. *See* Tex. Elec. Code §§ 141.001 & 181.031(a). Plaintiffs do not challenge this requirement.

25.     The Texas Supreme Court has explained that applications for nomination by convention are not applications for a place on any ballot in the primary or general election, but merely are a prerequisite to be eligible for nomination at a convention. That is, the Texas legislature has designed primary elections and nominating conventions to be two distinct things.

26.     For political parties subject to the convention process, the associational rights of the party and its candidates are extraordinarily important, as the convention involves more than casting a ballot, but is the exclusive manner for associating and selecting candidates for the general election.

### *Unconstitutional Pre-Convention Filing Fee/Petition Requirements*

27.     Until 2019, Qualified Convention Party candidates were not required to pay a filing fee or submit petitions in lieu of such a fee. That "makes good sense," as such candidates did not participate in the primary election process. The "fee or petition" requirement had applied only to Primary Party candidates.

28.     But starting in 2019, the Texas legislature began to impose additional requirements on Convention Party candidates through the passage of H.B. 2504 (86th Leg. R), codified as Texas Election Code § 141.041(a) (repealed). That legislation mandated that to appear on the general election ballot in the 2020 cycle, LPTexas candidates would be required to either: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code §

141.041(a) (repealed). The state's purpose in this new law was to "standardize filing fee requirements for all parties and candidates to have their name placed on the ballot."[3] In fact, the state anticipated it would collect $230,000 from the new filing fees per cycle.[4] At best, the State's motivation appears revenue-related, as there is nothing in the legislative record or otherwise to indicate that LPTexas or other Convention Parties were nominating slates of unqualified candidates or any other nominating irregularities.

29.     Many of the LPTexas candidates in 2020 did not pay the filing fee or submit petitions on the grounds that the law was unconstitutional. Litigation ensued around the time of the general election. Almost every Republican in the state house sued LPTexas and its candidates, claiming that they were not "qualified" under Texas Election Code §141.001 to be on the ballot. The LPTexas candidates asserted that the Republicans were actually challenging eligibility under a different part of the Election Code, Chapter 145, and therefore the challenge was too late.

30.     In *In re Texas House Republican Caucus PAC, et al.*, the Supreme Court of Texas ultimately concluded that the imposition of a filing fee was an "eligibility" requirement, that the deadline for a Chapter 145 challenge removing a candidate from the ballot had passed, and as a result, the LPTexas candidates remained on the ballot. Although none of the LPTexas candidates won election to office, LPTexas received enough votes to remain as a Qualified Convention Party, and thus it is entitled to place its candidates on the general election ballot without meeting the separate eligibility requirements of Texas Election Code § 181.005(a).

---

[3] *See* S.B. 2093 (87th Leg.- Reg.); Bill Analysis;
https://capitol.texas.gov/tlodocs/87R/analysis/pdf/SB02093F.pdf#navpanes=0

[4] H.B. 2504 (86th Leg); https://capitol.texas.gov/tlodocs/86R/fiscalnotes/pdf/HB02504E.pdf#navpanes=0

31.     In the next Legislative session, lawmakers from the Primary Parties took measures to impose more severe restrictions upon Qualified Convention Parties like LPTexas and their candidates. This was done under the guise of moving the previous offending legislation to a new section of the Election Code.

32.     On May 29, 2021, Governor Greg Abbott signed into law S.B. 2093, which substantively imposes new and additional obligations beyond Texas's then-existing eligibility requirements, as follows:

> SECTION 1. Section 141.041, Election Code, is transferred to Subchapter B, Chapter 181, Election Code, redesignated as Section 181.0311, Election Code, and amended to read as follows:
>
> Sec. 181.0311 [141.041]. FILING FEE OR PETITION REQUIRED [TO APPEAR ON BALLOT FOR GENERAL ELECTION FOR STATE AND COUNTY OFFICERS]. (a) In addition to any other requirements, [to be eligible] to be considered for nomination by convention [placed on the ballot for the general election for state and county officers], a candidate [who is nominated by convention under Chapter 181 or 182] must:
>
> (1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or
>
> (2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.
>
> (b) The amount of the filing fee is the amount prescribed by Section 172.024 for a candidate

for nomination for the same office in a
general primary election.

(c) A filing fee received by the secretary of
state shall be deposited in the state treasury
to the credit of the general revenue fund.

(d) A filing fee received by the county judge
shall be deposited in the county treasury to
the credit of the county general fund.

(e) The minimum number of signatures that must
appear on the petition authorized by
Subsection (a) is the number prescribed by
Section 172.025 to appear on a petition of a
candidate for nomination for the same office
in a general primary election.

(f) The secretary of state shall adopt rules
as necessary to implement this section.

SECTION 2. This Act takes effect September

1, 2021.

Acts 2021, 87th Leg., R.S., Ch. 149 (S.B. 2093). S.B. 2093 is now codified as Texas Election

Code Section 181.0311.

### First & Fourteenth Amendment Violations
### Speech & Association

33.    Set to affect the 2022 election cycle, the new law impermissibly infringes on

Plaintiffs' First Amendment rights of speech and association. More specifically, Texas Election

Code § 181.0311 impermissibly intrudes on Plaintiffs' rights of speech and association under the

First Amendment by prohibiting a candidate from even being *considered for nomination by*

*convention* unless the filing fee or petition requirement has been met months in advance of such

a convention. This effectively makes payment of the filing fee or submission of signed petitions

a prerequisite for a Qualified Convention Party to even think about, much less debate, the merits of an individual candidate for nomination for a particular office at convention.

34.     The alternative "petition in lieu of fee" requirement contained in Texas Election Code § 181.0311 is similarly unconstitutional because it compels voters to take what amounts to a "loyalty oath" that infringes on freedom of speech and association. Tex. Elec. Code § 172.026 mandates that each signatory to a petition will not participate in any other party's primary or convention. As applied to Plaintiffs, the loyalty oath requirement is impermissibly severe.  For example, a registered voter of LPTexas may wish to support the candidacy of a Primary Party candidate by signing a petition, but doing so would cost that individual the right to participate in the LPTexas convention. Simply put, this loyalty oath impermissibly infringes upon one's own freedom of speech at the cost of one's freedom of association without due process. Such a burdensome tradeoff of one's rights is not supported by the interests of the State of Texas.

### *Fourteenth Amendment Violations*
### *Equal Protection & Due Process*

35.     S.B. 2093 further violates Plaintiffs' Fourteenth Amendment rights under the Equal Protection Clause by discriminating against minor political parties, including Qualified Convention Parties, without a compelling state interest justification.

36.      First, the law extends the challenge deadline for convention-nominated candidates beyond the date that LPTexas can replace an ineligible candidate on the general election ballot. By recasting the filing fee—which for the Primary Parties serves as an eligibility requirement—as a form, process, and procedure requirement, the legislature has allowed the Republican and Democratic Parties to cure defects in the filing fees or petitions, but it did not afford the same ability to Plaintiffs.

37.     For Republican and Democrat candidates, the payment of the filing fee is considered an eligibility requirement, which means that if a candidate's eligibility is challenged, that candidate can be removed from the ballot *and replaced* with an eligible candidate prior to the election. Specifically, under Chapter 145 of the Texas Election Code, a candidate's name can be removed from the ballot if he or she withdraws, dies, or is declared ineligible "on or before the 74th day before election day." Tex. Elec. Code § 145.035. The ineligible candidate's political party may then replace the ineligible candidate "not later than 5 p.m. of the 71st day before election day." Tex. Elec. Code § 145.037(e).

38.     But by replacing "to be eligible" with "to be considered," Texas Election Code Section 181.0311 now makes the filing fee and/or petition a "form, process, and procedure" requirement rather than an "eligibility" requirement. This is significant because Texas Election Code § 141.032, which governs review of the applications and notice to candidates of defects, and Section 141.034, which limits the time period for challenging an application, specifically do not apply to a determination of a candidate's eligibility. That is, if an LPTexas candidate did not pay the filing fee or if the submitted petitions in lieu of such fee were inadequate, there is no mechanism for LPTexas to replace the candidate on the general election ballot. Tex. Elec. Code §§ 141.032(f) & 141.034(b). No such penalty applies to the Primary Parties, who retain the option to replace ineligible candidates. Tex. Elec. Code § 145.037(e). There is no legitimate justification for the discrimination against Plaintiffs and their voters. In addition, even if a candidate is declared ineligible after the 75-day deadline, that candidate's votes are still counted and recorded. Tex. Elec. Code § 145.005.

39.     Second, the law impermissibly discriminates as to the use of the filing fees. The filing fees imposed by Texas Election Code § 141.041(a) are the same amount as the filing fees

and signature requirements imposed on candidates seeking to appear on a primary election ballot for the same office. *See* Tex. Elec. Code §§ 141.041(b), (e); 172.024-25.

40.     Logistically, Republicans and Democrats pay their filing fees to their respective party, and that party then uses those fees to reimburse itself for the costs incurred "in connection with the primary election." *See* Tex. Elec. Code §§173.033-.034. Strikingly, LPTexas candidates would be forced by Texas Election Code § 181.0311 to pay their filing fees to the state's general fund, but LPTexas would not receive any of those fees back from the State to defray the cost of its convention process. Instead, LPTexas is left to fund its own convention. Thus, in practice, the filing fee as applied serves as a de facto "poll tax" upon LPTexas candidates rather than as a legitimate gatekeeping mechanism. This discrimination suffered by Plaintiffs is substantial, and it is not justified by any compelling state interest.

41.     While the statute purports to give candidates an alternative to the filing fee, the "petition in lieu of" requirements—burdensome for Republicans and Democrats—are exceptionally burdensome for smaller political parties, like LPTexas, and their candidates. Though at first blush the petition requirements for any candidate seeking election to office might appear to be the same, Plaintiffs suffer the burden created by these restrictions in practice disproportionately than do the Primary Parties' candidates due to fewer potential signatories.

42.     The petition requirements further impermissibly infringe on the rights of association, not only of LPTexas and its candidates, but of the Texas voters themselves. By signing the petition, a voter becomes ineligible to vote in a primary or to *participate* in a convention of any other party. Tex. Elec. Code § 172.026  Before signing the petition in lieu, that Texas voter must take an oath that the voter will not participate in any other party's primary or convention, as follows:

> Sec. 172.027. STATEMENT ON PETITION. The
> following statement must appear at the top of
> each page of a petition to be filed under
> Section 172.021: "I know that the purpose of
> this petition is to entitle (insert
> candidate's name) to have his or her name
> placed on the ballot for the office of (insert
> office title, including any place number or
> other distinguishing number) for the (insert
> political party's name) primary election. I
> understand that by signing this petition I
> become ineligible to vote in a primary
> election or participate in a convention of
> another party, including a party not holding
> a primary election, during the voting year in
> which this primary election is held."

Tex. Elec. Code § 172.027. Prohibiting participation in multiple nomination votes does serve a

legitimate purpose. But there is no state interest so compelling to justify the loyalty oath that it

disenfranchises a voter who exercises the freedom of speech by supporting a candidate's

eligibility for nomination. The practical effect is that it makes it even harder for Convention

Party candidates to meet the statutory alternative to the filing fee.

43.     The filing fee due under Texas Election Code § 181.0311 is to be paid to the State

on or before December 13, 2021. The prior version of the statute—contained in Texas Election

Code § 141.041—did not make the payment of a filing fee a temporal prerequisite to

*consideration* of a candidate for nomination at convention. But now, the burden imposed on

Plaintiffs has increased because the statutory fee is now due *prior to a candidate's consideration*

*for nomination at convention*. Therefore, as applied, this filing fee pre-requirement has a

significant chilling effect on participation by LPTexas's candidates in the party's convention and

on LPTexas itself.

44.     For these reasons, Texas Election Code § 181.0311 imposes impermissible, substantial burdens on the constitutional rights of Plaintiffs and those Texas voters who wish to support LPTexas candidates. The burdens imposed by Texas Election Code § 181.0311, acting alone and through other provisions of the Texas Election Code, are not sufficiently tailored to further any legitimate or compelling state interest.

### *Fourteenth Amendment Violations*
### *Due Process*

45.     Sections 181.031 and 181.0311 violate Plaintiffs' Fourteenth Amendment rights under the Due Process Clause by being unconstitutionally vague and requiring people of common intelligence to guess at what "to be considered for nomination" means.

46.     Sections 181.031 and 181.0311 require potential nominees to file an application and pay a filing fee and/or submit a petition before they can "be considered for nomination by convention[.]" The statutes, however, provide no guidance on what it means to "be considered for nomination" nor do the statutes apply any guidelines on the applicable timeframe for such consideration.

47.     The ambiguity and vagueness of what it means "to be considered for nomination" will naturally lead persons of common intelligence to guess at the statutes' applicability, and therefore will result in inconsistent enforcement. Only the Convention Parties and their candidates will suffer this burden. When persons of common intelligence are compelled to guess at a law's meaning and applicability, due process is violated, and the law is invalid. For example, it is unclear from the text of the statute who, exactly, must be "considering" the potential nomination if the statute applies — the Convention Party, the nominee, or a delegate to the convention.

48.     Similarly, the statutory text defining "considered" is ambiguous as to its application upon a "candidate," i.e., whether it applies to anyone contemplating seeking nomination at convention for office, regardless of the degree of seriousness, or merely to those individuals who have taken steps to declare formally their candidacy.

49.     The references to being "considered for nomination by convention" in Sections 181.031 and 181.0311 are facially vague and provide no notice of what conduct is subject to the statutory application, filing fee, and/or petition, or when those statutory requirements become enforceable. Because of this ambiguity, Sections 181.031 and 181.0311 will result in inconsistent enforcement, violate Plaintiffs' right to due process, and are therefore unconstitutionally invalid.

## <u>COUNT I</u>
### (Violation of Plaintiffs' Rights Guaranteed by the First and Fourteenth Amendments)

50.     Plaintiffs incorporate their factual allegations in support of this count.

51.     Texas Election Code § 181.0311 contains severely burdensome requirements and restrictions on the rights of LPTexas and its candidates who seek nomination by an otherwise Qualified Convention Party in various ways.

52.     By prohibiting that a candidate be "considered" for nomination by convention unless the filing fee and/or petitions in lieu of a filing fee has been met, Section 181.0311 impermissibly intrudes on Plaintiffs' rights of association and speech guaranteed by the First and Fourteenth Amendment to the U.S. Constitution.

53.     Texas Election Code § 181.0311, operating in conjunction with Sections 141.032; 141.034; 141.037; 141.041; 141.062; 145.002; 145.003; 145.005; 145.035; 145.037; 172.024; 172.025; 172.026; 172.027; 172.031; 172.034; 173.001; 173.033; 173.034; 181.005; 181.031; 181.061; 181.066; and 181.067 of the Texas Election Code (collectively, the "Challenged Law"),

imposes substantial or severe burdens on Plaintiffs, and impermissibly restricts ballot access across Texas.

54.     By requiring the payment of a filing fee or submission of petitions in lieu of a filing fee, the Challenged Law has a direct and demonstrable chilling effect on participation by candidates like the individual Plaintiffs in the nomination process that LPTexas otherwise employs as a Qualified Convention Party.

55.     Those burdens thus impose unjustified restrictions on LPTexas itself, its candidates, and ultimately upon the voters who support or may wish to support LPTexas or its potential pool of candidates.

56.     These newly imposed burdens upon a Qualified Convention Party like LPTexas that has met all requirements necessary for automatic ballot access and its candidates are not justified by any legitimate or compelling state interest.

57.     The Challenged Law, facially and as applied to Plaintiffs, causes injury to and violates certain rights guaranteed to Plaintiffs by the First and Fourteenth Amendments to the U.S. Constitution. For these reasons, this Court should declare Tex. Elec. Code § 181.0311 to be unconstitutional on its face and as applied to Plaintiffs.

58.     As a direct and proximate result of Defendants' violation of the Free Speech and Freedom of Association Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and compensatory damages.

## COUNT II
## (Violation of Plaintiffs' Rights Guaranteed by the Due Process & Equal Protection Clauses)

59.     Plaintiffs incorporate their factual allegations in support of this count.

60.     The Challenged Law discriminates between the Primary Party candidates and Qualified Convention Party candidates without justification, and it compels voters to limit their political speech without due process.

61.     The Challenged Law, facially and as applied in conjunction with other provisions of the Texas Election Code, causes injury to and violates rights guaranteed to Plaintiffs by the Equal Protection Clause of the U.S. Constitution.

62.     Those burdens are not justified by any legitimate or compelling state interest.

63.     For these reasons, this Court should declare The Challenged Law to be unconstitutional on its face and as applied to Plaintiffs.

64.     As a direct and proximate result of Defendants' violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, Plaintiffs have suffered irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and compensatory damages.

## COUNT III
## (Cause of Action under 42 U.S.C. § 1983)

65.     Plaintiffs incorporate their factual allegations in support of this count.

66.     In the alternative to their claims seeking declaratory and injunctive relief, Defendants are liable to Plaintiffs under 42 U.S.C. § 1983.

67.     By reason of the aforementioned freedom of speech and associational restrictions, Defendants, under color of law, have deprived Plaintiffs of rights, privileges, or immunities secured by the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

68.     As a direct and proximate consequence of Defendants' unlawful acts, Plaintiffs have suffered or will suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and, in the alternative compensatory damages.

## ATTORNEY FEES

69.     Plaintiffs are entitled to and seek recovery of their costs and reasonable attorney fees pursuant to Federal Rule of Civil Procedure 54, 42 U.S.C. § 1988, and 52 U.S.C. § 10310(e).

## PRAYER

FOR THESE REASONS, Plaintiffs respectfully request that the Court:

a.  Enter a declaratory judgment holding the Challenged Law is an impermissible infringement of Plaintiffs' rights of speech, association, and equal protection guaranteed by the First and Fourteenth Amendments;

b.  Enter a declaratory judgment holding that Texas Election Code Section 181.0311 is unconstitutional on its face and as applied to Plaintiffs;

c.  Enter an order enjoining Defendants from enforcing the Challenged Law against Plaintiffs and any similarly situated party;

d.  Award Plaintiffs their compensatory damages;

e.  Award Plaintiffs their litigation costs and attorneys' fees pursuant to Federal Rule of Civil Procedure 54, 42 U.S.C. § 1988, and 52 U.S.C. § 10310(e);

f.  Retain jurisdiction of this action and grant the Plaintiffs any further relief which may in the discretion of the Court be necessary and proper; and

g.  Award Plaintiffs all other and further relief as the Court deems proper.

\*     \*     \*

Dated: December 1, 2021                    Respectfully submitted,


                                          By: */s/ Jared G. LeBlanc*
                                              Jared G. LeBlanc
                                              Texas Bar No. 24046279
                                              jleblanc@gamb.com

                                              **Attorney-In-Charge**

**OF COUNSEL:**

Adam J. Russ
Texas Bar No. 24109435
aruss@gamb.com
Brandon A. O'Quinn
Texas Bar No. 24092914
boquinn@gamb.com

GORDON, ARATA, MONTGOMERY, BARNETT,
   MCCOLLAM, DUPLANTIS & EAGAN, LLC
2229 San Felipe
Suite 1100
Houston, Texas 77019
Tel.: 713.333.5500

**ATTORNEYS FOR PLAINTIFFS**