THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS, | § § § § § § § § § | |
| *Plaintiffs,* | § § | |
| v. | § § | 1:21-cv-01089-RP |
| JOHN B. SCOTT, in his official capacity as the Secretary of State of the State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas, | § § § § § § | |
| *Defendants.* | § § | |

## PLAINTIFF'S APPLICATION FOR PRELIMINARY INJUNCTION

Pursuant to 42 USC 1983, Rule 65 of the Federal Rules of Civil Procedure and Local Rule CV-65, Plaintiffs WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS (collectively "Plaintiffs") move this Court for the issuance of a preliminary injunction to prevent the enforcement of Texas Election Code § 181.0311 against them in the 2022 election cycle.

## STATEMENT & RELIEF REQUESTED

To preserve the status quo, Plaintiffs respectfully request the Court to enjoin Defendants from enforcing certain unconstitutional requirements that are contained in the recently enacted

filing fee or "petition in lieu of" fee requirements of Texas Election Code § 181.0311. Such fees or petitions were due on December 13, 2021. Some of the Plaintiffs paid the fees in protest; some did not. Section 182.0311 prohibits LPTexas and its members from "considering" candidates for nomination at its conventions who have not paid the filing fee or submitted the requisite number of petitions. The first of these conventions, the precinct conventions, are statutorily required to occur on March 8, 2022.

Enforcement of Sec. 181.0311 as to Plaintiffs is unconstitutionally burdensome under the Supreme Court's *Anderson/Burdick* constitutional framework because, among other things, the pre-convention filing fee or petition in lieu of requirement violates their rights to freedom of speech, freedom of association, and equal protection, as are guaranteed by the First Amendment and Fourteenth Amendment to the United States Constitution. Plaintiffs are entitled to a preliminary injunction, as they are able to satisfy each necessary element needed to be granted injunctive relief.

Plaintiffs now ask this Court to preliminarily enjoin Defendants from enforcing Section 181.0311 until the Court can hold a trial on the merits. Plaintiffs have conferred with the Court and counsel and will be submitting an agreed interim scheduling order for the discovery period and briefing schedule leading up to the hearing, which the Court has indicated will be set for February 24 or 25, 2022.

The factual allegations in this application are supported by the verification of Plaintiff Whitney Bilyeu, attached as **Exhibit A**.

## FACTS

Until 2019, Qualified Convention Party candidates were not required to pay a filing fee or submit petitions in lieu of such a fee. That "makes good sense," as such candidates did not

participate in the primary election process. The "fee or petition" requirement had applied only to Primary Party candidates.

But starting in 2019, the Texas legislature began to impose additional requirements on Convention Party candidates through the passage of H.B. 2504 (86th Leg. R), codified as Texas Election Code § 141.041(a) (repealed). That legislation mandated that to appear on the general election ballot in the 2020 cycle, LPTexas candidates would be required to either: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code § 141.041(a) (repealed). The state's purpose in this new law was to "standardize filing fee requirements for all parties and candidates to have their name placed on the ballot."[1] In fact, the state anticipated it would collect $230,000 from the new filing fees per cycle.[2] At best, the State's motivation appears revenue-related, as there is nothing in the legislative record or otherwise to indicate that LPTexas or other Plaintiffs were nominating slates of unqualified candidates or any other nominating irregularities.

In the next Legislative session, lawmakers from the Primary Parties took measures to impose more severe restrictions upon Plaintiffs—LPTexas and its candidates. This was done under the guise of moving the previous offending legislation to a new section of the Election Code.

On May 29, 2021, Governor Greg Abbott signed into law S.B. 2093, which substantively imposes new and additional obligations beyond Texas's then-existing eligibility requirements, as follows:

---

[1] *See* S.B. 2093 (87th Leg.- Reg.); Bill Analysis; https://capitol.texas.gov/tlodocs/87R/analysis/pdf/SB02093F.pdf#navpanes=0

[2] H.B. 2504 (86th Leg); https://capitol.texas.gov/tlodocs/86R/fiscalnotes/pdf/HB02504E.pdf#navpanes=0

SECTION 1. Section 141.041, Election Code, is transferred to Subchapter B, Chapter 181, Election Code, redesignated as Section 181.0311, Election Code, and amended to read as follows:

Sec. 181.0311 [141.041]. FILING FEE OR PETITION REQUIRED [TO APPEAR ON BALLOT FOR GENERAL ELECTION FOR STATE AND COUNTY OFFICERS]. (a) In addition to any other requirements, [to be eligible] to be considered for nomination by convention [placed on the ballot for the general election for state and county officers], a candidate [who is nominated by convention under Chapter 181 or 182] must:

(1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or

(2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.

(b) The amount of the filing fee is the amount prescribed by Section 172.024 for a candidate for nomination for the same office in a general primary election.

(c) A filing fee received by the secretary of state shall be deposited in the state treasury to the credit of the general revenue fund.

(d) A filing fee received by the county judge shall be deposited in the county treasury to the credit of the county general fund.

(e) The minimum number of signatures that must appear on the petition authorized by Subsection (a) is the number prescribed by Section 172.025 to appear on a petition of a

```
candidate for nomination for the same office
in a general primary election.

(f) The secretary of state shall adopt rules
as necessary to implement this section.

SECTION 2. This Act takes effect September

1, 2021.
```

Acts 2021, 87th Leg., R.S., Ch. 149 (S.B. 2093). S.B. 2093 is now codified as Texas Election

Code Section 181.0311.

### First & Fourteenth Amendment Violations
### Speech & Association

Set to affect the 2022 election cycle, the new law impermissibly infringes on Plaintiffs'

First Amendment rights of speech and association. More specifically, Texas Election Code §

181.0311 impermissibly intrudes on Plaintiffs' rights of speech and association under the First

Amendment by prohibiting a candidate from even being *considered for nomination by*

*convention* unless the filing fee or petition requirement has been met months in advance of such

a convention. This effectively makes payment of the filing fee or submission of signed petitions

a prerequisite for a Qualified Convention Party to even think about, much less debate, the merits

of an individual candidate for nomination for a particular office at convention.

The alternative "petition in lieu of fee" requirement contained in Texas Election Code §

181.0311 is similarly unconstitutional because it compels voters to take what amounts to a

"loyalty oath" that infringes on freedom of speech and association. Tex. Elec. Code § 172.026

mandates that each signatory to a petition will not participate in any other party's primary or

convention. As applied to Plaintiffs, the loyalty oath requirement is impermissibly severe. For

example, a registered voter of LPTexas may wish to support the candidacy of a Primary Party

candidate by signing a petition, but doing so would cost that individual the right to participate in

the LPTexas convention. Simply put, this loyalty oath impermissibly infringes upon one's own freedom of speech at the cost of one's freedom of association without due process. Such a burdensome tradeoff of one's rights is not supported by the interests of the State of Texas.

### Fourteenth Amendment Violations
### Equal Protection & Due Process

S.B. 2093 further violates Plaintiffs' Fourteenth Amendment rights under the Equal Protection Clause by discriminating against minor political parties, including Plaintiffs, without a compelling state interest justification.

First, the law extends the challenge deadline for convention-nominated candidates beyond the date that LPTexas can replace an ineligible candidate on the general election ballot. By recasting the filing fee—which for the Primary Parties serves as an eligibility requirement— as a form, process, and procedure requirement, the legislature has allowed the Republican and Democratic Parties to cure defects in the filing fees or petitions, but it did not afford the same ability to Plaintiffs.

For Republican and Democrat candidates, the payment of the filing fee is considered an eligibility requirement, which means that if a candidate's eligibility is challenged, that candidate can be removed from the ballot *and replaced* with an eligible candidate prior to the election. Specifically, under Chapter 145 of the Texas Election Code, a candidate's name can be removed from the ballot if he or she withdraws, dies, or is declared ineligible "on or before the 74th day before election day." Tex. Elec. Code § 145.035. The ineligible candidate's political party may then replace the ineligible candidate "not later than 5 p.m. of the 71st day before election day." Tex. Elec. Code § 145.037(e).

But by replacing "to be eligible" with "to be considered," Texas Election Code Section 181.0311 now makes the filing fee and/or petition a "form, process, and procedure" requirement

rather than an "eligibility" requirement. This is significant because Texas Election Code §
141.032, which governs review of the applications and notice to candidates of defects, and
Section 141.034, which limits the time period for challenging an application, specifically do not
apply to a determination of a candidate's eligibility. That is, if an LPTexas candidate did not pay
the filing fee or if the submitted petitions in lieu of such fee were inadequate, there is no
mechanism for LPTexas to replace the candidate on the general election ballot. Tex. Elec. Code
§§ 141.032(f) & 141.034(b). No such penalty applies to the Primary Parties, who retain the
option to replace ineligible candidates. Tex. Elec. Code § 145.037(e). There is no legitimate
justification for the discrimination against Plaintiffs and their voters. In addition, even if a
candidate is declared ineligible after the 75-day deadline, that candidate's votes are still counted
and recorded. Tex. Elec. Code § 145.005.

## STANDARD OF REVIEW

Plaintiffs seek injunctive relief for the purpose "of preserving the status quo and
preventing [the] irreparable harm" that will occur if Defendants enforce the unconstitutional
filing fee or petition requirements contained in Tex. Elec. Code § 181.0311. *Granny Goose
Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*, 415 U.S.
423, 439 (1974).

Courts may enter a temporary restraining order or a preliminary injunction as a means of
preventing harm to the movant before the court can fully adjudicate the claims in dispute. Fed. R.
Civ. P. 65(a), (b). "The standard for granting either a TRO or a preliminary injunction is the
same." *Moore v. Kempthorne,* 464 F. Supp. 2d 519, 525 (E.D. Va. 2006) (citation omitted); see
also *May v. Wells Fargo Home Mortg.,* Case No. 3:12-cv-4597, 2013 WL 2367769, at *1 (N.D.
Tex. May 30, 2013) ("A TRO is simply a highly accelerated and temporary form of preliminary

injunctive relief, and requires the party seeking such relief to establish the same four elements for obtaining a preliminary injunction." (citation omitted)).

The movant seeking either form of injunctive relief bears the burden to establish that (1) it is likely to succeed on the merits of its case; (2) it is likely to suffer irreparable harm in the absence of injunctive relief; (3) the threatened injury outweighs any damages the injunction may cause defendant; and (4) an injunction would be in the public interest. *See Jackson Women's Health Org. v. Currier,* 760 F.3d 448, 452 (5th Cir. 2014). When the Government is a party, the last two factors merge. See *Nken v. Holder*, 556 U.S. 418, 435 (2009). "None of [these] four requirements has a fixed quantitative value." *Monumental Task Comm., Inc. v. Foxx,* 157 F. Supp. 3d 573, 582 (E.D. La. 2016) (citing *Texas v. Seatrain Int'l, S.A.*, 518 F.2d 175, 180 (5th Cir. 1975)). Instead, "a sliding scale is utilized, which takes into account the intensity of each in a given calculus." *Id.* Thus, in applying the four-part test, the Court must conduct "a delicate balancing," which weighs "the probabilities of ultimate success at final hearing with the consequences of immediate irreparable injury that possibly could flow from the denial of preliminary relief." *Id.* Ultimately, whether to grant a request for injunctive relief "is left to the sound discretion" of the Court. *Nianga v. Wolfe,* 435 F. Supp. 3d 739, 743 (N.D. Tex. 2020).

## <u>ARGUMENT & AUTHORITY</u>

Plaintiffs satisfy all requirements for the issuance of a preliminary injunction, as they are able to demonstrate "(1) a substantial likelihood that [they] will prevail on the merits, (2) a substantial threat that [they] will suffer irreparable injury if the injunction is not granted, (3) [their] threatened injury outweighs the threatened harm to the party whom [they] seek[] to enjoin, and (4) granting the preliminary injunction will not disserve the public interest." *Planned Parenthood of Gulf Coast, Inc. v. Gee*, 862 F.3d 445, 457 (5th Cir. 2017).

Unless Tex. Elec. Code § 181.0311 is enjoined, Plaintiffs will be injured by Texas's unconstitutional infringements upon their First Amendment and Fourteenth Amendment rights to freedom of association, freedom of speech, and equal protection that are protected under the law. Those imminent and irreparable injuries to the interests of Plaintiffs—their Constitutional rights—outweigh any conceivable harm that Texas could claim should this Court enjoin enforcement of an unconstitutional law.

**A.  Plaintiffs Are Likely To Succeed On The Merits Because Section 181.0311 Violates Their First And Fourteenth Amendment Rights To Freedom Of Speech, Association, And Equal Protection.**

"As long as the court cannot say there is no likelihood of prevailing on the merits but finds the factor of substantial likelihood of success present to some degree, then the party seeking the injunction has met its burden." *Family Rehab., Inc. v. Azar*, No. 3:17-cv-3008, 2018 WL 3155911, at *3 (N.D. Tex. June 28, 2018) (citing *Productos Carnic, S.A. v. Cent. Amer. Beef & Seafood Trading Co.,* 621 F.2d 683, 686 (5th Cir. 1980)).

Plaintiffs are substantially likely to succeed on the merits because Section 181.0311 violates their First and Fourteenth Amendment rights of speech, association, and equal protection in the following ways. By prohibiting that a candidate be "considered" for nomination by convention unless the filing fee and/or petitions in lieu of a filing fee has been met, Section 181.0311 impermissibly intrudes on Plaintiffs' rights of freedom of association, freedom of speech, and equal protection guaranteed by the First and Fourteenth Amendment to the U.S. Constitution. The law further impermissibly violates the rights and guaranties of the First and Fourteenth Amendments by discriminating against Plaintiffs as to the use and impact of the filing fees. As a substantial likelihood of Plaintiffs' success on the merits exists, a preliminary injunction should be issued to prevent irreparable harm.

1.     **Sec. 182.0311 violates equal protection because the fees paid by Republicans and Democrats subsidize their primary elections; the fees Plaintiffs pay are a tax and go to the general fund.**

Second, the law impermissibly discriminates as to the use of the filing fees. The filing fees imposed by Texas Election Code § 141.041(a) are the same amount as the filing fees and signature requirements imposed on candidates seeking to appear on a primary election ballot for the same office. *See* Tex. Elec. Code §§ 141.041(b), (e); 172.024-25.

Logistically, Republicans and Democrats pay their filing fees to their respective party, and that party then uses those fees to reimburse itself for the costs incurred "in connection with the primary election." *See* Tex. Elec. Code §§173.033-.034. Strikingly, LPTexas candidates would be forced by Texas Election Code § 181.0311 to pay their filing fees to the state's general fund, but LPTexas would not receive any of those fees back from the State to defray the cost of its convention process. Instead, LPTexas is left to fund its own convention. Thus, in practice, the filing fee as applied serves as a de facto "poll tax" upon LPTexas candidates rather than as a legitimate gatekeeping mechanism. This discrimination suffered by Plaintiffs is substantial, and it is not justified by any compelling state interest.

2.     **Sec. 181.0311's imposition of a filing fee or petition *before* a candidate for nomination at convention may be "considered" infringes on First Amendment rights of freedom of speech and freedom of association of LPTexas and its candidates, and it affects the voting of all Texans.**

To succeed on the merits of a First Amendment challenge, Plaintiffs must first categorize the type of restriction. If it is content based, the regulation must satisfy strict scrutiny and be narrowly tailored to a compelling government interest. *Gbalazeh v. City of Dall.*, No. 3:18-CV-0076-N, 2019 U.S. Dist. LEXIS 106456, at *2-3 (N.D. Tex. June 25, 2019), citing *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2227, 192 L. Ed. 2d 236 (2015). If it is content neutral,

the ordinance must only satisfy intermediate scrutiny. *Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 497 (5th Cir. 1989).

The United States Supreme Court explained the bounds of governmental limits that may be imposed on political speech in its landmark decision, *Citizens United v. FEC*, 558 U.S. 310, 339-40, 130 S. Ct. 876, 898-99 (2010) ("Laws that burden political speech are "subject to strict scrutiny," which requires the Government to prove that the restriction "furthers a compelling interest and is narrowly tailored to achieve that interest."). Strict scrutiny must apply when evaluating the Texas Election Code regulations contained in Section 181.0311.

For nearly five decades, parties nominating by convention in Texas have exercised their rights to association and free speech through the convention process to select from among a pool of interested and qualified candidates who, if selected, would be placed on the general election ballot for offices across Texas. But Section 181.0311 now creates a temporal restriction on that process, as it imposes, for the first time ever, a "pay to play" fee or signed petition requirement on Plaintiffs and their candidates where none previously existed. The effect of noncompliance with these new pre-convention requirements affects political speech and right to freedom of association of Plaintiffs and their candidates in the most severe manner possible—it silences them.

The true aim of the new statute becomes apparent in practice. If the law is enforced against noncompliant Convention Party candidates, the filing fee or petition in lieu of filing fee requirement would expressly prohibit an interested and otherwise qualified candidate seeking nomination from being "considered"—however that phrase is to be interpreted—by a Convention Party at its convention *unless* the requirement has been met months *before* such that convention takes place. The requirements of Section 181.0311 are not narrowly tailored, as they create an

impermissible chilling effect upon the potential pool of candidates available for nomination at convention. That, in turn, affects not only the rights of the potential candidates, but the "speech" and association of the Plaintiffs themselves and Texas voters statewide.

At its core, Section 181.0311 prohibits noncompliant candidates from any political speechmaking at convention, or even being considered, whatsoever. No state interest is furthered by this new roadblock. Nor can the State merely suggest that Section 181.0311 furthers an end goal of creating uniformity with the Primary Parties, as Plaintiffs do not take part in the primary election process like Primary Parties do. The conventions are designed by the Texas Election Code to be the sole manner for non-Primary Parties to determine their candidates for the general election ballot. Critical to that process is the ability to associate with and speak about such candidates. Accordingly, the rights of Plaintiffs becomes infringed.

For all of these reasons, this Court should grant Plaintiffs the requested injunctive relief to prohibit enforcement of Section 181.0311 and the infringement that will harm Plaintiffs' constitutional rights.

> **3.   Application of filing fees violates Equal Protection as the Primary Parties' filing fee funds their parties and the primary elections, while the Plaintiffs' filing fee is a tax directed to the state's general fund, leaving Plaintiffs to separately fund their conventions.**

Texas Election Code § 181.0311 also impermissibly treats Plaintiffs and their candidates unequally than it does the two Primary Parties and their candidates. Although the filing fees imposed by Texas Election Code § 181.0311 are the same dollar amount as the filing fees imposed on Primary Party candidates seeking to appear on a primary election ballot, the financial impact and application of those fees discriminates upon the candidate's political affiliation. *See* Tex. Elec. Code §§ 141.041(b), (e); § 172.024-25; § 181.0311. For example, the Primary Parties' filing fee benefits them by funding their parties and the primary elections. By contrast, the

Plaintiffs' filing fee is a tax directed into the state's general fund. And while the Primary Parties' filing fee directly subsidizes their primary election nominating process, the Plaintiffs' filing fee goes into the general fund and leaves the Plaintiffs to have to self-fund their nominating convention process beyond the fees already imposed on their candidates.

More specifically in practice, Republicans and Democrats pay their filing fees to their respective party, and that party then uses those fees to reimburse itself for the costs incurred "in connection with the primary election."[3] *See* Tex. Elec. Code §§ 173.033-.0341. Not so for Plaintiffs or their candidates. Instead, under the new statute, LPTexas candidates for the first time would be forced by Texas Election Code § 181.0311 to pay the newly imposed filing fees directly into the state's general fund rather than to the party itself. Without explanation or justification, LPTexas would not receive any of those fees back from the State to defray the cost of its convention process. The result is that LPTexas is left to fund its own convention *after* its candidates have already paid the filing fee to the State. Thus, unlike the filing fee paid by Republicans and Democrats that serves as an administrative fee used to pay for the primary election, the filing fee as applied to Plaintiffs in practice serves as a de facto "poll tax" upon LPTexas and its candidates. Such taxation without any corresponding benefit fails to serve as a gatekeeping mechanism to further a legitimate (yet undefined) state interest. The unequal treatment and discrimination suffered by Plaintiffs results solely from and because of their political affiliation, is substantial, and is not justified by any state interest.

---

[3] A portion of the filing fees are remitted to the Secretary of State, but those state funds are likewise used to fund the primary elections. *See* Tex. Elec. Code § 173.001(a) ("Subject to legislative appropriation, state funds may be spent as provided by this chapter to pay expenses incurred by a political party in connection with a primary election."); Tex. Elec. Code § 173.062(a) ("The filing fee for a district office accompanying an application for a place on the ballot filed with the state chair during the regular filing period shall be remitted to the secretary of state and deposited in the state treasury for the financing of primary election expenses.").

The discriminatory treatment even extends to refunds of filing fees whenever either a Convention Party or Primary Party candidate later becomes unavailable for the general election. Specifically, the Texas Election Code contains a "refund" provision for filing fees that have been paid by Primary Party candidates who die, are declared ineligible, or whose "application *for a place on the ballot* is determined not to comply with the requirements as to form, content, and procedure that it must satisfy for the candidate's name to be placed on the ballot," but Sec. 181.0311 contains no provision for Convention Party candidates who later become unavailable. *Compare* Tex. Elec. Code § 141.038(a) (emphasis added) and Tex. Elec. Code § 181.0311. Simply, the Convention Party candidate's fees escheat to the state, but the Primary Party candidate gets refunded.

No legitimate state interest is served by furthering a system that creates unequal treatment and discriminates upon political party affiliation. Because Section 181.0311 does so and infringes on various constitutional rights of Convention Party candidates, a preliminary injunction should be granted to enjoin its enforcement.

> **4.      The Primary Parties' filing fee is an eligibility requirement, which has curative provisions; Plaintiffs' filing fee is a form, process, and procedure requirement, which cannot be cured. This statutory "gotcha" is unconstitutional.**

Section 181.0311, as applied, violates equal protection in another manner. Notably, the law extends the challenge deadline for convention-nominated candidates beyond the date that LPTexas can replace an ineligible candidate on the general election ballot. By recasting the filing fee—which serves as an eligibility requirement for the Primary Parties—as a form, process, and procedure requirement, the legislature has allowed the Republican and Democratic Parties an opportunity to cure defects in the filing fees or petitions. But Section 181.0311 does not afford the same ability to Plaintiffs.

For Republican and Democrat candidates, the payment of the filing fee is considered an "eligibility" requirement, which has several important practical effects. For example, if a candidate's eligibility is challenged, the candidate can be removed from the ballot and replaced with an eligible candidate prior to the election. Under Chapter 145 of the Texas Election Code, a candidate's name can be removed from the ballot if he or she withdraws, dies, or is declared ineligible "on or before the 74th day before election day." Tex. Elec. Code § 145.035. An ineligible candidate's political party may then replace the ineligible candidate "not later than 5 p.m. of the 71st day before election day." Tex. Elec. Code § 145.037(e). In addition, even if a candidate is declared ineligible after the 75-day deadline, that candidate's votes are still counted and recorded. Tex. Elec. Code § 145.005.

But by replacing "to be eligible" with "to be considered," Tex. Elec. Code § 181.0311 now makes the filing fee and/or petition a "form, process, and procedure" requirement rather than an eligibility requirement. The significance of this distinction affects Tex. Elec. Code § 141.032, which governs review of the applications and notice to candidates of defects, and § 141.034, which limits the time period for challenging an application, as those provisions specifically do not apply to a determination of a candidate's eligibility. That is, if an LPTexas candidate did not pay the filing fee or if the submitted petitions in lieu of such fee were inadequate, there exists no mechanism for LPTexas to replace the candidate on the general election ballot. *See* Tex. Elec. Code §§ 141.032(f) & 141.034(b). Yet no such limitation applies to the Primary Parties, who retain the option to replace ineligible candidates without suffering the penalty faced by Plaintiffs. Tex. Elec. Code § 145.037(e). There is no legitimate justification for this unequal and discriminatory treatment against Plaintiffs and their voters, whose constitutional rights will be infringed.

**5.   The petition in lieu of filing fee includes a mandatory "loyalty oath" that impermissibly requires a voter to exchange the voter's rights of association for the voter's right to make political speech.**

Although the statute purports to give candidates an alternative to the filing fee through a "petition in lieu of" option, the reality is that the petition requirements are unconstitutional, too. The petition itself includes a mandatory "loyalty oath" that compels a registered voter who signs the petition to exchange that voter's right to engage in political speech for the voter's right of association. Before signing the petition in lieu, that Texas voter must take an "oath" that the voter will not participate in any other party's primary or convention, as follows:

> Sec. 172.027. STATEMENT ON PETITION. The following statement must appear at the top of each page of a petition to be filed under Section 172.021: "I know that the purpose of this petition is to entitle (insert candidate's name) to have his or her name placed on the ballot for the office of (insert office title, including any place number or other distinguishing number) for the (insert political party's name) primary election. I understand that by signing this petition I become ineligible to vote in a primary election or participate in a convention of another party, including a party not holding a primary election, during the voting year in which this primary election is held."

Tex. Elec. Code § 172.027. By signing the petition, a voter effectively becomes ineligible to vote in a primary or even to *participate* in a convention of any other party. *See* Tex. Elec. Code § 172.026.

Plaintiffs appreciate that prohibiting participation in multiple nomination votes or imposing some loyalty requirements are justified and can serve a legitimate purpose. For example, prohibiting unaffiliated voters from voting in Republican and Democratic primaries serves the compelling state interest in prohibiting raiding. Beyond that, the state's interest in orderly elections is served when it prohibits voters from voting for the preferred candidate in their own primary, but then voting for the weaker candidate in the other party primary.

None of that applies here. Rather, no state interest exists that is so compelling to justify the "loyalty oath" that it should disenfranchise any voter who exercises the freedom of speech by supporting a Convention Party candidate's eligibility for nomination (such as though signing a petition). Of course, a voter could believe in good faith that a Libertarian candidate should be on the general election ballot, but not wish to vote for that candidate in the general election. Such an exercise of free speech should not be infringed by the petition's loyalty oath requirement that would force a Primary Party affiliated voter to be disenfranchised in the primary election.

The practical effect of the oath—identifying potential signatories to meet the statutory alternative to the filing fee requirement—is burdensome for Republicans and Democrats and is exceptionally burdensome for smaller political parties, Plaintiffs like LPTexas, and their candidates. Though the petition requirements for any candidate seeking election to office might appear at first to be the same, Plaintiffs disproportionately suffer the burden created by these restrictions in practice than do the Primary Parties' candidates. This burden arises due to the existence of fewer potential signatories, either unaffiliated voters or those affiliated voters who are unwilling to vote in a primary election of the Primary Parties.

## B.    Plaintiffs Will Suffer Irreparable Harm Unless Injunctive Relief is Granted.

"To show irreparable injury if threatened action is not enjoined, it is not necessary to demonstrate that harm is inevitable and irreparable." *Humana, Inc. v. Avram A. Jacobson, M.D., P.A.,* 804 F.2d 1390, 1394 (5th Cir. 1986). Instead, "[t]he plaintiff need show only a significant threat of injury from the impending action, that the injury is imminent, and that money damages would not fully repair the harm." *Id.* (footnote omitted).

Importantly, the Fifth Circuit has repeatedly held that "the loss of First Amendment freedoms for even minimal periods of time constitutes irreparable injury justifying the grant of a

preliminary injunction." *Texans for Free Enter. v. Texas Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013) (internal quotation marks and citation omitted); *see also Elrod v. Burns*, 427 U.S. 347, 373, 96 S. Ct. 2673, 49 L. Ed. 2d 547 (1976) ("The loss of First Amendment freedoms, for even minimal amounts of time, unquestionably constitutes irreparable injury.").

Absent relief, Tex. Elec. Code § 181.0311 will cause Plaintiffs to be severely restricted, or barred, from running candidates in Texas's 2022 general election who have not or cannot pay the unconstitutional filing fee or submit signed petitions by the December 13, 2021 deadline. The exclusion of such candidates from "consideration" at the LPTexas convention will cause irreparable harm to Plaintiffs' voting, speech, and associational rights, all protected by the First Amendment. *See Williams v. Rhodes*, 393 U.S. 23, 31 (1968). Because Plaintiffs will face loss of their First Amendment rights should Section 181.0311 be enforced, the preliminary injunction should be granted.

**C.     The Balance of Equities and Public Interest Weigh in Favor of Granting Injunctive Relief To Prevent Enforcement of Section 181.0311.**

The issuance of injunctive relief through either a TRO or a preliminary injunction will not substantially harm the state actor Defendants. Rather, "[a] temporary restraining order is a 'stay put,' equitable remedy that has as its essential purpose the preservation of the status quo while the merits of the cause are explored through litigation." *Foreman v. Dallas County,* 193 F.3d 314, 323 (5th Cir. 1999), abrogated on other grounds, *Davis v. Abbott,* 781 F.3d 207, 214 (5th Cir. 2015).

Texas itself lacks any legitimate interest in the implementation of a statute like Tex. Elec. Code § 181.0311 that, as explained above, is unconstitutional. *See N.Y. Progress & Prot. PAC v. Walsh,* 733 F.3d 483, 488 (2d Cir. 2013) (recognizing that government officials "do[] not have an interest in the enforcement of an unconstitutional law"). Indeed, "[i]t is always in the public

interest to prevent the violation of a party's constitutional rights." *Simms v. District of Columbia*, 872 F.Supp.2d 90, 105 (D.D.C. 2012) (collecting cases); *ODonnell v. Harris County*, 251 F. Supp. 3d 1052, 1159 (S.D. Tex. 2017). Even if Defendants had a legitimate interest, any delay in enforcing Sec. 181.0311's filing fee or petition requirements after the December 13, 2021 deadline has passed does not create any substantial prejudice that outweighs the threatened injury to the Plaintiffs: the incurable loss of their First and Fourteenth Amendment rights. With the threatened violation of their constitutional rights under the First and Fourteenth Amendments, Plaintiffs are left with no adequate legal remedy. Monetary damages are inadequate.

Further, granting injunctive relief will further the public interest, including voters across Texas who wish to support LPTexas candidates and those of other Plaintiffs. The reasons for the new restrictions imposed by Tex. Elec. Code § 181.0311 should be met with skepticism given that Defendants cannot dispute that the State of Texas regulated ballot access for Plaintiffs like LPTexas for more than 50 years before enacting Tex. Elec. Code § 181.0311. Any suggestion that aligning requirements for Convention Party candidates with Primary Party candidates simply "makes good sense" and furthers the public interest in uniformity does not square with the statutory text and purpose of the Texas Election Code that draws fundamental distinctions drawn between the parties. Illustrative of that distinction, as explained above, the fees that Sec. 181.0311 requires of Non-Primary Party candidates (unlike the fees paid by Primary Party candidates) will not be used to offset taxpayer-funded nominating procedures, so there will be no adverse financial impact to Texan voters.

Enjoining the enforcement of Sec. 181.0311 during the 2022 election cycle will not harm the public interest of Texas voters. To the contrary, an injunction will protect the right of all Texans to cast their votes effectively and for a broader pool of qualified candidates. See *Texans*

*for Free Enter. v. Texas Ethics Comm'n,* 732 F.3d 535, 539 (5th Cir. 2013) ("[I]njunctions

protecting First Amendment freedoms are always in the public interest") (internal quotation

marks and citation omitted). The preliminary injunction should be granted.

**D.      Plaintiffs Are Prepared To Post A Bond To Be Set At The Discretion of the Court.**

Federal Rule of Civil Procedure 65(c) requires that an applicant for a preliminary

injunction provide security against the potential effects of a wrongly issued injunction. Fed. R.

Civ. P. 65(c). But it is well-established that "the amount of security required by the rule is a

matter within the discretion of the trial court . . . [, and] the court may elect to require no security

at all." *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.,* 636 F.2d 1084, 1094 (5th Cir. Unit

B 1981) (citation and quotation marks omitted). The bond requirement shoud be waived in this

case.

If the Court elects not to waive the bond requirement given the various Constitutional

challenges contained in this matter, Plaintiffs are prepared to give security in an amount that the

Court considers proper to pay the costs and damages sustained by Defendants if found to have

been wrongfully enjoined or restrained, although that should be no more than a nominal amount.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs ask the Court to issue a show cause order setting an

evidentiary hearing on this application and after that hearing enter a preliminary injunction

enjoining Defendants from enforcing the filing fee and petition requirements set forth in Texas

Election Code § 181.0311, as applied to Plaintiffs and all whose similarly situation in the 2022

election cycle.

*       *       *

Dated: January 14, 2022                    Respectfully submitted,


                                           By: */s/ Jared G. LeBlanc*
                                                Jared G. LeBlanc
                                                Texas Bar No. 24046279
                                                jleblanc@gamb.com

                                                **Attorney-In-Charge**

**OF COUNSEL:**

Adam J. Russ
Texas Bar No. 24109435
aruss@gamb.com
Brandon A. O'Quinn
Texas Bar No. 24092914
boquinn@gamb.com

GORDON, ARATA, MONTGOMERY, BARNETT,
  MCCOLLAM, DUPLANTIS & EAGAN, LLC
2229 San Felipe
Suite 1100
Houston, Texas 77019
Tel.: 713.333.5500

**ATTORNEYS FOR PLAINTIFFS**


## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that a true and correct copy of the foregoing was served

upon Plaintiff, by and through its counsel of record, electronically through the Clerk's ECF system

on January 14, 2022.


                                           */s/ Jared G. LeBlanc*
                                           Jared G. LeBlanc