## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, MARK ASH, | § | |
| STEPHANIE BERLIN, JOE BURNS, | § | |
| ARTHUR DIBIANCA, KEVIN HALE, | § | |
| DESARAE LINDSEY, ARTHUR THOMAS | § | |
| IV, MARK TIPPETTS, LIBERTARIAN | § | |
| PARTY OF TEXAS, | § | |
| *Plaintiffs,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 1:21-cv-01089-RP |
| | § | |
| JOSE A. ESPARZA AND JOHN B. SCOTT, | § | |
| | § | |
| *Defendants.* | § | |

## DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION

Plaintiffs, the Libertarian Party of Texas (LPT) and its candidates seeking the LPT nomination for various elected offices in the State of Texas, challenge the requirement under Texas Election Code § 181.0311 that a candidate must either pay a filing fee or submit a petition in lieu of the filing fee with the required number of signatures before that candidate may be nominated and appear on the general election ballot. Their Motion for Preliminary Injunction, ECF 14, seeks to enjoin Defendants "to prevent the enforcement of Texas Election Code § 181.0311 against them in the 2022 election cycle." ECF 14 at 1. Defendants John B. Scott in his official capacity as Secretary of State of Texas and Jose A. "Joe" Esparza in his official capacity as Deputy Secretary of State of Texas hereby respectfully respond in opposition to that motion.

**LEGAL & FACTUAL BACKGROUND**

Section 181.0311 is a provision of Senate Bill 2093 (SB 2093), legislation governing the political parties required to select candidates through a nominating convention (third parties) that was signed into law in 2021. During the 2021 Regular Legislative Session, the Texas Legislature revised the provision under former Texas Election Code § 141.041 to require a candidate seeking the nomination of a third party to pay its filing fee or submit its petition in lieu of the filing fee "to be considered for nomination." Act of May 26, 2021, 87th Leg., R.S., ch. 149 (S.B. 2093), § 1, 2021 Tex. Gen. Laws (codified at Tex. Elec. Code § 181.0311). SB 2093 reads, in part:

> Section 141.041, Election Code, is transferred to Subchapter B, Chapter 181, Election Code, redesignated as Section 181.0311, Election Code, and amended to read as follows:
> Sec. 181.0311. FILING FEE OR PETITION REQUIRED.
> (a) In addition to any other requirements, to be considered for nomination by convention, a candidate must:
> (1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or
> (2) submit to the secretary of state for a statewide office or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.

Tex. Elec. Code § 181.0311. SB 2093 transferred and amended former Section 141.041 to clarify that a signature petition or filing fee must be submitted to the applicable party authority prior to the nominating convention. *See id.*

As relevant to the preliminary injunction motion, Texas provides two processes for political parties to guarantee general election ballot access for their nominees for county and state office and United States Congress. The process a party utilizes depends upon the level of support for the party's nominee for governor in the most recent gubernatorial general election. If the party's nominee received 20 percent or more of the total votes cast for governor in the most recent gubernatorial election, the party must nominate by primary election (primary parties). Tex. Elec. Code § 172.001. If

2

the party's nominee received at least two percent but less than 20 percent of the total votes cast for governor, the party may nominate by primary election, *id.* § 172.002(a), or by convention, *id.* § 181.002. If the party did not have a nominee receive at least two percent of the votes cast for governor, then the party must nominate by convention. *Id.* § 181.003.

The requirements for individual candidates seeking nomination by primary or convention are similar. A primary candidate must submit an application to a designated party official and either pay a filing fee or submit a petition in lieu of filing fee. Tex. Elec. Code §§ 172.021 (application required), .024 (filing fees), .025 (petition signatures required). A candidate for nomination by convention must also submit an application to a designated party official "not later than the regular deadline for candidates to file applications for a place on the general primary ballot." *Id.* §§ 181.032, .033. The party nominating its candidates by convention may extend filing deadlines for an office if the original applicant "withdraws, dies, or is declared ineligible." *Id.* § 181.033(b).

This Court denied a similar effort by LPT to enjoin the predecessor statute to SB 2093, Texas Election Code § 141.041, in 2019, finding that the challenge to the filing fee or petition requirement was unlikely to succeed on the merits under the applicable *Anderson-Burdick* standard and that plaintiffs there failed to show irreparable harm pursuant to *Texans for Free Enter. v. Tex. Ethics Comm'n. Miller v. Doe*, 422 F. Supp. 3d 1176, 1190 (W.D. Tex. 2019) (citing 732 F.3d 535, 539 (5th Cir. 2013)). The requirement that LPT candidates pay a filing fee or file a petition in lieu of the fee prior to the nominating convention at issue in *Miller* is substantively the same as the requirement Plaintiffs challenge here; the only difference is that the timing of the fee/petition was set forth by the Secretary of State in an advisory in *Miller* whereas that timeline is now dictated by statute. *Compare id.* at 1182 (citing Texas Secretary of State, *Nominee of Libertarian or Green Party in 2020*, https://www.sos.state.tx.us/elections/candidates/guide/2020/lib-green-nom2020.shtml) *with* Tex.

Elec. Code § 181.0311(a).

**ARGUMENT & AUTHORITY**

## I.      Legal Standard

To obtain preliminary injunctive relief, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the relief will serve the public interest. *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). Courts do not grant such relief "unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *PCI Transp. Inc. v. Ft. Worth & Wstrn. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). The decision rests with the trial court, and judges grant such requests only under exceptional circumstances. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

## II.     Plaintiffs have not demonstrated a likelihood of success on the merits of their challenge to Section 181.0311.

Plaintiffs argue that § 181.0311 "is unconstitutionally burdensome under the Supreme Court's *Anderson/Burdick* constitutional framework" and violates Plaintiffs' right to freedom of speech, freedom of association, and equal protection under the law. ECF 14 at 2. "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; 'as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Storer v. Brown*, 415 U.S. 724, 730 (1974)). For this reason, the Supreme Court has implemented a sliding-scale framework that governs the level of scrutiny applied to "constitutional challenges to specific provisions of a State's election laws" under "the First and Fourteenth Amendments." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 234 (5th Cir.

2020) (cleaned up) (quoting *Anderson v. Celebreeze*, 460 U.S. 780, 798 (1983)). This framework eschews a mechanical application of strict scrutiny for "ordinary and widespread burdens like these" and restrains courts from "rewrit[ing] state electoral codes" in favor of allowing the "States to run efficient and equitable elections[.]" *See id.* (quoting *Clingman v. Beaver*, 544 U.S. 581, 593 (2005)).

The test has three parts but effectively it requires courts to balance "the character and magnitude of the asserted injury" to the rights the plaintiff seeks to vindicate against "the precise interests put forward by the State as justifications" for the challenged rule, all while taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). When a state election law imposes only "reasonable, nondiscriminatory restrictions" upon the First and Fourteenth Amendment rights of voters, "the state's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S. at 788. The State, after all, has considerable power "to engage in 'substantial regulation of elections'" to ensure that elections are well run. *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 394 (5th Cir. 2013) (quoting *Storer*, 415 U.S. at 730).

The Supreme Court has long recognized the "important state interest in requiring some preliminary showing of a significant modicum of support" for those on the ballot and "in avoiding confusion, deception, and even frustration of the democratic process at the general election." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971); *see also, e.g.*, *Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) ("States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot.") (internal quotation marks and citation omitted). Texas's ballot regulations seek to protect the State's "important regulatory interests" in streamlining the ballot, avoiding ballot overcrowding, and reducing voter confusion. *Burdick*, 504 U.S. at 434. Texas is not required "to make a particularized showing of the existence of voter confusion, ballot

overcrowding, or the presence of frivolous candidacies prior to the imposition of reasonable restrictions on ballot access." *Munro*, 479 U.S. at 194–95.

Thus, every court applying the *Anderson-Burdick* framework to Texas's ballot-access provisions has found that these provisions are reasonable and nondiscriminatory, and advance important regulatory interests. *See, e.g.*, *Nader v. Connor*, 388 F.3d 137 (5th Cir. 2004) (affirming that *Anderson/Burdick* test—not strict scrutiny—applies to Texas law requiring independent presidential candidates to obtain more nominating signatures than minor political parties; affirming constitutionality of petition signature requirements and deadline to file for independent presidential candidates); *Tex. Indep. Party v. Kirk*, 84 F.3d at 178, 184–86 (upholding deadlines for minor party nominating petitions and candidate declarations of intent); *Meyer v. Texas*, No. H-10-3860, 2011 WL 1806524, at *3 (S.D. Tex. May 11, 2011) (upholding constitutionality of requirements for independent candidates for US House of Representatives); *see also, e.g.*, *Am. Party of Tex. v. White*, 415 U.S. 767 (1974) (upholding requirement that minor parties and independent candidates demonstrate sufficient electoral support to obtain ballot access, including requirements that petition signatures be gathered after primary election). These cases have rejected the very arguments Plaintiffs raise here.

In support of their claim of likelihood of success on the merits, Plaintiffs present four arguments. First, Plaintiffs argue that the system of remitting the candidates' filing fees to the general revenue funds of the governing state or county further violates the Equal Protection Clause. ECF 14 at 10. Second, Plaintiffs assert that Section 181.0311 infringes on their First Amendment rights by requiring the fee or petition to be submitted before the nominating convention takes place. ECF 14 at 10–12. Third, Plaintiffs make the unsupported contention that Texas's ballot-access scheme prohibits third parties from replacing candidates declared ineligible in the same manner as candidates nominated under the primary system. ECF 14 at 6–7. Fourth, Plaintiffs mischaracterize the Election

Code's petition requirements as requiring a constitutionally impermissible "loyalty oath" on prospective supporters of the candidates seeking office. ECF 14 at 16–17. None of these arguments shows that Plaintiffs enjoy a likelihood of success on the merits.

### A. The challenged provision does not violate the Equal Protection Clause.

Plaintiffs claim that the primary parties enjoy favorable treatment in violation of the Equal Protection Clause because their filing fees are used to establish a fund that reimburses them for the costs of running their primary elections whereas parties nominating by convention pay their filing fees into a general revenue fund at the state or county level, depending on the office sought.[1] ECF 14 at 10, 12–14. But this scheme is acceptable under the *Anderson-Burdick* test for four reasons.

First, Plaintiffs cannot establish a violation of Equal Protection without first establishing that they are similarly-situated to the primary parties or their candidates. *See Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 167–68 (5th Cir. 2009) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). LPT is not similarly situated to the primary parties because it does not shoulder the heavy burden of administering primary elections open to large segments of the voting population. *See Kucinich*, 563 F.3d at 167–68 (5th Cir. 2009); *In re Tex. House Republican Caucus PAC*, 630 S.W.3d 28, 35 n.7 (Tex. 2020); *see also White*, 415 U.S. at 781 ("Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution.") (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963)). And even if the parties are not subject to the same code provisions, Plaintiffs conflate the burden on the party with the burden on the candidates. Candidates *are* similarly situated in the sense that, regardless of the party, the candidate must satisfy the same filing-fee or petition-signature requirement by the same deadline. *See* Tex. Elec. Code §§ 172.021 (filing

---

[1] This argument appears under separate subheadings A.1 and A.3 in Plaintiff's Application, but the challenge under the Equal Protection Clause appears to be substantively the same in both portions of the brief.

fee or petition requirement for primary-party candidates), 181.0311 (filing fee or petition requirement for third parties). Because this burden is nondiscriminatory and reasonable, the state's interest in ensuring candidates demonstrate a modicum of support satisfies the *Anderson-Burdick* scrutiny standard under longstanding case law. *See Anderson*, 460 U.S. at 788; *White*, 415 U.S. at 787.

Second, Plaintiffs' argument ignores that LPT could receive the reimbursement it claims it is denied if it obtained sufficient support and chose to exercise its statutory right to conduct a primary election in the same manner as the primary parties. *See* Tex. Elec. Code §§ 172.002(a) (providing that a party receiving at least two percent but less than 20 percent of the total votes cast for governor in the most recent gubernatorial election may nominate by primary), 173.001, .031 (providing for the creation of funds to reimburse expenses incurred by parties conducting primary elections at the state and county level); *see also Jenness v. Fortson*, 403 U.S. 431, 441–42 (1971) ("The fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. Georgia has not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot."). That LPT did not reach the two percent threshold for this entitlement in the last election is not the fault of Secretary Scott. *See SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 277 (2d Cir. 2021) (quoting *Buckley v. Valeo*, 424 U.S. 1, 96 (1976)) ("The government's 'interest in not funding hopeless candidacies with large sums of public money necessarily justifies the withholding of public assistance from candidates without significant public support.'"). Thus, Texas's statutory scheme for ballot access does not violate equal protection by treating parties with different levels of support differently.

Third, requiring LPT and the primary parties *both* to conduct statewide, expensive primary elections would likely run afoul of the ballot-access standards established by the United States Supreme

Court that prohibit States from requiring third parties to establish the same elaborate party machinery required of primary parties. *See Williams v. Rhodes*, 393 U.S. 23, 39–40 (1968) ("Cumbersome election machinery can effectively suffocate the right of association, the promotion of political ideas and programs of political action, and the right to vote. The totality of Ohio's requirements has those effects."). Because the Election Code does not require LPT to nominate its candidates through primary, LPT is not entitled to the same reimbursement as primary parties, who are required to nominate by primary when their candidate in the last gubernatorial race gets over 20% of the vote. LPT and its candidates do not face a similar burden under *Anderson-Burdick*. *See White*, 415 U.S. at 781; *In re Tex. House Republican Caucus PAC*, 630 S.W.3d at 35 n.7. Texas should not be enjoined from striking the correct balance regarding the parties' right to access the ballot under this jurisprudence.

Fourth, even if the statute is determined to treat similarly-situated candidates differently, in addition to the important and compelling state interest in avoiding voter confusion by assuring an orderly ballot described *supra*,[2] those classifications are also justified by compelling state interests in preventing the expenditure of public funds on candidacies that lack popular support and in avoiding incentivizing of "unrestrained factionalism." *Valeo*, 424 U.S. at 96; *Storer*, 415 U.S. at 736. A very recent case from the Second Circuit applied *Anderson-Burdick* to uphold a system where the state matches a candidate's campaign funds above a certain threshold because the practice serves the state interest in not funding hopeless candidacies. *SAM Party of N.Y.*, 987 F.3d at 277. The same is true here. Texas's system ensures that a party's entitlement to public funds is ratcheted up as the party demonstrates an increase in popular support via its election results, and also ensures that disproportionate amounts of public funds are not expended on candidacies lacking in popular support. *See id.*

---

[2] *See Jenness*, 403 U.S. at 442 (1971); *Munro*, 479 U.S. at 194.

9

**B.      Section 181.0311 does not impose a burden on speech or associational rights under the First Amendment.**

Next, Plaintiffs attempt to characterize Section 181.0311 as a statute that controls the content of Plaintiffs' speech under the First Amendment. ECF 14 at 10–12. The statute challenged in the cases cited by Plaintiffs in support of this contention prohibited roadside solicitations for charitable contributions, money, or jobs. *See Int'l Soc. for Krishna Consciousness of New Orleans, Inc. v. City of Baton Rouge*, 876 F.2d 494, 497 (5th Cir. 1989); *Ghalazeh v. City of Dallas*, No. 3:18-CV-0076-N, 2019 WL 2616668, at *1 (N.D. Tex. June 25, 2019) (citing Tex. Transp. Code § 552.007). But Section 181.0311 does not regulate the content of any person's speech on the side of the road; it provides nothing more than the requirements a candidate seeking the nomination of a third party must satisfy in order to qualify for party nomination and ultimately appear on the general election ballot. *See* Tex. Elec. Code § 181.0311. Likewise, despite Plaintiffs' characterizations, this statute does not impose any requirements on LPT members' ability to attend or speak at precinct, district, or county conventions. *See id.*

Associational-rights challenges under the First Amendment are generally analyzed according to the *Anderson-Burdick* framework, not the strict scrutiny rubric Plaintiffs insist upon, which this statute satisfies as explained above. *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 213–14 (1986) (citing *Anderson*, 460 U.S. at 789); *see also Steen*, 732 F.3d at 388 ("we are unpersuaded that the smorgasbord of activities comprising voter registration drives involves expressive conduct or conduct so inextricably intertwined with speech as to require First Amendment scrutiny"). Plaintiffs' assertion that "Section 181.0311 prohibits noncompliant candidates from any political speechmaking at convention" goes too far and is unsupported by the statute's text. ECF 14 at 12. The language that Plaintiffs claim requires strict scrutiny should be read in full to provide the necessary context: "In addition to any other requirements, to be considered for nomination by convention, a candidate must"

10

pay the filing fee or file a petition with the requisite number of signatures. Tex. Elec. Code § 181.0311. The language "In addition to any other requirements" alerts a reasonable reader that this statute gives the requirements for candidacy. *See id.* The word "considered" in this context simply means that a candidate is not entitled to stand for nomination by a party unless the candidate first meets the filing-fee/petition requirement; it does not restrain LPT from nominating a candidate of its choice who satisfies the statutory requirements of candidacy. *See id.* Nothing in this statute can be read to restrain LPT or its candidates' speech or associational rights. *See Steen*, 732 F.3d at 388.

*Citizens United v. FEC*, which overturned federal regulations limiting the campaign contributions and electioneering communications of corporate entities, also does not apply to this case. *See* 558 U.S. 310, 339–40 (2010). LPT and its candidates are free to solicit and accept campaign contributions in accordance with the governing state and federal laws, and they may engage in any political speech consistent with the First Amendment they want—Section 181.0311 does nothing to prohibit these activities. *See id.*

Plaintiffs also argue that requiring the filing fee to be paid prior to the nominating convention chills its candidates from participating in LPT's nominating process. ECF 14 at 11–12. But that is no truer for them than it would be for any candidate for political office who must weigh the costs of running a campaign against the prospect of becoming elected, and the deadline is the same whether the candidate runs in a third party or a primary party. Tex. Sec'y of State, Election Advisory No. 2021-18, March 1, 2022 Primary Election Law Calendar, *available at* https://www.sos.state.tx.us/elections/laws/advisory2021-18.shtml# (last accessed Jan. 20, 2022). Any chilling effect of ballot-access requirements does not require overturning reasonable, nondiscriminatory regulations enacted by the State to ensure that candidates demonstrate a modicum of public support. *See Anderson*, 460 U.S. at 788; *White*, 415 U.S. at 787.

To the extent that Plaintiffs challenge the timing of their nominating conventions, this claim is untenable under existing precedent. In *Texas Independent Party v. Kirk*, a new political party and some of its officers and candidates challenged the "nomination by convention" process that largely remains in place today. 84 F.3d 178, 180-81 (5th Cir. 1996) (noting timing of precinct, county, and district nominating conventions is linked to the primary election date and discussing timeline). The Court's analysis of the process bears repeating in full:

> We have little difficulty in concluding that the timeframe requirements for the nominating conventions are not a significant burden. The Supreme Court has already examined the framework of the Texas electoral scheme and held that requiring minor political parties to nominate candidates through a convention process is constitutionally permissible. Moreover, the convention process approved by the Supreme Court in *White* held the various nominating conventions sequentially, with precinct conventions on the same date as the statewide primaries for the major parties, the county conventions on the following Saturday, and the state convention on the second Saturday in June. This is precisely the same process Texas employs today. The only difference is that at the time of *White* Texas held its primary election in May. The switch to "Super Tuesday" in March caused a commensurate switch in the dates of the precinct, county, and district conventions. We find this change only a minor burden, given the Supreme Court's holding **that the Texas electoral system, with a convention nominating process linked to the date of the primary election**, "in no way freezes the status quo, but **implicitly recognizes the potential fluidity of American political life" and "affords minority political parties a real and essentially equal opportunity for ballot qualification."**

*Id.* at 185 (emphasis added) (citations omitted) (quoting *White*, 415 U.S. at 780-81, 773–74, 787–88).

Today, Texas's convention nominating process is still "linked to the date of the primary election"—which the Fifth Circuit held is constitutional in *Texas Independent Party. Id.*; *see also* Tex. Elec. Code § 181.061(a) (statewide convention held on second or third Saturday in April of election year), (b) (district convention held on second Saturday after primary election), (c) (county convention held on first Saturday after primary election). And it has been clear in the 45 years since *White* that "requiring minor political parties to nominate candidates through a convention process is constitutionally

permissible." *Tex. Indep. Party*, 84 F.3d at 185 (citing *White*, 415 U.S. at 780–81). Thus, Plaintiffs fail to demonstrate a likelihood of success on their claim that the provisions for parties nominating by convention run afoul of the Constitution.

C.     **All political parties are subject to the same standards regarding election challenges for defects in form, content, and procedure versus challenges to eligibility.**

Plaintiffs assert that the filing fee imposes a "form, content, and procedure" requirement upon third-party candidates whereas the requirement is an "eligibility" requirement for the primary candidates, allowing primary candidates more time to replace ineligible candidates. ECF 14 at 14–15. This is nothing more than an attempt to manufacture a claim of unequal treatment out of thin air— there is no provision in the Texas Election Code that makes the payment of the filing fee an eligibility requirement, for any candidate.

Plaintiffs correctly observe that the requirements to appear on the general election ballot fall into two categories for our purposes here: eligibility requirements and requirements as to form, content, or procedure. ECF 14 at 14. Eligibility requirements are those requirements such as the candidate's age, citizenship status, or residency in the geographic territory for which the candidate seeks office. *See* Tex. Elec. Code § 141.001 (Eligibility Requirements for Public Office). Section 141.001 is included in Chapter 141, titled "Candidacy for Public Office **Generally**." Tex. Elec. Code ch. 141 (emphasis added). All other statutory requirements to appear on the ballot are more appropriately characterized as form, content, or procedure requirements and subject the candidate to an election challenge and removal from the ballot until the 50th day before the date of the election. Tex. Elec. Code §§ 141.032, .034; *e.g.*, Tex. Elec. Code §§ 141.031, 181.031. If a challenger asserts that the opponent is ineligible, however, the candidate cannot be removed from the ballot after the 74th day before the election, though the Texas Supreme Court has suggested that the candidate may still

be declared ineligible to assume office after the 74th day while appearing on the ballot. *See* Tex. Elec. Code § 145.035; *In re Tex. Rep. House Caucus PAC*, 630 S.W.3d at 36.

Under former Section 141.041, the Texas Supreme Court held that the word "eligibility" in the old statute made the requirement an eligibility requirement, but it declined to opine on whether it was also a form, content, and procedure requirement. *In re Tex. House Republican Caucus PAC*, 630 S.W.3d at 35 & n.8. As Plaintiffs correctly observe, however, when SB 2093 amended this language to remove the words "to be eligible" and to clarify that submitting the fee or petition is a prerequisite to become a convention nominee, this requirement is now concerned only with form, content, or procedure with the corresponding deadlines as to when a candidate's access to the ballot may be challenged. ECF 14 at 15. But Plaintiffs' assertion that the filing fee or petition requirement is an eligibility requirement for primary candidates is incorrect and contradicts the Election Code. In fact, the requirement to pay a filing fee or file a signature petition is a form, content, or procedure requirement for **all** candidates regardless of nomination by primary or convention.

In other words, every candidate is subject to a challenge as to either of these categories on equal footing no matter the candidate's party status—an LPT candidate may challenge the primary candidates as to eligibility or as to form, content, and procedure, and the LPT candidate is subject to the same challenges in turn. *See id.* The parties are also equally entitled to replace candidates who have been declared ineligible, for whatever reason, and this claim too fails to establish that there is any unequal treatment. *See* Tex. Elec. Code § 145.036. Thus, Plaintiffs' baseless assertion of unequal treatment fails to establish a likelihood of success on the merits and should be rejected.

### D.   The one person, one vote principle requires limiting the nominating petition signatories to one candidate.

Plaintiffs also argue that the required statement under Texas Election Code § 172.027, that the petition signer will forgo voting in a primary election for another party for that election cycle, is a

constitutionally impermissible "loyalty oath." ECF 14 at 16–17. Under Section 172.027, a person signing the petition of a candidate seeking nomination for a party nominating its candidate through a primary election agrees not to vote in another party's primary election or participate in another party's convention. Tex. Elec. Code § 172.027. Plaintiffs' complaint appears to be that a voter supporting a primary candidate's petition drive forfeits the right to thereafter participate in the LPT conventions, thus diminishing the pool of eligible signatories for LPT candidates attempting petition drives. ECF 14 at 17.

For starters, Plaintiffs all lack standing to assert the rights of candidates or signatories in the primary parties, as none of them have alleged a desire to vote in a primary of a major party or to support a candidacy of anyone running for a spot on either party's primary ballot, and primary candidates and their supporters are exactly whom Section 172.027 regulates. Pls.' 1st Amd. Compl. for Declaratory & Inj. Relief, ECF 12 at ¶¶ 7–16; *see* Tex. Elec. Code § 172.027 ("I know that the purpose of this petition is to entitle (insert candidate's name) to have his or her name placed on the ballot for the office of (insert office title, including any place number or other distinguishing number) for the (insert political party's name) **primary election**.") (emphasis added); *see also Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009) ("A claim of injury generally is too conjectural or hypothetical to confer standing when the injury's existence depends on the decisions of third parties not before the court."). Because none of the Plaintiffs in their capacity as candidates or voters will be subject to Section 172.027's limitations, they lack standing to assert an injury traceable to this statute. To the extent Plaintiffs are harmed by the allegedly diminished supporter pool caused by this provision, the argument boils down to a claim that LPT must be guaranteed a measure of electoral success, but where access to the ballot is not "virtually impossible" for the third party, courts are not obligated to impose such guarantees. *See Rhodes*, 393 U.S. at 24.

Further, the "loyalty oath" moniker Plaintiffs use to describe this provision is a misnomer. For example, loyalty oaths may require either promises not to advocate overthrow of the government or a promise to support a party's candidate in the general election as a prerequisite to seeking a party's nomination for office—the former is impermissible but the latter can survive constitutional challenges. *See, e.g.*, *Communist Party of Ind. v. Whitcomb*, 414 U.S. 441, 446 (1974) (overturning statutory requirement precluding a party from requiring its members to disclaim advocacy of the use of force to overthrow the local, state, or national government); *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 167–68 (5th Cir. 2009) (upholding Texas Democratic Party requirement that its candidates pledge support for whomever wins primary). States also cannot generally require voters to publicly bind themselves to candidates they support for a party nomination in the general election because this would tend to chill associational activity given every voter's right to a secret ballot. *Socialist Workers Party v. Hechler*, 890 F.2d 1303, 1310 (4th Cir. 1989) (quoting *Anderson v. Mills*, 664 F.2d 600, 609 (6th Cir. 1981)).

Lastly, whether or not this provision is a "loyalty oath," longstanding Supreme Court precedent permits the practice of confining a voter to one choice during the nomination phase of an election.

> [A] State may confine each voter to one vote in one primary election, and that to maintain the integrity of the nominating process the State is warranted in limiting the voter to participating in but one of the two alternative procedures, the partisan or the nonpartisan, for nominating candidates for the general election ballot.

*Storer*, 415 U.S. at 741 (citing *White*, 451 U.S. at 785–86). Texas's longstanding practice of limiting the voter to one nomination process to preserve the "one person, one vote" principle has been expressly upheld for decades as constitutional and Plaintiffs' argument here does not establish a likelihood of success on the merits of its argument that the practice should be overturned. *See id.*; *see also Meyer*, 2011 WL 1806524 at *3 (citing *Tashjian*, 479 U.S. at 219). Accordingly, Plaintiffs do not demonstrate a

likelihood of success on the merits and the application for preliminary injunction should be denied.

**E.    Plaintiffs' Section 1983 claims have no merit and are jurisdictionally barred.**

Some of the Plaintiffs who are candidates for office have already submitted the filing fee and claim that they are entitled to disgorgement as a penalty under 42 U.S.C. § 1983. ECF 12 at 21. The Court lacks subject-matter jurisdiction over Plaintiffs' claims under 42 U.S.C. § 1983 for damages, which are against Defendants in their official capacities, and not in their individual capacities. Section 1983 renders certain "persons" liable for deprivations of constitutional rights, but "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989). The question of whether the defendant is a "person" under 42 U.S.C. § 1983 is a jurisdictional inquiry. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 511–14 (1973) (characterizing the issue as a "jurisdictional question," when raised for the first time on appeal); *Muzquiz v. City of San Antonio*, 520 F.2d 993, 996 (5th Cir. 1975) (noting that the question of whether the defendant could be sued under 42 U.S.C. § 1983 "touche[d] on the court's jurisdiction").

Here, Secretary Scott and Deputy Secretary Esparza in their official capacities, to the extent sued for damages, are not "persons" that can be sued within the meaning of 42 U.S.C. § 1983. Accordingly, Plaintiffs Ash, Hale, Lindsey, and Tippetts are jurisdictionally barred from bringing a disgorgement claim against Defendants in their official capacities, the Court lacks subject-matter jurisdiction over Plaintiff's § 1983 claims as to these Defendants and Plaintiffs fail to demonstrate a likelihood of success on the merits of those claims.

**III.    Plaintiffs have not shown likelihood of irreparable injury absent an injunction.**

Plaintiffs make essentially the same boilerplate accusations of irreparable harm that were asserted in *Miller*—that if Section 181.0311 is not enjoined, Plaintiffs will "be severely restricted, or barred, from running candidates in Texas's 2022 general election," causing "irreparable harm to

Plaintiffs' voting, speech, and associational rights." ECF 14 at 18; *see* 422 F. Supp. 3d at 1190–91. Plaintiffs add, however, that "exclusion of candidates from 'consideration' at the LPTexas convention" is the basis for this assertion of irreparable harm. ECF 14 at 18. For the same reasons as in the prior ballot-access litigation before this Court, Plaintiffs have not established the likelihood of irreparable injury. *See Miller*, 422 F. Supp. 3d at 1190–91. Further, Plaintiffs' assertion regarding Section 181.0311's requirements does not establish that they are denied any First Amendment freedoms during any period of time for the reasons discussed *supra* under Section II. *See Tashjian*, 479 U.S. at 213–14 (citing *Anderson*, 460 U.S. at 789); *see also Steen*, 732 F.3d at 388.

## IV.    The State's interests outweigh any injury Plaintiffs allege.

Plaintiff's request to maintain the status quo does not lend support to their argument on the weighing of respective equitable interests. The status quo for almost two and a half years has been for parties nominating by convention to pay a filing fee or seek signatures for a nominating petition to qualify for the general election ballot as a third-party candidate. Act approved June 7, 2019, 86th Leg., R.S., ch. 822, §1, sec. 141.041, 2019 Tex. Sess. Law Serv. 822 (former version codified at Tex. Elec. Code § 141.041) (effective date Sept. 1, 2019). This Court chose to allow the former law, which is substantively the same as the requirement challenged here, to go into effect in 2019, and it should not disrupt that status quo by enjoining the same substantive requirements. *See Miller*, 422 F. Supp. 3d at 1191.[3]

In arguing the equities of the parties, Plaintiffs again ignore Texas's longstanding legitimate

---

[3] A similar state lawsuit brought by LPT candidates resulted in an injunction against the Secretary from refusing to accept candidate applications or refusing to certify the candidate for the ballot if the candidate did not pay a filing fee prior to the nominating convention—this action was deemed ultra vires under state law and the former statute, Tex. Elec. Code § 141.031. *Hughs v. Dikeman*, 631 S.W.3d 362, 381 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). However, the court of appeals upheld the general requirement of a filing fee or signature petition as constitutional under the Texas Constitution. *Id.* at 375–80.

interests in the enforcement of its laws, claiming "Texas itself lacks any legitimate interest in the implementation of" Section 181.0311. ECF 14 at 18. This ignores the State's weighty and indisputable interests at issue in this case. *See supra*, Part II (asserting important state interests in: (1) "requiring some preliminary showing of a significant modicum of support" for those on the ballot; (2) "avoiding confusion, deception, and even frustration of the democratic process at the general election"; (3) streamlining the ballot, avoiding ballot overcrowding, and reducing voter confusion; (4) preventing the expenditure of public funds on candidacies that lack popular support; and (5) avoiding incentivizing of "unrestrained factionalism") (quoting *Burdick*, 504 U.S. at 434; *Valeo*, 424 U.S. at 96; *Jenness*, 403 U.S. at 442; *Storer*, 415 U.S. at 736).

In addition to recognizing these election-related interests, the Supreme Court has also stated that the "inability [for a State] to enforce its duly enacted [laws] clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018). Plaintiffs' asserted interest in making it less burdensome for individual candidates to seek nomination by convention does not outweigh Texas's interests in administering elections and applying duly enacted laws.

## V.     The requested injunction does not further the public's interest.

Plaintiffs' argument regarding the public's interest focuses on what filing fees might be used for. *See* ECF 14 at 19. This misunderstands the public interest factor, which does not turn on election-related fees and costs, but instead focuses upon the public's interest in enforcement of the laws duly enacted by their elected representatives. *See, e.g., Planned Parenthood of Greater Tex. Surgical Health Servs. v. Abbott*, 734 F.3d 406, 419 (5th Cir. 2013) (recognizing that, when a duly enacted law cannot be enforced, "the State necessarily suffers the irreparable harm of denying the public interest in the enforcement of its laws"). Plaintiff's argument that an injunction will serve the public interest by "protect[ing] the right of all Texans to cast their votes effectively and for a broader pool of qualified

candidates," ECF 14 at 19, also misunderstands this factor, as the public does not have an interest in allowing unfettered access to the ballot. *E.g.*, *Lubin v. Panish*, 415 U.S. 709, 717 (1974) (noting that the Constitution's protections "do[] not mean every voter can be assured that a candidate to his liking will be on the ballot"). Plaintiffs do not demonstrate that a preliminary injunction is in the public interest.

## CONCLUSION

Plaintiffs have not carried their burden to establish entitlement to the extraordinary remedy of a preliminary injunction. Their motion should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy Attorney General for Civil Litigation

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief – General Litigation Division

*/s/ Cory Scanlon*
CORY SCANLON
Texas Bar No. 24104599
RYAN KERCHER
Texas Bar No. 24060998
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 475-4072 PHONE
(512) 320-0667 FAX
cory.scanlon@oag.texas.gov
***COUNSEL FOR DEFENDANTS***

**CERTIFICATE OF SERVICE**

I certify that on January 28, 2022, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

_/s/ Cory A. Scanlon_
Cory A. Scanlon
Assistant Attorney General