**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| WHITNEY BILYEU, MARK ASH, STEPHANIE BERLIN, JOE BURNS, ARTHUR DIBIANCA, KEVIN HALE, DESARAE LINDSEY, ARTHUR THOMAS IV, MARK TIPPETTS, LIBERTARIAN PARTY OF TEXAS, *Plaintiffs*, | § | |
| v. | § | CIVIL ACTION NO. 1:21-cv-01089-RP |
| JOSE A. ESPARZA AND JOHN B. SCOTT, *Defendants*. | § | |

---

**DEFENDANTS' RESPONSE BRIEF IN OPPOSITION TO PLAINTIFFS' APPLICATION FOR PRELIMINARY INJUNCTION**

---

Plaintiffs, the Libertarian Party of Texas (LPT) and its candidates seeking the LPT nomination for various elected offices in the State of Texas, challenge the requirement under Texas Election Code § 181.0311 that a candidate must either pay a filing fee or submit a petition in lieu of the filing fee with the required number of signatures before that candidate may be nominated at a convention and appear on the general election ballot. Their Motion for Preliminary Injunction seeks "to prevent the enforcement of Texas Election Code § 181.0311 against them in the 2022 election cycle." ECF 14 at 1. Defendants John B. Scott in his official capacity as Secretary of State of Texas and Jose A. "Joe" Esparza in his official capacity as Deputy Secretary of State of Texas respectfully file this Brief in Opposition.

**INTRODUCTION**

In November 2019, this Court considered—and rejected—a request by LPT and other parties

to enjoin a similar version of the same statute challenged here. *Miller v. Doe*, 422 F. Supp. 3d 1176, 1190 (W.D. Tex. 2019). The Court concluded (among other things) that the plaintiffs had failed to show that the predecessor statute "would not withstand scrutiny under the *Anderson-Burdick* framework" or that a preliminary injunction for the 2020 election cycle would serve the public interest. *Id.* Two years later, the Court is faced with a similar request. But the result is even clearer in this case: Plaintiffs have not demonstrated a likelihood of success on the merits of their claims, and they make the same conclusory allegations of irreparable harm as the *Miller* plaintiffs. What's more, Plaintiffs did not even seek a preliminary injunction until after the deadline for third-party candidates to submit an application to their party chair along with the filing fee or signature petition. Thus, Plaintiffs cannot carry their burden on the balance-of-equities and public-interest factors. All told, Plaintiffs ask this Court to disturb the status quo for third-party candidates—months into the 2022 election cycle—yet they provide no justification for such extraordinary relief in this instance.

Section 181.0311 does not require a candidate seeking the nomination of a third party to pay a filing fee—it gives the prospective candidate the option to submit a petition in lieu of the filing fee "to be considered for nomination." Act of May 26, 2021, 87th Leg., R.S., ch. 149 (S.B. 2093), § 1, 2021 Tex. Gen. Laws (codified at Tex. Elec. Code § 181.0311).[1] Notwithstanding this Court's prior ruling,

[1] A more robust explanation of this legislation, and its predecessor statute, is included in Defendants' Response in Opposition to Plaintiff's Application for Preliminary Injunction. ECF 21 at 2–3. SB 2093 reads, in part:

> Section 141.041, Election Code, is transferred to Subchapter B, Chapter 181, Election Code, redesignated as Section 181.0311, Election Code, and amended to read as follows:
> Sec. 181.0311. FILING FEE OR PETITION REQUIRED.
> (a) In addition to any other requirements, to be considered for nomination by convention, a candidate must:
> (1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or
> (2) submit to the secretary of state for a statewide office or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.

this general ballot access scheme has been upheld as a constitutional mechanism for ensuring candidates demonstrate a sufficient modicum of support in at least one form or another for decades in federal courts and in its current form very recently in Texas's state court system. *E.g.*, *Holmes v. Gonzales*, 237 F.3d 630 (5th Cir. 2000) (per curiam) (citing *Jenness v. Forston*, 403 U.S. 431, 442 (1971)); *Hughs v. Dikeman*, 631 S.W.3d 362, 381 (Tex. App.—Houston [14th Dist.] 2020, pet. denied), *prior opinion cited favorably in In re Green Party of Tex.*, 630 S.W.3d 36, 38 (Tex. 2020); *see also Am. Party of Tex. v. White*, 415 U.S. 767, 793–94 (1974).[2]

Plaintiff's supporting brief misstates this requirement at least five times. ECF 27 at 2 ("making them pay a filing fee"), 5 (The requirement "prohibit[s] a candidate from even being 'considered . . .' unless a filing fee has been paid" and "Libertarians may not think about, much less debate, the merits of an individual candidate unless that person has paid the filing fee"), 7 (claiming the filing fee "serves as a de facto 'poll tax'"), 8 (claiming that upholding the rule will "exclud[e] candidates who have not

---

Tex. Elec. Code § 181.0311.

[2] As it relates to Plaintiffs' claims of unequal treatment, the Supreme Court's analysis of Texas's statutory scheme bears repeating in full:

> The State reimburses political parties for none of the expenses in carrying out these procedures. New parties and those with less than 2% of the vote in the last election are permitted to nominate their candidates for office in the course of their convention proceedings. The major parties may not do so and must conduct separate primary elections. As we understand it, it is the expense of these primaries that the State defrays in whole or in part. As far as the record before us shows, none of these reimbursed primary expenses are incurred by minority parties not required to hold primaries. They must undergo expense, to be sure, in holding their conventions and accumulating the necessary signatures to qualify for the ballot, but we are not persuaded that the State's refusal to reimburse for these expenses is any discrimination at all against the smaller parties and if it is, that it is also a denial of the equal protection of the laws within the meaning of the Fourteenth Amendment. We are unconvinced, at least based upon the facts presently available, that this financing law is an "exclusionary mechanism" which "tends to deny some voters the opportunity to vote for a candidate of their choosing" or that it has "a real and appreciable impact on the exercise of the franchise."

*White*, 415 U.S. at 793–94 (quoting *Bullock v. Carter*, 405 U.S. 134, 144 (1972)).

paid the fee"). Putting aside these distortions of the law, Plaintiffs also make the baseless accusation that Section 181.0311 gives the State power to regulate speechmaking at the LPT state convention, which would lead to the imposition of strict constitutional scrutiny on any state election law that regulates access to the ballot.

These assertions lack any legal or factual support under the *Anderson-Burdick* burden analysis, and Plaintiffs therefore demonstrate no likelihood of success on their claims. *See Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 329 (5th Cir. 2005). Plaintiffs' conclusory statements of constitutional burdens are not enough to show that irreparable harm will occur absent an injunction—indeed more than half of the candidates who are plaintiffs have paid the filing fee that they challenge in this case. *See id.* Finally, Plaintiffs cannot show that granting an injunction is in the public interest when weighed against the State's interest in ensuring a fair and orderly ballot and election—particularly when, as here, the time for complying with the challenged provision has passed and the 2022 election cycle is already well underway. *See id.* For these reasons, Defendants respectfully ask the Court to deny the Motion for Preliminary Injunction.

## ARGUMENT & AUTHORITY

### I. Legal Standard

To obtain preliminary injunctive relief, the applicant must show (1) a substantial likelihood that he will prevail on the merits, (2) a substantial threat that he will suffer irreparable injury if the injunction is not granted, (3) that his threatened injury outweighs the threatened harm to the party whom he seeks to enjoin, and (4) that granting the relief will serve the public interest. *Sanchez*, 403 F.3d at 329. Courts do not grant such relief "unless the party seeking it has clearly carried the burden of persuasion on all four requirements." *PCI Transp. Inc. v. Ft. Worth & Wstrn. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005). The decision rests with the trial court, and judges grant such requests only under

exceptional circumstances. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985).

**II. Plaintiffs have not demonstrated a likelihood of success on the merits.**

**A. *Anderson-Burdick* standard**

By asserting that an election code provision burdens Plaintiffs' associational rights under the First Amendment and equal-protection rights under the Fourteenth Amendment, *Anderson-Burdick* scrutiny applies. *See Tashjian v. Republican Party of Conn.*, 479 U.S. 208, 213–14 (1986) (citing *Anderson v. Celebreeze*, 460 U.S. 780, 789 (1983)). The test requires courts to balance "the character and magnitude of the asserted injury" to the rights the plaintiff seeks to vindicate against "the precise interests put forward by the State as justifications" for the challenged rule, all while taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights." *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson*, 460 U.S. at 789). When a state election law imposes only "reasonable, nondiscriminatory restrictions" on the First and Fourteenth Amendment rights of voters, "the state's important regulatory interests are generally sufficient to justify" the restrictions. *Anderson*, 460 U.S. at 788. Only "severe restrictions" on a voter's rights require that the regulation be "narrowly drawn to advance a state interest of compelling importance." *Burdick*, 504 U.S. at 434 (quoting *Norman v. Reed*, 502 U.S. 279, 289 (1992)).

**B. Plaintiffs are not foreclosed from "considering anything" at the convention.**

A chair of any political party is required under the Texas Election Code to determine whether the candidates seeking the nomination of their respective party are eligible and whether the candidates' applications meet the requirements as to form, content, and procedure. *See* Tex. Elec. Code §§ 141.031, .032, 181.031. Section 181.0311's requirement that a candidate either pay a filing fee or submit a petition in lieu of the fee to become the nominee of a third party is within the same category as these

threshold requirements to run for public office and does not impose a constitutionally severe burden on the speech or associational rights of any person seeking the nomination of their respective party. *See* Tex. Elec. Code § 181.0311; *White*, 415 U.S. at 787. "Consider" may be defined as to "regard (someone or something) as having a specified quality" and to "take (something) into account when making an assessment or judgment." *Consider*, Oxford Languages provided by Google, *available at* https://www.google.com/search?q=define+consider&rlz=1C1GCEA_enUS869US869&oq=define+&aqs=chrome.0.69i59j69i57j0i131i433l2j0i512l2j0i433i512j0i512j0i131i433i512j0i433i512.2912j1j15&sourceid=chrome&ie=UTF-8 (last visited Feb. 17, 2022). A fair reading of this provision, in the context of the prepositional phrase "[i]n addition to any other requirements," leads a reasonable reader of the text to only one logical conclusion: candidates seeking the nomination of a party by convention must first submit the required signature petition with their application or pay the required fee, just as a major-party candidate seeking public office in Texas must do. *See* Tex. Elec. Code § 181.0311; *see also id.* §§ 172.021, 172.024, 172.025.

The Election Code does not compel or prohibit speech or thought, nor does it tell LPT with whom it may associate; and though it may pose a burden on a person seeking to exercise certain associational rights, that burden does not warrant strict scrutiny under any of the cases Plaintiffs cite. *Timmons v. Twin Cities Area New Party* upheld a state requirement that candidates could not appear on the ballot under more than one political party's flag; this certainly involves the regulation of expressive conduct from both the candidate and the parties involved, yet the Court imposed *Anderson-Burdick* scrutiny in deciding this issue. 520 U.S. 351, 365–70 (1997); *see also Bullock v. Carter*, 405 U.S. 134, 143 (1972) (burdens on a candidate's access to the ballot are not subject to strict scrutiny). Section 181.0311 sets forth no limitations on internal party operations, thus *Eu v. S.F. Cty. Democratic Cent. Cmte.* is likewise distinguishable and inapplicable. 489 U.S. 214, 230 (1989).

Section 181.0311 furthers the state's legitimate, important regulatory interests in equal treatment of candidates, *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 186 (5th Cir. 1996), requiring candidates to show a modicum of public support to appear on the ballot, *Jenness*, 403 U.S. at 442, protecting the integrity of the political process from frivolous or fraudulent candidacies, *Bullock*, 405 U.S. at 145, and preventing the expenditure of public funds on candidacies lacking popular support, *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 277 (2d Cir. 2021) (quoting *Buckley v. Valeo*, 424 U.S. 1, 96 (1976)). The provision ensures equal treatment by requiring LPT's candidates to pay filing fees or collect signatures at the same level as the primary parties. *See* Tex. Elec. Code §§ 172.024, .025, 181.0311; *Kirk*, 84 F.3d at 186. The provision serves the purpose of verifying the candidate has a significant modicum of public support by requiring the candidate to demonstrate it has "skin in the game," and it tends to prevent frivolous or nonserious candidates for the same reason. *See* Exhibit D-1, HB 2504 (predecessor statute) Committee Testimony by Bill Author Rep. Drew Springer.

*Democratic Party of U.S. v. Wisconsin* held that the State of Wisconsin could not mandate that the National Democratic Party seat its delegates in violation of National Party rules. 450 U.S. 107, 120–24 (1981). That case had nothing to do with the requirements for candidates seeking a party's nomination to first demonstrate a modicum of public support. *See id.* In other words, the state cannot compel a party to assign delegates for a candidate the party does not want as its standard bearer under the First Amendment. *Id.* Here, LPT is free to choose any eligible candidate seeking the nomination that meets the reasonable, nondiscriminatory threshold requirements under the Texas Election Code—Section 181.0311 does not place a limit on whom the party may associate with based on that person's ideology or refusal to adhere to an ideology; rather, it sets the appropriate level for any political candidate to show a modicum of public support. *See Jenness* 403 U.S. at 442. Further, both *Democratic Party* and *Cal. Democratic Party v. Jones* dealt with the associational "right to exclude," rather

than the right to include, and are not helpful to establishing that Plaintiffs are likely to succeed on the merits. 530 U.S. 567, 575 (2000); 450 U.S. at 123.

**C. Any burden imposed by Section 181.0311 is not discriminatory.**

Section 181.0311 sets forth the requirements for candidates seeking public office to become the nominee of a third party that nominates its candidates by convention, and those requirements are the same requirements faced by candidates who nominate through a primary process, and are thus reasonable and nondiscriminatory. Tex. Elec. Code §§ 172.021, 181.0311; *see Anderson*, 460 U.S. at 788. As explained at length in Defendants' Response to the Application for Preliminary Injunction, ECF 21 at 7–8, Plaintiffs are not similarly situated to the primary parties or their candidates because they are not mandated by the Election Code to nominate candidates through primary elections and incur the attendant expenses. *See Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 167–68 (5th Cir. 2009) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Further, if the State is constitutionally permitted to give public funds to parties above a certain threshold (but not to parties who fail to meet that threshold), Plaintiffs have no likelihood of success on the claim that refusal to reimburse them for a primary in which they incur no expenses is discriminatory. *See White*, 415 U.S. at 793–94 (quoting *Bullock v. Carter*, 405 U.S. 134, 144 (1972)); Note 2, supra; *see also SAM Party of N.Y.*, 987 F.3d at 277.

But even if Plaintiffs were similarly situated, as the Texas Fourteenth Court of Appeals observed, Plaintiff's assertion that they are discriminated against because their filing fees are not used to reimburse primary expenses (and all parties agree that LPT does not incur primary expenses) has no relation to the burden faced by third-party and primary *candidates*, which are the same, are reasonable, and are nondiscriminatory. *Hughs*, 631 S.W.3d at 377–78. And as the *Burdick* court further explained, "limiting the choice of candidates to those who have complied with state election law requirements is the prototypical example of a regulation that, while it affects the right to vote, is

eminently reasonable." 504 U.S. at 440 n.10.

Plaintiffs' claim that they face a severe burden in satisfying the challenged requirement is belied by the fact that the majority of plaintiffs in this case have already paid the filing fee. ECF 12 ¶ 69; Texas Secretary of State, 2022 Libertarian Party Candidates for Convention, https://www.sos.state.tx.us/elections/forms/2022-libertarian-party-candidates-for-convention.pdf (last visited Feb. 16, 2022). Additionally, when Plaintiffs mischaracterize the requirement as a "pay to play" scheme, they again ignore the petition alternative and the reasoning of the Supreme Court:

> Hard work and sacrifice by dedicated volunteers are the lifeblood of any political organization. Constitutional adjudication and common sense are not at war with each other, and we are thus unimpressed with arguments that burdens like those imposed by Texas are too onerous, especially where two of the original party plaintiffs themselves satisfied these requirements.

*White*, 415 U.S. at 787. For these reasons, Plaintiffs have not demonstrated a likelihood of success on the merits of their claims that Section 181.0311 is unconstitutional.

## III. Plaintiffs will not suffer irreparable harm, the balance of equities weighs against granting relief, and granting the injunction will not serve the public interest.

Critically, for the five candidate plaintiffs who have already paid filing fees, there is no possibility of irreparable harm if the law is not enjoined. *See Miller*, 422 F. Supp. 3d at 1190–91 (citing *Aransas Project v. Shaw*, 775 F.3d 641, 648 (5th Cir. 2014)).[3] For those who refused to pay the fee or collect signatures, the substantive requirements of Section 181.0311 have been the law since September 1, 2019. Act approved June 7, 2019, 86th Leg., R.S., ch. 822 (H.B. 2504), § 1, sec. 141.041, 2019 Tex. Sess. Law Serv. 822 (formerly codified at Tex. Elec. Code § 141.041). SB 2093, which transferred the provision to a different chapter of the Election Code, was passed by the Legislature

[3] Plaintiffs supporting brief did not acknowledge this Court's analysis in *Miller* despite the similarities between the arguments for and against injunctive relief asserted in both cases.

on May 13, 2021 and signed by the Governor on May 26, 2021. Act of May 26, 2021, 87th Leg., R.S., ch. 149 (S.B. 2093), § 1, 2021 Tex. Gen. Laws. Yet Plaintiffs waited over six months to file their complaint, and then waited until *after* the deadline for candidates to submit a filing fee or signature petition had passed to seek a preliminary injunction. Any immediacy in their need for relief is a creation of their own tactical choice.

Plaintiffs' request for the Court to simply enjoin the law as unconstitutional now and reverse itself later when the law is upheld impermissibly shifts the burden of persuasion to Defendants and ignores that the Supreme Court "has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election." *RNC v. DNC*, 140 S. Ct. 1205, 1207 (2020) (per curiam) (citing *Purcell v. Gonzalez*, 549 U.S. 1 (2006) (per curiam)); *PCI Transp. Inc.*, 418 F.3d at 545. Texas suffers irreparable harm any time its duly enacted laws are enjoined from enforcement, *Abbott v. Perez*, 138 S. Ct. 2305, 2324 n.17 (2018), and this is particularly true here, where Plaintiffs are asking the Court to alter the election rules, not on the eve of, but in the middle of an election after early votes have already been cast. *See RNC v. DNC*, 140 S. Ct. at 1207; *Tex. Alliance for Retired Ams. v. Hughs*, 976 F.3d 564, 566–67 (5th Cir. 2020) (per curiam) (Secretary of State showed irreparable harm if not ensured "proper and consistent running of its election machinery[.]") Finally, excusing Plaintiffs from meeting Section 181.0311's requirements is not in the public interest because enjoining this law makes the prospect of frivolous or unserious candidates, and the consequent degradation of the electoral process, more likely. *See Bullock*, 405 U.S. at 145. None of the remaining preliminary injunction factors are satisfied here. *See Sanchez*, 403 F.3d at 329.

## Conclusion

Plaintiffs have not carried their burden to establish entitlement to the extraordinary remedy of a preliminary injunction. Their motion should be denied.

Respectfully submitted,

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

GRANT DORFMAN
Deputy Attorney General for Civil Litigation

SHAWN COWLES
Deputy Attorney General for Civil Litigation

THOMAS A. ALBRIGHT
Chief – General Litigation Division

*/s/ Cory Scanlon*
CORY SCANLON
Texas Bar No. 24104599
RYAN KERCHER
Texas Bar No. 24060998
Assistant Attorney General
Office of the Attorney General
General Litigation Division
P.O. Box 12548, Capitol Station
Austin, TX 78711-2548
(512) 475-4072 PHONE
(512) 320-0667 FAX
cory.scanlon@oag.texas.gov
***COUNSEL FOR DEFENDANTS***

## CERTIFICATE OF SERVICE

I certify that on February 21, 2022, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Cory A. Scanlon*
Cory A. Scanlon
Assistant Attorney General