IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, *individually and as Chair of the Libertarian Party of Texas*; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS, | § § § § § § § § | |
| | § | 1:21-CV-1089-RP |
| Plaintiffs, | § § | |
| v. | § § | |
| JOHN B. SCOTT, *in his official capacity as the Secretary of State of the State of Texas*, and JOSE A. "JOE" ESPARZA, *in his official capacity as the Deputy Secretary of State of the State of Texas*, | § § § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court is Plaintiffs Whitney Bilyeu, Mark Ash, Stephanie Berlin, Joe Burnes,

Arthur Dibianca, Kevin Hale, Desarae Lindsey, Arthur Thomas IV, Arthur Thomas IV, Mark

Tippetts, and Libertarian Party of Texas's ("LPT") (collectively "Plaintiffs") Motion for a

Preliminary Injunction (the "Motion") filed January 14, 2022. (Dkt. 14). The parties conducted

limited discovery and filed responsive briefing. (Dkts. 21, 27, 28, 30). The Court held a hearing on

the Motion on February 24, 2022. (Prelim. Inj. Hr'g, Dkt. 32). Having considered the briefing, the

arguments made at the hearing, the evidence, and the relevant law, the Court will deny the Motion.

### I. BACKGROUND

This is a case concerning ballot access for third-party candidates. Plaintiffs, the LPT and

several of its candidates and officers, challenge the filing fee or "petition in lieu of fee" requirements

in Texas Election Code § 181.0311, enacted as SB 2093 on May 29, 2021. (Mot. Prelim. Inj., Dkt. 14,

at 3). This section requires candidates of political parties that select their election slate through the convention process to pay a filing fee or submit a petition with the requisite number of signatures to stand for election at the party's convention. Plaintiffs claim the statute violates their First and Fourteenth Amendment rights to freedom of speech and association as well as equal protection and due process of law. (*Id.* at 2).

At the outset, it bears noting the hostility in the current landscape of the law toward third parties such as LPT. There is no question that laws of the sort at issue here have the effect of entrenching the two-party system in this state and across the country. States claim to benignly ask putative candidates to demonstrate a "modicum of support" in exchange for the privilege of appearing on the ballot. *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). Yet the routes to demonstrating such support are severely constrained by laws like the one challenged here. Third parties thus continue to face significant barriers in their efforts to participate in the democratic process. That said, the Court is bound by the law of this Circuit and will, as it must, address the claims at hand under the law as it presently exists.

Under Texas law, a party can select its candidates for the general election in one of two ways: a convention or a primary. Tex. Elec. Code §§ 172.001–02; 181.002–03. The method a party uses is determined based on its level of support in the most recent gubernatorial election. *Id.* at § 172.001. If a party received twenty percent or more of the total votes cast, the party nominates its candidates by primary; if the party received between two and twenty percent of the vote, it may choose between a primary and a convention; if the party received less than two percent of the vote, it must nominate by convention. (Resp., Dkt. 21, at 3; *see* Tex. Elec. Code §§ 172.001–02; 181.002–03). The Supreme Court has upheld this divided process, affirming that the State does not "invidiously discriminate[] against the smaller parties by insisting that their nominations be by convention, rather than by primary election." *Am. Party of Texas v. White*, 415 U.S. 767, 781, 794 (1974) The LPT candidate

received less than two percent of the vote in the last gubernatorial election, and so the party must select its candidates for all offices by convention. (Resp., Dkt. 21, at 3). Under either the primary or convention process, candidates seeking nomination must submit an application to a party official and pay a filing fee or submit a petition in lieu of the fee to the state or locality, depending on the election. (*Id.*; *see* Tex. Elec. Code §§ 172.021; 172.024–25.; 181.03–33).

Section 181.0311 of the Texas Election Code governs candidates of convention parties. That section requires a candidate to either pay a filing fee or submit a petition in lieu of the fee to be considered at the party's nominating convention.[1] The deadline to pay the filing fee or submit a petition for the 2022 election cycle was December 13, 2021. (Mot. Prelim. Inj., Dkt. 14, at 2). The first LPT convention will be held on March 8, 2022. Some of the candidates who seek to be considered at the convention, including Plaintiff Joe Burns, have not paid the filing fee in protest against the law. (Prelim. Inj. Hr'g, Dkt. 32). Other candidates, including the majority of the plaintiffs, have paid the filing fee but continue to oppose the law. (*Id.*). None of the candidates have opted to submit a petition in lieu of paying the fee, although that option remains open to all candidates. (*Id.*). Plaintiffs ask the Court to enjoin enforcement of § 181.0311 for the 2022 election cycle, in advance of their first convention. For the reasons given below, the Court will deny the Motion.

---

[1] The relevant statutory text reads:

      (a) In addition to any other requirements, to be considered for nomination by convention, a candidate must: (1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or (2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.

      (b) The amount of the filing fee is the amount prescribed by Section 172.024 for a candidate for nomination for the same office in a general primary election.

      (c) A filing fee received by the secretary of state shall be deposited in the state treasury to the credit of the general revenue fund.

      (d) A filing fee received by the county judge shall be deposited in the county treasury to the credit of the county general fund.

      (e) The minimum number of signatures that must appear on the petition authorized by Subsection (a) is the number prescribed by Section 172.025 to appear on a petition of a candidate for nomination for the same office in a general primary election.

      (f) The secretary of state shall adopt rules as necessary to implement this section.

## II. STANDARD OF REVIEW

A preliminary injunction is an extraordinary remedy, and the decision to grant such relief is

to be treated as the exception rather than the rule. *Valley v. Rapides Par. Sch. Bd.*, 118 F.3d 1047, 1050

(5th Cir. 1997). "A plaintiff seeking a preliminary injunction must establish that he is likely to

succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief,

that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v.*

*Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The party seeking injunctive relief carries the burden

of persuasion on all four requirements. *PCI Transp. Inc. v. W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir.

2005). A movant cannot be granted a preliminary injunction unless it can establish that it will suffer

irreparable harm without an injunction. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343,

1350 (Fed. Cir. 2001). Moreover, in the Fifth Circuit, "preliminary injunctions will be denied based

on a failure to prove separately each of the four elements of the four-prong test for obtaining the

injunction." *Gonannies, Inc. v. Goupair.Com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006).

## III. DISCUSSION

Plaintiffs advance two arguments in support of their motion.[2] First, they claim Defendants

infringe their right to freedom of speech and association under the First Amendment by placing

restrictions on who the LPT and its members may "consider" for election at its conventions. (Pls.'

Br., Dkt. 27, at 4). Second, they assert that the law violates their right to equal protection under the

Fourteenth Amendment by treating their filing fees differently than it treats filing fees from primary

party candidates. (*Id.* at 6). Section 181.0311(c)–(d) requires filing fees paid by LPT candidates to be

placed in the State's general fund, whereas filing fees paid by primary party candidates are used to

---

[2] Initially Plaintiffs made several other arguments. (*See* Mot. Prelim. Inj., Dkt. 14). However, their subsequent briefing makes clear that they continue to urge only the two discussed below. (Pls.' Br., Dkt. 27, at 1–2; Reply, Dkt. 30, at 2). Therefore, the Court considers Plaintiffs' other arguments, to the extent they were raised at all, to have been waived for the purpose of this Motion.

reimburse those parties for expenses incurred in conducting their primaries. (*Id.*). Because the Court's analysis differs for each argument, the undersigned will address each in turn.

**A.  Restricting Who a Party May Consider for Nomination**

Plaintiffs argue that the language of the statute, specifically the word "consider," dictates the content of a party's convention, and so infringes the party's speech and associational rights. (Pls.' Br., Dkt. 27, at 4). They assert the State has no compelling interest in regulating which candidates a party considers internally at its own convention. (*Id.* at 6). The statute intrudes too far into the LPT's inner workings, they claim, and constrains their rights to associate as a party and to speak when they do not meet the statute's requirements. (*Id.*). Therefore, they argue that the fee or petition requirement violates the First Amendment.

Courts evaluating the constitutionality of election laws employ the test announced by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), as refined in *Burdick v. Takushi*, 504 U.S. 428 (1992).[3] In *Anderson*, the Supreme Court instructed lower courts to evaluate elections laws by considering the "character and magnitude of the asserted injury" posed by the statutes to the plaintiff's asserted rights, and then weighing that against the interest put forward by the state. 460 U.S. at 788. In *Burdick*, the Court clarified that, when state regulation imposes severe restrictions on the rights of voters, the regulation must be narrowly drawn to advance a compelling government interest. 504 U.S. at 434. However, where the restrictions are reasonable and nondiscriminatory, the State's important regulatory interests usually suffice to justify the restrictions. *Id.*

---

[3] Plaintiffs repeatedly assert that their claims are properly analyzed under strict scrutiny rather than the more lenient *Anderson-Burdick* test. (*See Reply*, Dkt. 30, at 1). The Court see no reason to depart from the weight of authority nor its own prior order on this question and will apply the *Anderson-Burdick* test in addressing Plaintiffs' First Amendment claims. *See Miller v. Doe*, 422 F. Supp. 3d 1176, 1190 (W.D. Tex. 2019); *see also Bullock v. Carter*, 405 U.S. 134, 143 (1972) (burdens Texas places on a candidate's ballot access are not subject to strict scrutiny).

The Court agrees with Defendants that the restrictions here likely represent reasonable and nondiscriminatory measures that are comparable to those the Fifth Circuit and the Supreme Court have previously upheld as reasonable under the *Anderson-Burdick* test. (Defs.' Br., Dkt. 28, at 5–7). For example, in *Texas Independent Party v. Kirk*, the Fifth Circuit upheld an early deadline for nominating petitions and candidate declarations of intent for minor parties. 84 F.3d 178, 184 (5th Cir. 1996). The Court explained that, "[i]n the context of a nondiscriminatory [requirement] that applies to all parties and candidates, we see little burden" even when, as the plaintiffs claimed, the challenged deadline "requires them to decide to run for office sooner rather than later." *Id.* Here, as there, a filing fee or petition requirement applies to candidates of all parties—primary or convention. *Id.* Indeed, Section 181.0311 may even be less discriminatory than the law at issue in *American Party of Texas v. White*, 415 U.S. 767 (1974), where the Supreme Court affirmed a Texas ballot access measure requiring minor parties and independent candidates demonstrate sufficient electoral support, including requiring petition signatures after the primary election. Likewise, the requirements are less onerous than restrictions courts have found unconstitutionally burdensome, such as the closed primary system invalidated in *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 225 (1986). Unlike there, Texas's convention ballot access requirements do not limit candidates' or voters' ability to freely associate, but rather create steps for all candidates to fulfill as they go about associating as the choose. *C.f. Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107, 120–24 (1981) (holding the State could not mandate a national party seat delegates in violation of the party's national rules).

The State's interests too are similar to those that Courts have repeatedly approved. Defendants point to the "'important state interest in requiring some preliminary showing of a significant modicum of support' for those on the ballot and 'in avoiding confusion, deception, and even frustration of the democratic process at the general election'" and relatedly, the interest in

"streamlining the ballot, avoiding ballot overcrowding, and reducing voter confusion." (Resp., Dkt. 21, at 5 (citing *Jenness*, 403 U.S. at 442)). Although Defendants could not "make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of" ballot access restriction, courts "have never required" such a showing to find the restrictions reasonable. *Munro v. Socialist Workers Party*, 479 U.S. 189, 194–95, (1986).

Most fundamentally, the § 181.0311 requirements advance the State's interest in ensuring party's candidates demonstrate "a significant modicum of support." *Jenness*, 403 U.S. at 442. Indeed, "the State has a legitimate goal of requiring a demonstration of sufficient public support to gain access to the ballot." *Kirk*, 84 F.3d at 186; *Hughs v. Dikeman*, 631 S.W.3d 362, 379 381 (Tex. App.— Houston [14th Dist.] 2020, pet. denied) ("[A] modicum of public support can be evidenced via supporters' signatures or . . . . candidates can still evidence their bona fide candidacies by paying a filing fee"); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997) ("[The State's] interest does not permit a State to completely insulate the two-party system from minor parties' or independent candidates' competition and influence. [But] the States' interest permits them to enact reasonable election regulations that may, in practice, favor the traditional two-party system, . . . and that temper the destabilizing effects of party-splintering and excessive factionalism."). In addition, the State has a legitimate interest in ensuring all candidates are treated equally, regardless of party. (Defs.' Br., Dkt. 28, at 7; *see Kirk*, 84 F.3d at 186). Section 181.0311 treats candidates of all parties equally by imposing the same filing fee or petition requirements on convention and primary party candidates and is therefore nondiscriminatory. *See* Tex. Elec. Code §§ 172.024, .025, 181.0311. Further, Defendants advance the state's interests in "protecting the integrity of the political process from frivolous or fraudulent candidacies," (Defs.' Br., Dkt. 28, at 7 (citing *Bullock v. Carter*, 405 U.S. 134, 144 (1972))), and "preventing the expenditure of public funds on candidacies lacking popular

support," (Defs.' Br., Dkt. 28, at 7 (citing *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 277 (2d Cir. 2021) (quoting *Buckley v. Valeo*, 424 U.S. 1, 96 (1976)))). The Court finds that Defendants can likely establish the existence of important, if not compelling, state interests in this vein—all that is required to uphold this likely reasonable and nondiscriminatory election law under the *Anderson-Burdick* test. *See Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S., at 788).

Plaintiffs rightly note that the Supreme Court has "continually stressed that when States regulate parties' internal processes they must act within limits imposed by the Constitution." *Cal. Democratic Party v. Jones*, 530 U.S. 567, 573 (2000). Yet here, the Court is unconvinced that the requirements at issue constitute a significant intrusion into the party's internal processes. Plaintiffs assert that the statute regulates who they can allow to speak, and whose ideas they are permitted to discuss, at their conventions. (Pls.' Br., Dkt. 27, at 5 ("The Libertarians may not think about, much less debate, the merits of an individual candidate unless that person has paid the filing fee.")). If this were the meaning of the law at issue, Plaintiffs would likely have a stronger case. But Defendants note, and the Court agrees, that § 181.0311 does not go so far. (Resp., Dkt. 21, at 11). It does not regulate how parties conduct their conventions, nor regulate anyone's speech. Rather, it creates a series of steps an individual must take to be put up for election at the convention, just as elsewhere the election code imposes requirements for primary party candidates to be placed on their respective primary ballots. (*See id.*). It does not restrict a party from nominating anyone who meets these requirements. (*Id.*). The statute therefore only regulates the limited act of selecting names to place on the general election ballot and is unlikely to constitute and intrusion into internal party activities. A party remains free to host any speakers or discussions at its convention that it chooses so long as those "considered"—effectively, those placed on the primary ballot—follow the statutory requirements. The same is required of primary parties and their candidates. The word "consider"

does not transform the act of selecting a party's candidates from an election activity to an internal party proceeding.

In weighing these arguments, the Court in no way intends to minimize the important democratic function of a party's selection of its candidates representing, as it does, "the crucial juncture at which the appeal to common principles may be translated into concerted action, and hence to political power in the community." *Jones*, 530 U.S. at 575–76 (quoting *Tashjian*, 479 U.S. at 216). However here, the Court finds it unlikely that the State's reasonable and nondiscriminatory ballot access requirements constitute such a burden to these principles as to outweigh the State's own important interests. As Defendants note, "Section 181.0311 does not place a limit on whom the party may associate with based on that person's ideology or refusal to adhere to an ideology; rather, it sets the appropriate level for any political candidate to show a modicum of public support." (Defs.'s Br., Dkt. 28, at 7). Having found that Plaintiffs are unlikely to succeed on the merits of this claim, the Court cannot grant a preliminary injunction on this ground.

### B.  Depositing Filing Fees in the General Revenue Fund

Next, Plaintiffs claim that by requiring filing fees to be deposited "in the state treasury to the credit of the general revenue fund," Tex. Elec. Code §§ 181.0311(c)–(d), it treats the LPT and other third parties differently from primary parties. Unlike third parties, primary party candidates pay their filing fees directly to the party, which uses the fees to fund its primary elections. *See* Tex. Elec. Code §§ 173.033-.034; (Pls.'s Br., Dkt. 27, at 6). Because the LPT does "not receive any of those fees back from the State to defray the cost of its convention process" and must "fund its own conventions," Plaintiffs claim "the filing fee as applied serves as a de facto 'poll tax' . . . rather than as a legitimate gatekeeping mechanism." (*Id.* at 6–7).

On this issue, the Court's analysis begins and ends with its finding that Plaintiffs have failed to demonstrate they will be irreparably harmed in the absence of an injunction.[4] A showing of a "substantial threat of irreparable injury" requires the threatened harm be imminent and one that cannot be remedied through damages. First, the threat of injury must be substantial—meaning, "the threat must be actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009); *see also Google, Inc. v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016) (injury must be imminent and non-speculative). Second, the injury must be irreparable—an injury "for which compensatory damages are unsuitable." *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 24 (5th Cir. 1992); *see also Dennis Melancon, Inc. v. City of New Orleans*, 703 F.3d 262, 279 (5th Cir. 2012) ("The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm.") (cleaned up); *Janvey v. Alguire*, 647 F.3d 585, 600 (5th Cir. 2011) ("In general, a harm is irreparable where there is no adequate remedy at law, such as monetary damages."); *G&G Closed Circuit Events, LLC v. 1) GCF enterprises LLC*, 2015 WL 7313427, at *5 (W.D. Tex. Nov. 19, 2015) ("An irreparable injury is defined as one which cannot be undone through monetary remedies.").

Here, were Plaintiffs to prevail on the merits, any harm found would be fully compensable in damages. Plaintiffs dress their claim as challenging a discriminatory "poll tax" arising from their political affiliation. However, at its core, this argument is simply a dispute over how funds are distributed for conventions as compared to primaries—a request for the state to reimburse the LPT for its operating costs. (Pls.'s Br., Dkt. 27, at 7). This claim is entirely related to access to funds from the state, and as such is precisely the type of injury that can be calculated and redressed by money damages at a later time. *See Danden Petroleum, Inc. v. N. Nat. Gas Co.*, 615 F. Supp. 1093, 1099 (N.D.

---

[4] Because the Court finds no likelihood of irreparable harm on this ground, it declines to reach the merits of Plaintiffs' second argument. *See Gonannies*, 464 F. Supp. 2d at 608.

Tex. 1985) ("Injuries which can be compensated by money damages at a later time are not irreparable and do not warrant the extraordinary remedy of an injunction."); *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) ("There can be no irreparable injury where money damages would adequately compensate a plaintiff."). Because Plaintiffs have failed to establish an imminent injury that cannot be compensated in money damages as to this issue, they have not carried their burden to demonstrate a likelihood of irreparable harm in the absence of a preliminary injunction. Plaintiffs' motion for a preliminary injunction must be denied on this basis as well. Therefore, Plaintiffs cannot establish entitlement to a preliminary injunction based on either of the arguments they advance.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Plaintiffs' Motion for Preliminary Injunction, (Dkt. 14), is **DENIED**.

**SIGNED** on March 1, 2022.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE