IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS, IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS, *Plaintiffs*, | § § § § § § § § § § | |
| v. | § § | CIVIL ACTION No. 1:21-CV-01089 |
| JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas, *Defendants*. | § § § § § § | |

**DEFENDANTS' MOTION TO DISMISS**

Defendants Jane Nelson and Joe Esparza file this Motion to Dismiss and respectfully offer the following in support:

**BACKGROUND**

On December 1, 2022, Plaintiffs filed an Original Complaint asserting that their First Amendment freedom of speech and association rights were violated by the filing fee or "petition in lieu of fee" requirements in the Texas Election Code, and that their Fourteenth Amendment due process and equal protection rights are violated because their filing fees are deposited into the general revenue fund instead of being used to reimburse the costs of holding a convention. Dkt. 1.

1

On January 14, 2022, Plaintiffs applied for a preliminary injunction. Dkt. 14.

A hearing was held on February 24, 2022. Dkt. 32.

On March 1, 2022, this Court entered an Order denying Plaintiffs a preliminary injunction after finding that they were unlikely to succeed on the merits. Dkt. 35.

Plaintiffs' Third Amended Complaint, Dkt. 57, contains the same general claims as their Original Complaint, Dkt. 1.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Standard of Review

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Arguments & Authorities

Courts evaluating the constitutionality of election laws employ the test announced by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), as refined in *Burdick v. Takushi*, 504 U.S. 428 (1992). In *Anderson*, the Supreme Court instructed lower courts to evaluate elections laws by considering the "character and magnitude of the asserted injury" posed by the statutes to

the plaintiff's asserted rights, and then weighing that against the interest put forward by the state. 460 U.S. at 788. In *Burdick*, the Court clarified that, when state regulation imposes severe restrictions on the rights of voters, the regulation must be narrowly drawn to advance a compelling government interest. 504 U.S. at 434. However, where the restrictions are reasonable and nondiscriminatory, the State's important regulatory interests usually suffice to justify the restrictions. *Id*.

I.     **Plaintiffs fail to state free speech and association claims.**

Plaintiff cannot state a free speech and association claim because the filing fee or "petition in lieu of fee" requirements are reasonable, nondiscriminatory, and further an important state interest. Dkt. 57 ¶¶21-24.

This Court has previously held that the filing fee or "petition in lieu of fee" "likely represent reasonable and nondiscriminatory measures that are comparable to those the Fifth Circuit and the Supreme Court have previously upheld as reasonable under the *Anderson-Burdick* test." Dkt. 35 at 6 (citing Dkt. 28 at 5–7).

The filing fee or "petition in lieu of fee" is nondiscriminatory. In *Texas Independent Party v. Kirk*, the Fifth Circuit upheld an early deadline for nominating petitions and candidate declarations of intent for minor parties. 84 F.3d 178, 184 (5th Cir. 1996). The Fifth Circuit explained that, "[i]n the context of a nondiscriminatory [requirement] that applies to all parties and candidates, we see little burden" even when, as the plaintiffs claimed, the challenged deadline "requires them to decide to run for office sooner rather than later." *Id*. Here, as there, a filing fee or petition requirement applies to candidates of all parties—primary or convention. *Id*. Indeed, the challenged laws present an even clearer case for constitutionality than the law at issue in *American*

*Party of Texas v. White*, 415 U.S. 767 (1974), where the Supreme Court affirmed a Texas ballot access measure requiring minor parties and independent candidates to demonstrate sufficient electoral support, including requiring petition signatures after the primary election.

Likewise, the filing fee or "petition in lieu of fee" requirements are less onerous than restrictions courts have found unconstitutionally burdensome, such as the closed primary system invalidated in *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 225 (1986). Unlike there, Texas's convention ballot access requirements do not limit candidates' or voters' ability to freely associate, but rather create steps for all candidates to fulfill as they go about associating as the choose. *C.f. Democratic Party of U.S. v. Wisconsin*, 450 U.S. 107, 120–24 (1981) (holding the State could not mandate a national party seat delegates in violation of the party's national rules).

The State has an interest in requiring some preliminary showing of a significant modicum of support and in avoiding confusion, deception, and even frustration of the democratic process at the general election, and in streamlining the ballot, avoiding ballot overcrowding, and reducing voter confusion. Dkt. 21 at 5 (citing *Jenness v. Fortson*, 403 U.S. 431, 442 (1971)). Even assuming for purposes of this motion that Defendants cannot "make a particularized showing of the existence of voter confusion, ballot overcrowding, or the presence of frivolous candidacies prior to the imposition of" ballot access restriction, courts "have never required" such a showing to find the restrictions reasonable. *Munro v. Socialist Workers Party*, 479 U.S. 189, 194–95, (1986).

"The State has a legitimate goal of requiring a demonstration of sufficient public support to gain access to the ballot." *Kirk*, 84 F.3d at 186; *Hughs v. Dikeman*, 631 S.W.3d 362, 379 381 (Tex. App.—Houston [14th Dist.] 2020, pet. denied) ("[A] modicum of public support can be evidenced via supporters' signatures or . . . . candidates can still evidence their bona fide candidacies by paying

4

a filing fee"); *see also Timmons v. Twin Cities Area New Party*, 520 U.S. 351, 367 (1997) ("[The State's] interest does not permit a State to completely insulate the two-party system from minor parties' or independent candidates' competition and influence. [But] the States' interest permits them to enact reasonable election regulations that may, in practice, favor the traditional two-party system, . . . and that temper the destabilizing effects of party-splintering and excessive factionalism.").

In addition, the State has a legitimate interest in ensuring all candidates are treated equally, regardless of party. *See Kirk*, 84 F.3d at 186. The Texas Election Code treats candidates of all parties equally by imposing the same filing fee or petition requirements on convention and primary party candidates and is therefore nondiscriminatory. *See* Tex. Elec. Code §§ 172.031, .024-25, 181.031-311.

Further, the State has an interest in "protect[ing] the integrity of the political process from frivolous or fraudulent candidacies," *Bullock v. Carter*, 405 U.S. 134, 145 (1972), and preventing the expenditure of public funds on candidacies lacking popular support, *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 277 (2d Cir. 2021) (quoting *Buckley v. Valeo*, 424 U.S. 1, 96 (1976)).

As this Court previously found, Defendants have established the existence of important, if not compelling, state interests—all that is required to uphold this likely reasonable and nondiscriminatory election law under the *Anderson-Burdick* test. Dkt. 35 at 8-9. Consequently, Plaintiffs have not stated, and cannot state, free speech and association claims.

II.     **Plaintiffs fail to state equal protection and due process claims.**

Plaintiff cannot state equal protection and due process claims because the depositing of the filing fees in the general revenue fund is reasonable, nondiscriminatory, and furthers an important

state interest. Dkt. 57 ¶¶25-31. Plaintiffs claim that primary parties enjoy favorable treatment because their filings fees are used to establish a fund that reimburses them for the costs of running their primary elections whereas parties nominating by convention pay their filing fees into a general revenue fund at the state or county level, depending on the office sought. *Id*. But this scheme is acceptable under the *Anderson-Burdick* test for at least three reasons.

First, Plaintiffs cannot establish a violation of Equal Protection without first establishing that they are similarly-situated to the primary parties or their candidates. *See Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 167–68 (5th Cir. 2009) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). Plaintiffs are not similarly situated to the primary parties because they do not shoulder the heavy burden of administering primary elections open to large segments of the voting population. *See Kucinich*, 563 F.3d at 167–68 (5th Cir. 2009); *In re Tex. House Republican Caucus PAC*, 630 S.W.3d 28, 35 n.7 (Tex. 2020); *see also White*, 415 U.S. at 781 ("Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution.") (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963)). And even if the parties are not subject to the same code provisions, Plaintiffs conflate the burden on the party with the burden on the candidates. Candidates *are* similarly situated in the sense that, regardless of the party, the candidate must satisfy the same filing-fee or petition-signature requirement by the same deadline. *See* Tex. Elec. Code §§ 172.021 (filing fee or petition requirement for primary-party candidates), 181.0311 (filing fee or petition requirement for third parties). Because this burden is nondiscriminatory and reasonable, the state's interest in ensuring candidates demonstrate a modicum of support satisfies the *Anderson-Burdick* scrutiny standard under longstanding case law. *See Anderson*, 460 U.S. at 788; *White*, 415 U.S. at 787.

Second, Plaintiffs' argument ignores that Plaintiffs could receive the reimbursement they claim they are denied if they obtained sufficient support and chose to exercise their statutory right to conduct a primary election in the same manner as the primary parties. *See* Tex. Elec. Code §§ 172.002(a) (providing that a party receiving at least two percent but less than 20 percent of the total votes cast for governor in the most recent gubernatorial election may nominate by primary), 173.001, .031 (providing for the creation of funds to reimburse expenses incurred by parties conducting primary elections at the state and county level); *see also Jenness v. Fortson*, 403 U.S. 431, 441–42 (1971) ("The fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. Georgia has not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot."). That Plaintiffs did not reach the two percent threshold for this entitlement in the last election is not the fault of Defendants. *See SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 277 (2d Cir. 2021) (quoting *Buckley v. Valeo*, 424 U.S. 1, 96 (1976)) ("The government's 'interest in not funding hopeless candidacies with large sums of public money necessarily justifies the withholding of public assistance from candidates without significant public support.'"). Thus, Texas's statutory scheme for ballot access does not violate equal protection by treating parties with different levels of support differently.

Third, even if the statute treats similarly-situated candidates differently, in addition to the important and compelling state interest in avoiding voter confusion by assuring an orderly ballot described *supra*,[1] those classifications are also justified by compelling state interests in preventing

---

[1] *See Jenness*, 403 U.S. at 442 (1971); *Munro*, 479 U.S. at 194.

the expenditure of public funds on candidacies that lack popular support and in avoiding incentivizing of "unrestrained factionalism." *Valeo*, 424 U.S. at 96; *Storer*, 415 U.S. at 736. A recent case from the Second Circuit applied *Anderson-Burdick* to uphold a system where the state matches a candidate's campaign funds above a certain threshold because the practice serves the state interest in not funding hopeless candidacies. *SAM Party of N.Y.*, 987 F.3d at 277. The same is true here. Texas's system ensures that a party's entitlement to public funds is ratcheted up as the party demonstrates an increase in popular support via its election results, and also ensures that disproportionate amounts of public funds are not expended on candidacies lacking in popular support. *See id.*

Accordingly, Plaintiffs fail to state equal protection and due process claims because the disbursement of collected filing fees is reasonable, nondiscriminatory, and furthers an important state interest.

E. **Plaintiffs' Section 1983 claims have no merit and are jurisdictionally barred.**

Some of the Plaintiffs who are candidates for office have already submitted the filing fee and claim that they are entitled to disgorgement as a penalty under 42 U.S.C. § 1983. Dkt. 57 ¶59. The Court lacks subject-matter jurisdiction over Plaintiffs' claims under 42 U.S.C. § 1983 for damages, which are against Defendants in their official capacities, and not in their individual capacities. Section 1983 renders certain "persons" liable for deprivations of constitutional rights, but "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Mich. Dep't. of State Police*, 491 U.S. 58, 71 (1989). The question of whether the defendant is a "person" under 42 U.S.C. § 1983 is a jurisdictional inquiry. *City of Kenosha, Wisconsin v. Bruno*, 412 U.S. 507, 511–14 (1973) (characterizing the issue as a "jurisdictional question," when raised

for the first time on appeal); *Muzquiz v. City of San Antonio*, 520 F.2d 993, 996 (5th Cir. 1975) (noting that the question of whether the defendant could be sued under 42 U.S.C. § 1983 "touche[d] on the court's jurisdiction").

Here, Defendants are sued in their official capacities and, to the extent sued for damages, are not "persons" that can be sued within the meaning of 42 U.S.C. § 1983. Accordingly, this Court lacks subject-matter jurisdiction over Plaintiffs' § 1983 claims Defendants.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court GRANT this Motion to Dismiss, disposing of all of Plaintiff's claims in their entirety and for any further relief to which they are justly entitled.

    Respectfully submitted,

    **KEN PAXTON**
    Attorney General of Texas

    **BRENT WEBSTER**
    First Assistant Attorney General

    **GRANT DORFMAN**
    Deputy First Assistant Attorney General

    **RALPH MOLINA**
    Deputy Attorney General for Legal Strategy

    **RYAN WALTERS**
    Chief for Special Litigation Division

    */s/Johnathan Stone*
    **JOHNATHAN STONE**
    Special Counsel
    Texas State Bar No. 24071779
    Johnathan.Stone@oag.texas.gov
    Office of the Attorney General
    Special Litigation Division
    P.O. Box 12548, Capitol Station

Austin, Texas 78711-2548
Telephone: (512) 475-4196
Facsimile: (512) 320-0667

***ATTORNEYS FOR DEFENDANT***

## CERTIFICATE OF SERVICE

I certify that that on October 31, 2023, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/ Johnathan Stone*
**JOHNATHAN STONE**
Assistant Attorney General