THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS, | § § § § § § § § § | |
| *Plaintiffs,* | § § | 1:21-CV-01089-RP |
| v. | § § | |
| JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas, | § § § § § § | |
| *Defendants.* | § | |

## FOURTH AMENDED COMPLAINT AND
## APPLICATION FOR DECLARATORY AND INJUNCTIVE RELIEF

Pursuant to Local Rule CV-15(a) and the Court's leave, in response to *Defendants' Motion to Dismiss* (Dkt. 58), Plaintiffs WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS, IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS file their *Fourth Amended Complaint and Application for Declaratory and Injunctive Relief* as follows:

## STATEMENT & RELIEF REQUESTED

1.      Sections 181.0311, 145.004, and 145.036of the Texas Election Code are unconstitutional on their own and operating through other provisions of the code, as applied to Plaintiffs. They severely infringe on Plaintiffs' rights of free speech, association, and equal protection.

2.      They "impose a burden on Plaintiffs that is not reasonably related to the State's interest in ensuring candidates demonstrate a significant modicum of support to qualify for the ballot." *Miller v. Hughs*, 634 F. Supp. 3d 340, 356 (W.D. Tex. 2022). Defendants should be enjoined from enforcing the provisions going forward, and Plaintiffs should be awarded their past damages.

## JURISDICTION AND VENUE

3.      This Court has personal jurisdiction over the Defendants because they are officials of Texas, residing in Texas.

4.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1357, and 2201; 42 U.S.C. §§ 1983 & 1988; and 52 U.S.C. § 10301 *et seq.*

5.      Plaintiffs' action for declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202, as well as by Rules 57 and 65 of the Federal Rules of Civil Procedure.

6.      Jurisdiction for Plaintiffs' claim for costs and attorney fees is based upon Fed. R. Civ. P. 54, 42 U.S.C. § 1988, and 52 U.S.C. § 10310(e).

7.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to the claims in this case occurred in the Western

District of Texas, and Defendants are state officials who maintain an office in Austin, Texas. *See* 28 U.S.C. § 1391(b)(1).

## PARTIES

8.     Plaintiff MARK ASH resides in Harris County, Texas, where he is registered to vote and intends to remain and vote in future elections. In the 2024 election cycle, Ash is a candidate for Place 7, Texas Court of Criminal Appeals. Ash ran as the LPTexas nominee for Attorney General in 2022, the LPTexas nominee for Place 1, Chief Justice of the Texas Supreme Court 2020, and for the LPTexas nominee for Judge, Place 8, Texas Court of Criminal Appeals in 2018. Ash wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. Ash seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention, and he is harmed by the lack of such candidates on Texas's general election ballot.

9.     Plaintiff STEPHANIE BERLIN resides in Bexar County, Texas, where she is registered to vote and intends to remain and vote in future elections. Berlin ran as the LPTexas nominee for District 122 State Representative in 2022, and as the LPTexas nominee for District 5 Representative on the Texas State Board of Education in 2020. Berlin wants to run for office in future elections in Texas as an LPTexas nominee, but the pre-convention requirements that Texas imposes upon such candidates chill her from attempting to do so. Berlin seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention, and she is harmed by the lack of such candidates on Texas's general election ballot.

10.     Plaintiff WHITNEY BILYEU, individually and in her official capacity as the Chair of the Libertarian Party of Texas, resides in Harris County, Texas where she is registered to vote and intends to remain and vote in future elections. She currently serves as the Chair of LPTexas and is the most recent past Chair of the Libertarian National Committee, the governing body of the Libertarian Party. In her role as Chair of LPTexas, pursuant to Texas Election Code § 181.032(b), Bilyeu is responsible for delivering to the Texas Secretary of State a list of the names, addresses, office sought, date of application, and additional required information for all candidates for placement on the ballot across Texas. The challenged law adversely affects her ability to carry out her statutory duties and fulfill her obligations of the Libertarian Party of Texas. Bilyeu seeks to campaign for, speak and associate with, and vote for candidates who must be nominated by convention, and she is harmed by the lack of such candidates on Texas's general election ballot.

11.     Plaintiff JOE BURNES resides in Llano County, Texas, where he is registered to vote and intends to remain and vote in future elections. Burnes ran as the LPTexas nominee for Llano County Treasurer in 2022, and as the LPTexas nominee for Texas's 19th Congressional District Representative in 2020. Burnes wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. Burnes seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention, and he is harmed by the lack of such candidates on Texas's general election ballot.

12.     Plaintiff ARTHUR DIBIANCA resides in Travis County, Texas, where he is registered to vote and intends to remain and vote in future elections. In the 2024 election cycle,

DiBianca is a candidate for nomination by convention for Texas Congressional District 15. DiBianca ran as the LPTexas nominee for State Senator for District 21, as the LPTexas nominee for Texas's 21st Congressional District Representative in 2020. DiBianca wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. DiBianca seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention, and he is harmed by the lack of such candidates on Texas's general election ballot.

13.     Plaintiff KEVIN HALE resides in Dallas County, Texas, where he is registered to vote and intends to remain and vote in future elections. In the 2024 election cycle, Hale is a candidate for nomination by convention for Texas Congressional District 32, and he has paid the fee. Hale ran as the LPTexas nominee for Texas's 5th Congressional District Representative in 2022 and 2020. Hale wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. Hale seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention, and he is harmed by the lack of such candidates on Texas's general election ballot.

14.     Plaintiff DESARAE LINDSEY now resides in California. She formerly resided in Henderson County, Texas. Lindsey ran as the LPTexas nominee for State Senator for District 3 in 2022, and as the LPTexas nominee for Texas's 25th Congressional District Representative in 2018. Lindsey did suffer injury by paying the fee.

15.     Plaintiff ARTHUR THOMAS, IV, resides in Bexar County, Texas, where he is registered to vote and intends to remain and vote in future elections. Thomas ran as the LPTexas nominee for State Representative for District 119 in 2022 and 2020. Thomas wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. Thomas seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention, and he is harmed by the lack of such candidates on Texas's general election ballot.

16.     Plaintiff MARK TIPPETTS resides in Travis County, Texas, where he is registered to vote and intends to remain and vote in future elections. Tippetts ran as the LPTexas nominee for Governor of Texas in 2018 and 2022. Tippetts wants to run for office in future elections in Texas as an LPTexas candidate nominated by convention, but the pre-convention requirements that Texas imposes upon such candidates chill him from attempting to do so. Tippetts seeks to campaign for, speak and associate with, and vote for candidates that must be nominated by convention, and he is harmed by the lack of such candidates on Texas's general election ballot.

17.     Plaintiff LIBERTARIAN PARTY OF TEXAS, or LPTexas, is the Texas state affiliate of the national Libertarian Party. LPTexas seeks to elect candidates at all levels of government in Texas. LPTexas is injured by the associational burden and monetary expense that Texas's statutory scheme imposes on convention-nominating political parties, which diminishes its capacity to participate effectively in Texas's electoral process and hinders LPTexas's ability to grow and develop as a political party.

18.     Defendant Jane Nelson is sued in her official capacity as the Secretary of State of Texas. Ms. Nelson is "the chief election officer of the state," Tex. Elec. Code § 31.001(a), and is required to "obtain and maintain uniformity in the application, operation, and interpretation of" Texas election laws, such as by issuing directives and instructions to all state and local authorities having duties in the administration of these laws, *id.* § 31.003. As Secretary of State, Ms. Nelson is empowered to remedy voting rights violations by ordering any official to correct conduct that "impedes the free exercise of a citizen's voting rights." *Id.* § 31.005(b). Ms. Nelson prescribes the forms used for petitions in lieu of the filing fee, *see id.* §§ 172.021-.024 & 181.0311. A political party wishing to nominate candidates must register with Ms. Nelson in a manner she prescribes and must certify to Ms. Nelson the name of each candidate who is to appear on the general election ballot. Ms. Nelson based on the State's interpretation of the Texas Election Code, makes other rules relating to the nominations, and now can declare candidates ineligible for failure to pay the filing fee

19.     Defendant Jose A. "Joe" Esparza is the Deputy Secretary of State of Texas. In the Secretary's absence, the Deputy Secretary shall perform the duties prescribed by law to the Secretary of State. Tex. Gov't Code § 405.004.

## FACTUAL ALLEGATIONS

### *The Challenged Law*

1.     Plaintiffs raise as-applied challenges to Texas Election Code § 181.0311, 145.004, and 145.036, themselves and operating in conjunction with Sections 141.032, 141.034, 141.037, 141.041, and 141.062  ("Form/Process/Procedure Requirements"); 145.002, 145.003 ("Withdrawal, Death, and Ineligibility of a Candidate");  172.0223 ("Limitation for Applications

for a Place on Ballot"); 172.024, 172.025, 172.026, 172.027, 172.031, 172.034 ("Procedures for Primary Party Applications for Place on the Ballot"); 173.001, 173.033, 173.034 ("Use of Primary Party Filing Fees to Fund their Primaries"); and 181.005; 181.031; 181.061; 181.066; and 181.067 ("Procedures Imposed on Convention Parties") of the Texas Election Code (collectively, the "Challenged Law"). The Challenged Law imposes substantial or severe burdens on Plaintiffs and is not reasonably related to a legitimate state interest.

### *Primary Parties/Parties in Power*

2.      In Texas, political parties that received at least 20 percent of the vote in the last gubernatorial election nominate their candidates by primary election. *See* Tex. Elec. Code § 172.001. For at least the last century, only the Democratic Party and Republican Party—the two parties in power—have qualified as "Primary Parties."

3.      To be entitled to a place on the general primary election ballot, Primary Party candidates must make an application for a place on the ballot. Tex. Elec. Code § 172.021(a). As part of that, Primary Party candidates are required to: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code §§ 173.031-173.034. The state (run by members of the Primary Parties) justifies this admitted infringement by the need for candidates to show a modicum of support to prevent ballot overcrowding.

4.      The filing fees paid by the Primary Party candidates are *paid to the Primary Party itself* and are used to reimburse the Primary Party for the costs it incurs "in connection with the

primary election."[1] *See* Tex. Elec. Code §§ 173.033-.034. The primary elections themselves are largely paid for with taxpayer funds. *See* Tex. Elec. Code § 173.001.

5.      For the Primary Parties, access to the general election ballot is determined by the outcome of the primary election and the certification of its results. *See* Tex. Elec. Code § 172.122(a). The winners of each primary race are designated as the party's nominee, and the nominees are placed on the general election ballot.[2] *See* Tex. Elec. Code §§ 172.116; 172.117(a); 172.120(a),(h); 172.122.

### *Ballot-Qualified Convention Parties*

6.      In contrast to the Primary Parties, all other political parties, i.e., those that are not required or authorized by Texas Election Code to nominate candidates by primary election, *must* nominate their candidates by convention. *See* Tex. Elec. Code §§ 181.002, 181.003, 172.002. A Convention Party is entitled to have its candidates placed on the general election ballot if, within the last five years, one of its statewide candidates receives votes equal to at least two percent of the total number of votes received by all candidates for that office. *See* Tex. Elec. Code § 181.005(c). That is, after meeting such requirements, it becomes a ballot-qualified Convention Party ("Qualified Convention Party"), entitled to have its candidates on the general election ballot.

---

[1] Some of the fees are retained by the party and some are remitted to the Secretary of State for use in the primary fund. *See* Tex. Elec. Code §§ 173.061-173.063.

[2]  The Primary Parties do hold conventions, but not for the purpose of nominating their candidates (except for President and Vice President).

### *Plaintiffs' Filing Fees Have No Direct Public Benefit*

7.      To be eligible for nomination at a convention, a candidate must file an application with the state or county chair, which contains the information necessary to show that the candidate is eligible for public office should that candidate be elected. *See* Tex. Elec. Code §§ 141.031 & 181.031(a). Plaintiffs do not challenge this requirement.

8.      What Plaintiffs do challenge is the filing fee or petition in lieu requirement that is delivered to the Secretary of State directly. This contrasts with the procedures that apply to Primary Parties, whose candidates file their applications and pay their fee directly to the parties themselves. *See* Tex. Elec. Code §§ 172.021(b) & 172.022.

9.      The Texas Supreme Court has explained that applications for nomination by convention are not applications for a place on any ballot in the primary or general election, but merely are a prerequisite to be eligible for nomination at a convention. That is, the Texas legislature has designed primary elections and nominating conventions to be two distinct things.

10.     For political parties subject to the convention process, the associational rights of the party and its candidates are extraordinarily important, as the convention involves more than casting a ballot, but is the exclusive manner for associating and selecting candidates for the general election.

### *Increasing Hostility Toward Third-Parties*

11.     Until 2019, Qualified Convention Party candidates were not required to pay a filing fee or submit petitions in lieu of such a fee. Prior to 2019, the "fee or petition" requirement had applied only to Primary Party candidates.

12.     But starting in 2019, the Texas legislature began to impose additional requirements on Convention Party candidates through the passage of H.B. 2504 (86th Leg. R), codified as Texas Election Code § 141.041(a) (repealed). That legislation mandated that to appear on the general election ballot in the 2020 cycle, LPTexas candidates would be required to either: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code § 141.041(a) (repealed).

13.     The state's pretextual purpose in this new law was to "standardize filing fee requirements for all parties and candidates to have their name placed on the ballot."[3] In fact, the state anticipated it would collect $230,000 from the new filing fees per cycle.[4] At best, the State's motivation appears revenue-related, but more likely as an oppressive hedge against the so-called "spoiler effect."

14.     There is nothing in the legislative record or otherwise to indicate that LPTexas has been nominating slates of unqualified candidates, overcrowding ballots, or engaging in other nominating irregularities. LPTexas has established a modicum of support through its almost continuous ballot qualification since 1980.

15.     LPTexas's nominees have historically shown a modicum of support too; in the 2022 cycle, its statewide candidates got between 1.01% to 3.01% of the vote, or between 81,660 and 238,769 votes.

---

[3] *See* S.B. 2093 (87th Leg.- Reg.); Bill Analysis; https://capitol.texas.gov/tlodocs/87R/analysis/pdf/SB02093F.pdf#navpanes=0

[4] H.B. 2504 (86th Leg); https://capitol.texas.gov/tlodocs/86R/fiscalnotes/pdf/HB02504E.pdf#navpanes=0

16.     Plaintiff Mark Ash, LPTexas's nominee for Supreme Court of Texas in 2018, received 1.6 million votes in that race.

<em><strong>2021 Legislative Session</strong></em>

17.     In the 2021 Legislative session, lawmakers from the Primary Parties took measures to impose more severe restrictions upon Qualified Convention Parties like LPTexas and their candidates. This was done under the guise of moving the previous offending legislation to a new section of the Election Code.

18.     On May 29, 2021, Governor Greg Abbott signed into law S.B. 2093, which substantively imposes new and additional obligations beyond Texas's then-existing "eligibility requirements", as follows:

> SECTION 1. Section 141.041, Election Code, is transferred to Subchapter B, Chapter 181, Election Code, redesignated as Section 181.0311, Election Code, and amended to read as follows:
>
> Sec. 181.0311 [141.041]. FILING FEE OR PETITION REQUIRED [TO APPEAR ON BALLOT FOR GENERAL ELECTION FOR STATE AND COUNTY OFFICERS]. (a) In addition to any other requirements, [to be eligible] to be considered for nomination by convention [placed on the ballot for the general election for state and county officers], a candidate [who is nominated by convention under Chapter 181 or 182] must:
>
> (1) pay a filing fee to the secretary of state for a statewide or district office or the county judge for a county or precinct office; or
>
> (2) submit to the secretary of state for a statewide or district office or the county judge for a county or precinct office a petition in lieu of a filing fee that satisfies the requirements prescribed by Subsection (e) and Section 141.062.
>
> (b) The amount of the filing fee is the amount prescribed by Section 172.024 for a candidate for nomination for the same office in a general primary election.

(c) A filing fee received by the secretary of state shall be deposited in the state treasury to the credit of the general revenue fund.

(d) A filing fee received by the county judge shall be deposited in the county treasury to the credit of the county general fund.

(e) The minimum number of signatures that must appear on the petition authorized by Subsection (a) is the number prescribed by Section 172.025 to appear on a petition of a candidate for nomination for the same office in a general primary election.

(f) The secretary of state shall adopt rules as necessary to implement this section.

SECTION 2. This Act takes effect September 1, 2021.

Acts 2021, 87th Leg., R.S., Ch. 149 (S.B. 2093). S.B. 2093 is now codified as Texas Election

Code Section 181.0311.

### *2023 Legislative Session*

19.     On June 18, 2023, Governor Greg Abbott signed into law S.B. 994, which added

more obstructions to Plaintiffs' ballot access:

SECTION 1. Section 145.003, Election Code, is amended by amending Subsections (b) and (f) and adding Subsection (f-1) to read as follows:

(b)  Except as provided by Subsection (f-1), a [A] candidate in the general election for state and county officers may be declared ineligible before the 30th day preceding election day by:

(1)  the party officer responsible for certifying the candidate's name for placement on the general election ballot, in the case of a candidate who is a political party's nominee; [or]

(2)  the authority with whom the candidate's application for a place on the ballot is required to be filed, in the case of an independent candidate; or

(3) the secretary of state, if the candidate is ineligible under Subsection (f)(3).

(f) A candidate may be declared ineligible only if:

(1) the information on the candidate's application for a place on the ballot indicates that the candidate is ineligible for the office; [or]

(2) facts indicating that the candidate is ineligible are conclusively established by another public record; or

(3) the candidate fails to pay the filing fee or submit a petition in lieu of a filing fee.

(f-1) A candidate may not be declared ineligible under Subsection (f)(3) after the 74th day preceding election day.

SECTION 2. Section 145.036, Election Code, is amended by amending Subsection (a) and adding Subsection (b-1) to read as follows:

(a) Except as provided by Subsections [Subsection] (b) and (b-1), if a candidate's name is to be omitted from the ballot under Section 145.035, the political party's state, district, county, or precinct executive committee, as appropriate for the particular office, may nominate a replacement candidate to fill the vacancy in the nomination.

(b-1) An executive committee may make a replacement nomination following an administrative declaration of ineligibility under Section 145.003(f)(3) only if the replacement candidate pays the filing fee or submits a petition in lieu of a filing fee.

SECTION 3. This Act takes effect September 1, 2023.

Acts 2023, 88th Leg., R.S., Ch. 1150 (S.B. 994). S.B. 994 is now codified in Sections 145.003 and 145.036 of the Texas Election Code.

20.     S.B. 994 empowers the Secretary to declare candidates ineligible for failure to pay the filing fee or submit a petition, a power and responsibility that has previously been delegated to party leadership.

### First & Fourteenth Amendment Violations
### Speech & Association

21.     The Challenged Law impermissibly infringes on Plaintiffs' First Amendment rights of speech and association.

22.     Texas Election Code § 181.0311 impermissibly intrudes on Plaintiffs' rights of speech and association under the First Amendment by prohibiting a candidate from being *considered for nomination by convention* unless the filing fee or petition requirement has been met months in advance of such a convention.

23.     This effectively makes payment of the filing fee or submission of signed petitions a prerequisite for a Qualified Convention Party to even think about, much less debate, the merits of an individual candidate for nomination for a particular office at convention.

24.     Although the state has an interest in reducing ballot overcrowding and limiting frivolous candidates *on an election ballot*, it has no similar interest in determining what a political party—any political party—can or cannot consider or discuss at their conventions.

### Fourteenth Amendment Violations
### Equal Protection & Due Process

25.     Plaintiffs assert an as-applied challenge to the Challenged Law because it violates Plaintiffs' Fourteenth Amendment rights under the Equal Protection Clause by discriminating against Plaintiffs without a reasonable relationship to the state's interest in candidate's showing a modicum of support.

26.     The law impermissibly discriminates as to the use of the filing fees. The filing fees imposed by Texas Election Code § 141.041(a) are the same amount as the filing fees and

signature requirements imposed on candidates seeking to appear on a primary election ballot for the same office. *See* Tex. Elec. Code §§ 141.041(b), (e); 172.024-25.

27.     Republicans and Democrats pay their filing fees to their respective party, and that party then uses those fees to reimburse itself for the costs incurred "in connection with the primary election." *See* Tex. Elec. Code §§173.033-.034. That is, **the primary parties and their candidates get a direct public benefit from the filing fees**: The filing fees directly fund their nomination process. Importantly, the state's interest in requiring that candidates show a modicum of support is satisfied **at the time the filing fee is paid**.

28.     In Contrast, LPTexas candidates are forced by Texas Election Code § 181.0311 to pay their filing fees to the state's or county's general fund, but neither LPTexas nor its candidates receive any of those fees back from the State to defray the cost of their convention nominating process. Instead, LPTexas is left to fund its own conventions. Payment of the filing fees is a substantial burden, and the state has no interest in increasing the burden by requiring Plaintiffs to then fund their nominating process on top of payment the fee.[5]  Because the burden on Plaintiffs is not reasonably related to the State's interest, the discriminatory treatment of the filing fees is not constitutionally permissible.

29.     The Challenged Law also unfairly discriminates because it forces LPTexas' candidates to pay it before nomination by convention. As above, Plaintiffs do not challenge whether a requirement to pay the fee in and of itself is constitutionally impermissible.

---

[5] Plaintiffs do not concede that requiring them to pay the filing fee itself is constitutionally permissible. Plaintiffs do not concede that the "petition in lieu" option is constitutionally permissible. Plaintiffs do recognize, however, that this Court has determined otherwise, and therefore they do not challenge those provisions in this suit.

30.     However, the State's interests in reducing ballot overcrowding are not served by requiring Plaintiffs to pay the filing fee *before* they are nominated, because a maximum of one Libertarian *will appear in each race on the general ballot.*

31.     To the extent the State asserts its interests that only "eligible" non-frivolous appear on the ballot, LPTexas candidates will have already filed applications for nomination by convention, so their form, content, and procedure requirements are met prior to their nomination conventions and available for the general public to inspect. Requiring Plaintiffs to pay before they are nominated does not reasonably related to any state interest and only serves to chill their rights of association.

### *Irreparable Harm*

32.     The Challenged Law is causing Plaintiffs irreparable harm. Although one can determine the amount of money that would compensate LPTexas and its candidates for having to completely self-fund their nominating process, money damages can never fully compensate them for the chilling effect of participation in the nomination process and participation in a given election cycle. No two elections are the same.

### *Compensatory Damages*

33.     As the Court has held, some of the injuries Plaintiffs claim may be compensable through monetary damages. In the alternative to their claims for injunctive relief, Plaintiffs LPTexas, Ash, Hale, Lindsey, Tippetts, and Thomas seek to recover compensatory damages.

34.     Plaintiffs Ash, Hale, Lindsey, Tippetts, and Thomas have paid the filing fees under the Challenged Law. They are entitled to recover their monetary damages and

disgorgement of the fees that the Challenged Law wrongfully imposed on them, and Defendants, as the State's chief election officers, have or will enforce against Plaintiffs.

35.     Plaintiff LPTexas has been forced to self-fund its nominating process, without being subsidized by its own candidate's filing fees, whereas the Primary Parties can use their candidate's filing fees to subsidize their nominating process. To the extent this is not irreparable harm, Plaintiffs are entitled to recover their compensatory damages.

### *No Relief Sought for Third Parties*

36.     Plaintiffs are not seeking relief for any non-party to this action.

### COUNT ONE

### Violation of Plaintiffs' Rights Guaranteed by the First and Fourteenth Amendments

37.     Plaintiffs incorporate their factual allegations in support of this count.

38.     The Challenged Law contains severely burdensome requirements and restrictions on the rights of LPTexas and its candidates who seek nomination by an otherwise Qualified Convention Party in various ways.

39.     By prohibiting that a candidate be "considered" for nomination by convention unless the filing fee and/or petitions in lieu of a filing fee has been submitted, Section 181.0311 impermissibly intrudes on Plaintiffs' rights of association and speech guaranteed by the First and Fourteenth Amendment to the U.S. Constitution.

40.     The Challenged Law's discrimination on the use of the filing fees, as subsidies in the case of primary parties and taxes in case of convention parties, further chills the rights of association without furthering any state interest.

41. By requiring the payment of a filing fee or submission of petitions in lieu of a filing fee, and paying it to the State's General Fund, the Challenged Law has a direct and demonstrable chilling effect on participation by candidates like the individual Plaintiffs in the nomination process that LPTexas would use as a Qualified Convention Party, but for the Challenged Law.

42. Those burdens thus impose unjustified restrictions on LPTexas itself and its candidates and cause monetary damages.

43. Plaintiffs do not seek public funds to subsidize their nominating process, only that they not be deprived of their own funds to pay for their nominating process. There is no reasonable relationship between the filing fees being retained by the State, when the State's interest is satisfied at the time the fees are tendered.

44. The Challenged Law violates the Constitution by requiring the payment of a filing fee directly to the general fund—in contrast to the use of filing fees paid by Primary Party candidates—and requiring payment of the filing fee prior to the nominating conventions, where the candidates do not appear on any "ballot".

45. The Challenged Law discriminates against Plaintiffs without a rational basis or reasonable relationship to the State's interests, in violation of their Equal Protection guaranties, and it inflicts the additional burden of Plaintiffs having to self-fund their conventions.

46. These newly imposed burdens upon LPTexas—which has met all requirements necessary for automatic ballot access—and its candidates, are not reasonably related to furthering any legitimate state interest.

47. The Challenged Law, as applied to Plaintiffs, causes injury to and violates certain rights guaranteed to Plaintiffs by the First and Fourteenth Amendments to the U.S. Constitution.

For these reasons, this Court should declare Texas Election Code § 181.0311 to be unconstitutional as applied to Plaintiffs.

48.     As a direct and proximate result of Defendants' violation of the Free Speech and Freedom of Association Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment, Plaintiffs have suffered and continue to suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and, or in the in the alternative, compensatory damages.

## COUNT TWO

**Violation of Plaintiffs' Rights Guaranteed by the Due Process & Equal Protection Clauses**

49.     Plaintiffs incorporate their factual allegations in support of this count.

50.     The Challenged Law discriminates between the Primary Parties and their candidates on one hand, and Qualified Convention Parties and their candidates on the other, without justification.

51.     The Challenged Law as applied in conjunction with other provisions of the Texas Election Code, causes injury to and violates rights guaranteed to Plaintiffs by the Equal Protection Clause of the U.S. Constitution.

52.     By requiring the payment of a filing fee or submission of petitions in lieu of a filing fee, and paying it to the State's General Fund, the Challenged Law has a direct and demonstrable chilling effect on participation by candidates like the individual Plaintiffs in the nomination process that LPTexas would use as a Qualified Convention Party, but for the Challenged Law.

53.     Those burdens thus impose unjustified restrictions on LPTexas itself and its candidates.

54.     The Challenged Law violates the Constitution by requiring the payment of a filing fee directly to the general fund—in contrast to the use of filing fees paid by Primary Party candidates—and requiring payment of the filing fee prior to the nominating conventions, where the candidates do not appear on any "ballot".

55.     The Challenged Law discriminates against Plaintiffs without a rational basis or reasonable relationship to the State's interests, in violation of their Equal Protection guaranties, and it inflicts the additional burden of Plaintiffs having to self-fund their conventions.

56.     The Challenged Law impermissibly empowers the Secretary of State—an unelected official—to remove a candidate from the general election ballot without any judicial oversight. Specifically, Section 145.003(b)(3) now empowers the Secretary of State to remove a candidate from the ballot for failure to pay a filing fee or file a petition in lieu, at least the latter of which requires exercise of judgment. That is an impermissible encroachment without adequate due process protections.

57.     These newly imposed burdens upon LPTexas—which has met all requirements necessary for automatic ballot access—and its candidates, are not reasonably related to furthering any legitimate state interest.

58.     The Challenged Law thus inflicts monetary injury specifically on LPTexas and the candidates who pay the fee.

59.     Those burdens are not justified by any rational basis or reasonable relationship to the State's interests.

60.     For these reasons, this Court should declare The Challenged Law to be unconstitutional as applied to Plaintiffs.

61. As a direct and proximate result of Defendants' violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment, Plaintiffs have suffered and will suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief.

62. Plaintiffs Ash, Hale, Lindsey, Tippetts, and Thomas have paid the filing fees under the Challenged Law. They are entitled to recover their monetary damages and disgorgement of the fees that the Challenged Law wrongfully imposed on them, and Defendants, as the State's chief election officers, have or will enforce against Plaintiffs.

63. Plaintiff LPTexas has been forced to self-fund its nominating process, without being subsidized by its own candidate's filing fees, whereas the Primary Parties can use their candidate's filing fees to subsidize their nominating process. To the extent this is not irreparable harm, Plaintiffs are entitle to recover their compensatory damages.

64. As a direct and proximate consequence of Defendants' unlawful acts in enforcing the Challenged Law, Plaintiffs have suffered and will suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and, in the alternative, compensatory damages.

## COUNT THREE

### Cause of Action under 42 U.S.C. § 1983 & 43 U.S.C. § 1988

65. Plaintiffs incorporate their factual allegations in support of this count.

66. Defendants are liable to Plaintiffs under 42 U.S.C. § 1983 & 43 U.S.C. § 1988.

67. By reason of the aforementioned freedom of speech and associational restrictions described in this pleading and incorporated by reference, Defendants, under color of law, have

deprived Plaintiffs of rights, privileges, or immunities secured by the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. § 1983.

68.     Defendants are the chief election officials of the State, and by enforcing the Challenged Law against Plaintiff, they are in their official capacities liable for their conduct.

69.     Plaintiffs Ash, Hale, Lindsey, Tippetts, and Thomas have paid the filing fees under the Challenged Law. They are entitled to recover their monetary damages and disgorgement of the fees that Defendants have wrongfully imposed on them.

70.     Plaintiff LPTexas has been forced to self-fund their nominating process, whereas the Primary Parties can use their candidate's filing fees to subsidize their nominating process.

71.     As a direct and proximate consequence of Defendants' unlawful acts, Plaintiffs have suffered and will suffer irreparable harm, including the loss of their constitutional rights, entitling them to declaratory and injunctive relief and, in the alternative, compensatory damages.

### *Count Four—Declaratory Judgment*

72.     Plaintiffs incorporate their factual allegations in support of this count.

73.     Plaintiffs ask that the Court enter a judgment declaring the Challenged Law unconstitutional as applied to Plaintiffs. There is an actual controversy, and this Court has jurisdiction to render that declaration under 28 U.S.C. §§ 2201 & 2202.

**ATTORNEY FEES**

74.     Plaintiffs incorporate their factual allegations in support of their claim for attorney fees.

75.     For each of the above counts, Plaintiffs are entitled to, and seek, recovery of their costs and reasonable attorney fees pursuant to Federal Rule of Civil Procedure 54, 42 U.S.C. § 1988, 28 U.S.C. §§ 2201 & 2202, and 52 U.S.C. § 10310(e).

**PRAYER**

FOR THESE REASONS, Plaintiffs respectfully request that the Court:

a.  Enter a declaratory judgment holding the Challenged Law is an impermissible infringement of Plaintiffs' rights of speech, association, and equal protection guaranteed by the First and Fourteenth Amendments;

b.  Enter a declaratory judgment holding that the Challenged Law is unconstitutional as applied to Plaintiffs;

c.  Enter an order enjoining Defendants from enforcing the Challenged Law against Plaintiffs;

d.  Award Plaintiffs their compensatory damages and/or disgorgement;

e.  Award Plaintiffs their litigation costs and attorneys' fees;

f.  Retain jurisdiction of this action and grant the Plaintiffs any further relief which may in the discretion of the Court be necessary and proper; and

g.  Award Plaintiffs all other and further relief in law or in equity to which they are justly entitled.

\*   \*   \*

Dated: December 29, 2023

Respectfully submitted,

By: */s/Jared G. LeBlanc*
    Jared G. LeBlanc
    Texas Bar No. 24046279
    jleblanc@leblancflanery.com

**Attorney-In-Charge**

**OF COUNSEL:**

LeBlanc Flanery PLLC

2929 Allen Parkway, Suite 200
Houston, Texas 77019
(346) 315-1150

**Attorneys for Plaintiffs**

## Certificate of Service

I certify that a true and correct copy of this *Fourth Amended Complaint and Application for Declaratory and Injunctive Relief* was forwarded to all counsel of record by electronic service on December 29, 2023.

*/s/ Jared G. LeBlanc*
Jared G. LeBlanc