IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS, IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS,<br>    *Plaintiffs*,<br><br>v.<br><br>JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas,<br>    *Defendants*. | § § § § § § § § § § § § § § § § § § § | CIVIL ACTION No. 1:21-CV-01089 |

___

### Defendants' Motion to Dismiss Plaintiffs' Fourth Amended Complaint
___

Defendants Jane Nelson and Joe Esparza file this Motion to Dismiss and respectfully offer the following in support:

### Background

On December 1, 2022, Plaintiffs filed an Original Complaint asserting that their freedom of speech and association rights were violated by the filing fee or "petition in lieu of fee" requirement in the Texas Election Code, and that their due process and equal protection rights were violated

1

because their filing fees are deposited into the general revenue fund instead of being used to reimburse the costs of holding a convention. Dkt. 1.

On January 14, 2022, Plaintiffs applied for a preliminary injunction. Dkt. 14.

A preliminary injunction hearing was held on February 24, 2022. Dkt. 32.

On March 1, 20222, this Court entered an Order denying Plaintiffs a preliminary injunction after finding that they were unlikely to succeed on the merits. Dkt. 35.

On December 29, 2023, Plaintiffs filed a Fourth Amended Complaint asserting that their freedom of speech and association rights were violated by the *deadline* for the filing fee or "petition in lieu of fee" requirement, that their equal protection rights were violated because their filing fees are deposited into the general revenue fund instead of being used to reimburse the costs of holding a convention, and that their procedural due process rights were violated because Defendants can remove them from the ballot if they fail to submit the required filing fee or petition. Dkt. 61.

## MOTION TO DISMISS FOR LACK OF JURISDICTION

Rule 12(b)(1) Standard

A Rule 12(b)(1) motion to dismiss challenges the subject matter jurisdiction of the court. "Federal courts are courts of limited jurisdiction; without jurisdiction conferred by statute, they lack the power to adjudicate claims." *In re FEMA Trailer Formaldehyde Prods. Liab. Litig.*, 668 F.3d 281, 286 (5th Cir. 2012) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "A case is properly dismissed for lack of subject matter jurisdiction when the court lacks the statutory or constitutional power to adjudicate the case." *Walmart Inc. v. U.S. Dep't of Just.*, 21 F.4th 300, 307 (5th Cir. 2021) (citation omitted). Sovereign immunity is a "jurisdictional bar" to suit. *Carver v. Atwood*, 18 F.4th 494, 497 (5th Cir. 2021).

In ruling on a Rule 12(b)(1) motion, the court may consider (1) the complaint alone, (2) the complaint plus undisputed facts evidenced in the record, or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Stratta v. Roe*, 961 F.3d 340, 349 (5th Cir. 2020). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

Arguments and Authorities

I.      **Plaintiffs' claims for damages are barred by sovereign immunity.**

Texas has not waived sovereign immunity for Plaintiffs' official capacity 42 U.S.C. §§ 1983 & 1988 claims seeking damages. *See* Dkt. 61 at 7, 20-23.

A suit against an employee of a state agency in that employee's official capacity is effectively a suit against the state, and the employee is entitled to the protections of sovereign immunity. *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087-88 (5th Cir. 1994). Sovereign immunity generally "bars private suits against nonconsenting states in federal court." *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019).

The sovereign immunity exception established in *Ex parte Young*, 209 U.S. 123 (1908), permits a suit against state officials in their official capacity if the plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective." *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (citation omitted). The Young exception only applies if the plaintiff seeks equitable relief—not monetary damages. *J.E. ex rel. Williams v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). Claims for injunctive relief based on a violation of state law instead of federal law "do not get around sovereign immunity." *Harrison v. Young*, 48 F.4th 331, 339 (5th Cir. 2022).

Consequently, this Court should find that there has been no waiver of sovereign immunity for Plaintiffs claims for damages against Defendants in their official capacities. Dkt. 61.

## MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). To avoid dismissal under Rule 12(b)(6), a plaintiff must plead sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. While courts must accept all factual allegations as true, they "do not accept as true conclusory allegations, unwarranted factual inferences, or legal conclusions." *Plotkin v. IP Axess Inc.*, 407 F.3d 690, 696 (5th Cir. 2005).

Arguments & Authorities

Courts evaluating the constitutionality of election laws employ the *Anderson/Burdick* test announced by the Supreme Court in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), as refined in *Burdick v. Takushi*, 504 U.S. 428 (1992). In *Anderson*, the Supreme Court instructed lower courts to evaluate elections laws by considering the "character and magnitude of the asserted injury" posed by the statutes to the plaintiff's asserted rights, and then weighing that against the interest put forward by the state. 460 U.S. at 788. In *Burdick*, the Court clarified that, when state regulation imposes severe restrictions on the rights of voters, the regulation must be narrowly drawn to advance a compelling government interest; however, where the restrictions are reasonable and

nondiscriminatory, the State's important regulatory interests usually suffice to justify the restrictions. 504 U.S. at 434.

"[T]he severity analysis" is not limited "to the impact that a law has on a small number of voters." *Richardson v. Texas Sec'y. of State*, 978 F.3d 220, 236 (5th Cir. 2020). Even if a law places a somewhat heavier burden on a limited number of persons, it will not be considered severe under *Anderson/Burdick*. *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181, 199 (2008) (plurality op.). Indeed, Supreme Court "precedents refute the view that individual impacts are relevant to determining the severity of the burden' that a voting law imposes." *Richardson*, 978 F.3d at 236 (quoting *Crawford*, 553 U.S. at 205 (Scalia, J., concurring)). Examining burdens on a plaintiff-by-plaintiff basis "would effectively turn back decades of equal-protection jurisprudence." *Crawford*, 553 U.S. at 207, (Scalia, J., concurring).

The Supreme Court recognizes that "as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some sort of order, rather than chaos, is to accompany the democratic processes." *Anderson*, 460 U.S. at 788; *see Burdick*, 504 U.S. at 434.

### I.     Plaintiffs fail to state viable free speech and association claims.

Plaintiffs contend that the filing fee or petition deadline approximately five months before their convention violates their free speech and association rights. Dkt. 61 at 15. This claim is meritless. *See Burdick*, 504 U.S. at 437 ("we [give] little weight to the interest the candidate and his supporters may have in making a late rather than an early decision to seek independent ballot status.)

In *Texas Indep. Party v. Kirk*, 84 F.3d 178, 184-87 (5th Cir. 1996), the Fifth Circuit

considered and rejected a similar challenge to a deadline that required candidates to file the run for office "sooner rather than later." The Fifth Circuit held that such deadlines are of little weight and passed the *Anderson/Burdick* test. *Id.*; *see also Storer v. Brown*, 415 U.S. 724, 736 (1974).

Here, the challenged deadline is similarly reasonable and nondiscriminatory. The same deadline applies equally to both minor and major party candidates who must file their nomination applications and pay the filing fee or submit a petition by "not later than 6 p.m. on the second Monday in December of an odd-numbered year." Tex. Elec. Code § 172.023(a); *see also id*. at §§ 181.033 (setting the same deadlines for major and minor party candidates), 172.021(b) (requiring filing fees or petitions to be submitted with the candidate's application).

The challenged deadline advances Defendants' legitimate interests in treating all candidates equally, placing all candidates in the same starting position at the beginning of a race, ensuring that the candidates demonstrate sufficient public support to gain access to the convention, primary and general election ballots, and enhancing voter education about the candidates by requiring them to file early enough that voters can identify the candidates, decide whom they will support and whether to participate in the primaries or convention. *Kirk*, 84 F.3d at 185-86; *see also Hughs v. Dikeman*, 631 S.W.3d at 379-81 ("[A] modicum of public support can be evidenced via supporters' signatures or . . . . candidates can still evidence their bona fide candidacies by paying a filing fee").

This Court should find that Plaintiffs failed to allege viable free speech and association claims where the challenged filing deadline is reasonable, nondiscriminatory and advances legitimate government interests—all that is required to uphold it under the *Anderson/Burdick* test.

## II.     Plaintiffs fail to allege viable equal and due process protection claims.

Plaintiffs contend that their procedural due process rights are violated because Defendants can remove them from the ballot if they fail to timely pay the filing fee or submit a petition in lieu of fee. Dkt. 61 at 21. Specifically, they contend that this removal process violates their due process rights because it is done "without any judicial oversight. *Ibid*. Plaintiffs further claim that their equal protections rights are violated because their filings fees are used to establish a fund that reimburses primary parties for the costs of running their primary elections whereas parties nominating by convention pay their filing fees into a general revenue fund.

But Plaintiffs cannot state viable equal protection and due process claims where the filing fees remittance to the general revenue fund and the removal of candidates who fail to timely remit the fee or petition pass the *Anderson/Burdick* test because they are reasonable, nondiscriminatory, and further important state interests. *See* Dkt. 35 (denying Plaintiffs' request for preliminary injunction).

*First*, Plaintiffs' procedural due process claims fail because they failed to identify a cognizable liberty or property interest in appearing on the general election ballot without submitting a filing fee or petition. A procedural due process claim requires two inquiries: (1) "whether there exists a liberty or property interest which has been interfered with by the State" and (2) "whether the procedures attendant upon that deprivation were constitutionally sufficient." *Richardson v. Texas Sec'y of State*, 978 F.3d 220, 228–29 (5th Cir. 2020) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Plaintiffs' Fourth Amended Complaint does not identify a liberty or property interest allegedly interfered with by Defendant removing them from the ballot if they fail to pay the filing fee or submit a petition in lieu of the

filing fee. *See* Dkt. 61; *see also Richardson*, 978 F.3d at 229 ("It is important, however, to identify a cognizable interest under the Due Process Clause, because we often dismiss due process claims where plaintiffs fail to identify a cognizable interest."). And they cannot cite to any legal authority holding that the constitution requires judicial oversight before a candidate can be removed from the ballot for failing to submit the filing fee or petition.

*Second*, Plaintiffs cannot establish an equal protection violation without first establishing that they are similarly-situated to the primary parties or their candidates. *See Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 167–68 (5th Cir. 2009) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). But Plaintiffs are not similarly situated to the primary parties because they do not shoulder the heavy burden of administering primary elections open to large segments of the voting population. *See Kucinich*, 563 F.3d at 167–68 (5th Cir. 2009); *In re Tex. House Republican Caucus PAC*, 630 S.W.3d 28, 35 n.7 (Tex. 2020); *see also White*, 415 U.S. at 781 ("Statutes create many classifications which do not deny equal protection; it is only 'invidious discrimination' which offends the Constitution.") (quoting *Ferguson v. Skrupa*, 372 U.S. 726, 732 (1963)). So, Plaintiffs' equal protection claims necessarily fail because they are not similarly situated to the major party candidates.

*Third*, Plaintiffs' equal protection claims ignore that they could receive the reimbursements they claim they are denied if they obtained sufficient support and chose to exercise their statutory right to conduct a primary election in the same manner as the primary parties. *See* Tex. Elec. Code §§ 172.002(a) (providing that a party receiving at least two percent but less than 20 percent of the total votes cast for governor in the most recent gubernatorial election may nominate by primary), 173.001, .031 (providing for the creation of funds to reimburse expenses incurred by parties

8

conducting primary elections at the state and county level); *see also Jenness v. Fortson*, 403 U.S. 431, 441–42 (1971) ("The fact is that there are obvious differences in kind between the needs and potentials of a political party with historically established broad support, on the one hand, and a new or small political organization on the other. Georgia has not been guilty of invidious discrimination in recognizing these differences and providing different routes to the printed ballot."). That Plaintiffs did not reach the two percent threshold for this entitlement in the last election is not the fault of Defendants. *See SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 277 (2d Cir. 2021) (quoting *Buckley v. Valeo*, 424 U.S. 1, 96 (1976)) ("The government's 'interest in not funding hopeless candidacies with large sums of public money necessarily justifies the withholding of public assistance from candidates without significant public support.'"). Texas's statutory scheme for ballot access does not violate equal protection because it treats parties with different levels of support differently.

*Fourth*, requiring Plaintiffs and the primary parties both to conduct statewide, expensive primary elections would likely run afoul of the ballot-access standards established by the United States Supreme Court that prohibit States from requiring third parties to establish the same elaborate party machinery required of primary parties. *See Williams v. Rhodes*, 393 U.S. 23, 39–40 (1968) ("Cumbersome election machinery can effectively suffocate the right of association, the promotion of political ideas and programs of political action, and the right to vote. The totality of Ohio's requirements has those effects."). Because the Election Code does not require Plaintiffs to nominate their candidates through primary, they are not entitled to the same reimbursement as primary parties, who are required to nominate by primary when their candidate in the last gubernatorial race gets over 20% of the vote. Plaintiffs, therefore, do not face a similar burden under

*Anderson/Burdick*. *See White*, 415 U.S. at 781; *In re Tex. House Republican Caucus PAC*, 630 S.W.3d at 35 n.7.

*Fifth*, the challenged provisions pass the *Anderson/Burdick* test because they are reasonable, nondiscriminatory, and advance legitimate government interests. The filing fee reimbursements provisions prevent the expenditure of public funds on candidacies that lack popular support and in avoiding incentivizing of "unrestrained factionalism." *Valeo*, 424 U.S. at 96; *Storer*, 415 U.S. at 736. A case from the Second Circuit applied *Anderson/Burdick* to uphold a system where the state matches a candidate's campaign funds above a certain threshold because the practice serves the state interest in not funding hopeless candidacies. *SAM Party of N.Y.*, 987 F.3d at 277. The same is true here. Texas's system ensures that a party's entitlement to public funds is ratcheted up as the party demonstrates an increase in popular support via its election results, and also ensures that disproportionate amounts of public funds are not expended on candidacies lacking in popular support. *See id.* So too, the removal of candidates from the ballot who fail to submit the filing fee or petition advances the government's interest in preventing overcrowding on the ballot and ensuring that candidates prove some modicum of support.

Plaintiffs, accordingly, fail to state equal protection and due process claims where the lack of reimbursement of collected filing fees for convention parties and the removal from the ballot of candidates failing to submit a filing fee or petition pass the *Anderson/Burdick* test because they are reasonable, nondiscriminatory, and further important state interests.

\*\*\*

This Court has previously found that the challenged laws "likely represent reasonable and nondiscriminatory measures that are comparable to those the Fifth Circuit and the Supreme Court

have previously upheld as reasonable under the *Anderson/Burdick* test." Dkt. 35 at 6. Recently, it rejected similar claims in a related lawsuit. *See Miller v. Hughs*, 634 F. Supp. 3d 340 (W.D. Tex. 2022). Texas courts considering similar claims have reached the same conclusion. *See Hughs v. Dikeman*, 631 S.W.3d 362 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). Defendants ask this Court, for the same reasons, to again reject Plaintiffs claims and dismiss Plaintiffs' claims with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court GRANT this Motion to Dismiss, disposing of all of Plaintiff's claims in their entirety and for any further relief to which they are justly entitled.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**GRANT DORFMAN**
Deputy First Assistant Attorney General

**JAMES LLOYD**
Deputy Attorney General for Civil Litigation

**RYAN WALTERS**
Chief for Special Litigation Division

*/s/Johnathan Stone*
**JOHNATHAN STONE**
Special Counsel
Texas State Bar No. 24071779
Johnathan.Stone@oag.texas.gov

Office of the Attorney General
Special Litigation Division
P.O. Box 12548, Capitol Station
Austin, Texas 78711-2548
Telephone: (512) 475-4196
Facsimile: (512) 320-0667

**ATTORNEYS FOR DEFENDANTS**

## CERTIFICATE OF SERVICE

I certify that that on February 2, 2024, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

*/s/Johnathan Stone*
**JOHNATHAN STONE**
Assistant Attorney General