THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS, § § § § § § § § § | | |
| *Plaintiffs,* § | 1:21-CV-01089-RP | |
| § | | |
| v. § | | |
| § | | |
| JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas, § § § § § § | | |
| *Defendants.* § | | |

**Plaintiffs' Response to Motion to Dismiss**

Plaintiffs WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS, IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS file their *Response to Defendants' Motion to Dismiss* (Dkt. 64).

**Introductory Statement**

The Court has held an evidentiary hearing on the claims Defendants now assert should be dismissed under Rule 12. Although it is true that the Court denied Plaintiffs' application for preliminary injunction (Dkt. 35), there was no serious argument that Plaintiffs claims should be

dismissed on the pleadings. Plaintiffs have given Defendants fair notice of plausible claims. (Dkt. 61: *Fourth Amended Complaint*.) The Court should deny the motion to dismiss.[1]

## FACTUAL ALLEGATIONS

### *The Challenged Law*

1. Plaintiffs raise as-applied challenges to Texas Election Code § 181.0311, 145.004, and 145.036, themselves and operating in conjunction with Sections 141.032, 141.034, 141.037, 141.041, and 141.062 ("Form/Process/Procedure Requirements"); 145.002, 145.003 ("Withdrawal, Death, and Ineligibility of a Candidate"); 172.0223 ("Limitation for Applications for a Place on Ballot"); 172.024, 172.025, 172.026, 172.027, 172.031, 172.034 ("Procedures for Primary Party Applications for Place on the Ballot"); 173.001, 173.033, 173.034 ("Use of Primary Party Filing Fees to Fund their Primaries"); and 181.005; 181.031; 181.061; 181.066; and 181.067 ("Procedures Imposed on Convention Parties") of the Texas Election Code (collectively, the "Challenged Law"). The Challenged Law imposes substantial or severe burdens on Plaintiffs and is not reasonably related to a legitimate state interest.

### *Primary Parties/Parties in Power*

2. In Texas, political parties that received at least 20 percent of the vote in the last gubernatorial election nominate their candidates by primary election. *See* Tex. Elec. Code § 172.001. For at least the last century, only the Democratic Party and Republican Party—the two parties in power—have qualified as "Primary Parties."

---

[1] To the extent Plaintiffs did assert a claim under Procedural Due Process, they withdraw it. The Court should deny that part of Defendants' motion as moot.

3. To be entitled to a place on the general primary election ballot, Primary Party candidates must make an application for a place on the ballot. Tex. Elec. Code § 172.021(a). As part of that, Primary Party candidates are required to: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code §§ 173.031-173.034. The state (run by members of the Primary Parties) justifies this admitted infringement by the need for candidates to show a modicum of support to prevent ballot overcrowding.

4. The filing fees paid by the Primary Party candidates are *paid to the Primary Party itself* and are used to reimburse the Primary Party for the costs it incurs "in connection with the primary election."[2] *See* Tex. Elec. Code §§ 173.033-.034. The primary elections themselves are largely paid for with taxpayer funds. *See* Tex. Elec. Code § 173.001.

5. For the Primary Parties, access to the general election ballot is determined by the outcome of the primary election and the certification of its results. *See* Tex. Elec. Code § 172.122(a). The winners of each primary race are designated as the party's nominee, and the nominees are placed on the general election ballot.[3] *See* Tex. Elec. Code §§ 172.116; 172.117(a); 172.120(a),(h); 172.122.

### *Ballot-Qualified Convention Parties*

---

[2] Some of the fees are retained by the party and some are remitted to the Secretary of State for use in the primary fund. *See* Tex. Elec. Code §§ 173.061-173.063.

[3] The Primary Parties do hold conventions, but not for the purpose of nominating their candidates (except for President and Vice President).

6. In contrast to the Primary Parties, all other political parties, i.e., those that are not required or authorized by Texas Election Code to nominate candidates by primary election, *must* nominate their candidates by convention. *See* Tex. Elec. Code §§ 181.002, 181.003, 172.002. A Convention Party is entitled to have its candidates placed on the general election ballot if, within the last five years, one of its statewide candidates receives votes equal to at least two percent of the total number of votes received by all candidates for that office. *See* Tex. Elec. Code § 181.005(c). That is, after meeting such requirements, it becomes a ballot-qualified Convention Party ("Qualified Convention Party"), entitled to have its candidates on the general election ballot.

*Plaintiffs' Filing Fees Have No Direct Public Benefit*

7. To be eligible for nomination at a convention, a candidate must file an application with the state or county chair, which contains the information necessary to show that the candidate is eligible for public office should that candidate be elected. *See* Tex. Elec. Code §§ 141.031 & 181.031(a). Plaintiffs do not challenge this requirement.

8. What Plaintiffs do challenge is the filing fee or petition in lieu requirement that is delivered to the Secretary of State directly. This contrasts with the procedures that apply to Primary Parties, whose candidates file their applications and pay their fee directly to the parties themselves. *See* Tex. Elec. Code §§ 172.021(b) & 172.022.

9. The Texas Supreme Court has explained that applications for nomination by convention are not applications for a place on any ballot in the primary or general election, but merely are a prerequisite to be eligible for nomination at a convention. That is, the Texas legislature has designed primary elections and nominating conventions to be two distinct things.

10. For political parties subject to the convention process, the associational rights of the party and its candidates are extraordinarily important, as the convention involves more than casting a ballot, but is the exclusive manner for associating and selecting candidates for the general election.

### *Increasing Hostility Toward Third-Parties*

11. Until 2019, Qualified Convention Party candidates were not required to pay a filing fee or submit petitions in lieu of such a fee. Prior to 2019, the "fee or petition" requirement had applied only to Primary Party candidates.

12. But starting in 2019, the Texas legislature began to impose additional requirements on Convention Party candidates through the passage of H.B. 2504 (86th Leg. R), codified as Texas Election Code § 141.041(a) (repealed). That legislation mandated that to appear on the general election ballot in the 2020 cycle, LPTexas candidates would be required to either: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code § 141.041(a) (repealed).

13. The state's pretextual purpose in this new law was to "standardize filing fee requirements for all parties and candidates to have their name placed on the ballot."[4] In fact, the state anticipated it would collect $230,000 from the new filing fees per cycle.[5] At best, the State's motivation appears revenue-related, but more likely as an oppressive hedge against the so-called "spoiler effect."

---

[4] *See* S.B. 2093 (87th Leg.- Reg.); Bill Analysis; https://capitol.texas.gov/tlodocs/87R/analysis/pdf/SB02093F.pdf#navpanes=0

[5] H.B. 2504 (86th Leg); https://capitol.texas.gov/tlodocs/86R/fiscalnotes/pdf/HB02504E.pdf#navpanes=0

14. There is nothing in the legislative record or otherwise to indicate that LPTexas has been nominating slates of unqualified candidates, overcrowding ballots, or engaging in other nominating irregularities. LPTexas has established a modicum of support through its almost continuous ballot qualification since 1980.

15. LPTexas's nominees have historically shown a modicum of support too; in the 2022 cycle, its statewide candidates got between 1.01% to 3.01% of the vote, or between 81,660 and 238,769 votes.

16. Plaintiff Mark Ash, LPTexas's nominee for Supreme Court of Texas in 2018, received 1.6 million votes in that race.

## *2021 Legislative Session*

17. In the 2021 Legislative session, lawmakers from the Primary Parties took measures to impose more severe restrictions upon Qualified Convention Parties like LPTexas and their candidates. This was done under the guise of moving the previous offending legislation to a new section of the Election Code.

18. [Omitted]

## *2023 Legislative Session*

19. On June 18, 2023, Governor Greg Abbott signed into law S.B. 994, which added more obstructions to Plaintiffs' ballot access:

> SECTION 1. Section 145.003, Election Code, is amended by amending Subsections (b) and (f) and adding Subsection (f-1) to read as follows:
>
> (b) Except as provided by Subsection (f-1), a [A] candidate in the general election for state and county officers may be declared ineligible before the 30th day preceding election day by:

(1) the party officer responsible for certifying the candidate's name for placement on the general election ballot, in the case of a candidate who is a political party's nominee; [or]

(2) the authority with whom the candidate's application for a place on the ballot is required to be filed, in the case of an independent candidate; or

(3) the secretary of state, if the candidate is ineligible under Subsection (f)(3).

(f) A candidate may be declared ineligible only if:

(1) the information on the candidate's application for a place on the ballot indicates that the candidate is ineligible for the office; [or]

(2) facts indicating that the candidate is ineligible are conclusively established by another public record; or

(3) the candidate fails to pay the filing fee or submit a petition in lieu of a filing fee.

(f-1) A candidate may not be declared ineligible under Subsection (f)(3) after the 74th day preceding election day.

SECTION 2. Section 145.036, Election Code, is amended by amending Subsection (a) and adding Subsection (b-1) to read as follows:

(a) Except as provided by Subsections [Subsection] (b) and (b-1), if a candidate's name is to be omitted from the ballot under Section 145.035, the political party's state, district, county, or precinct executive committee, as appropriate for the particular office, may nominate a replacement candidate to fill the vacancy in the nomination.

(b-1) An executive committee may make a replacement nomination following an administrative declaration of ineligibility under Section 145.003(f)(3) only if the replacement candidate pays the filing fee or submits a petition in lieu of a filing fee.

SECTION 3. This Act takes effect September 1, 2023.

Acts 2023, 88th Leg., R.S., Ch. 1150 (S.B. 994). S.B. 994 is now codified in Sections 145.003 and 145.036 of the Texas Election Code.

20. S.B. 994 empowers the Secretary to declare candidates ineligible for failure to pay the filing fee or submit a petition, a power and responsibility that has previously been delegated to party leadership.

*First & Fourteenth Amendment Violations*
*Speech & Association*

21. The Challenged Law impermissibly infringes on Plaintiffs' First Amendment rights of speech and association.

22. Texas Election Code § 181.0311 impermissibly intrudes on Plaintiffs' rights of speech and association under the First Amendment by prohibiting a candidate from being *considered for nomination by convention* unless the filing fee or petition requirement has been met months in advance of such a convention.

23. This effectively makes payment of the filing fee or submission of signed petitions a prerequisite for a Qualified Convention Party to even think about, much less debate, the merits of an individual candidate for nomination for a particular office at convention.

24. Although the state has an interest in reducing ballot overcrowding and limiting frivolous candidates *on an election ballot*, it has no similar interest in determining what a political party—any political party—can or cannot consider or discuss at their conventions.

*Fourteenth Amendment Violations*
*Equal Protection*

25. Plaintiffs assert an as-applied challenge to the Challenged Law because it violates Plaintiffs' Fourteenth Amendment rights under the Equal Protection Clause by discriminating

against Plaintiffs without a reasonable relationship to the state's interest in candidate's showing a modicum of support.

26. The law impermissibly discriminates as to the use of the filing fees. The filing fees imposed by Texas Election Code § 141.041(a) are the same amount as the filing fees and signature requirements imposed on candidates seeking to appear on a primary election ballot for the same office. *See* Tex. Elec. Code §§ 141.041(b), (e); 172.024-25.

27. Republicans and Democrats pay their filing fees to their respective party, and that party then uses those fees to reimburse itself for the costs incurred "in connection with the primary election." *See* Tex. Elec. Code §§173.033-.034. That is, **the primary parties and their candidates get a direct public benefit from the filing fees**: The filing fees directly fund their nomination process. Importantly, the state's interest in requiring that candidates show a modicum of support is satisfied **at the time the filing fee is paid**.

28. In Contrast, LPTexas candidates are forced by Texas Election Code § 181.0311 to pay their filing fees to the state's or county's general fund, but neither LPTexas nor its candidates receive any of those fees back from the State to defray the cost of their convention nominating process. Instead, LPTexas is left to fund its own conventions. Payment of the filing fees is a substantial burden, and the state has no interest in increasing the burden by requiring Plaintiffs to then fund their nominating process on top of payment the fee.[6] Because the burden on Plaintiffs is not reasonably related to the State's interest, the discriminatory treatment of the filing fees is not constitutionally permissible.

---

[6] Plaintiffs do not concede that requiring them to pay the filing fee itself is constitutionally permissible. Plaintiffs do not concede that the "petition in lieu" option is constitutionally permissible. Plaintiffs do recognize, however, that this Court has determined otherwise, and therefore they do not challenge those provisions in this suit.

29. The Challenged Law also unfairly discriminates because it forces LPTexas' candidates to pay it before nomination by convention. As above, Plaintiffs do not challenge whether a requirement to pay the fee in and of itself is constitutionally impermissible.

30. However, the State's interests in reducing ballot overcrowding are not served by requiring Plaintiffs to pay the filing fee *before* they are nominated, because a maximum of one Libertarian *will appear in each race on the general ballot*.

31. To the extent the State asserts its interests that only "eligible" non-frivolous appear on the ballot, LPTexas candidates will have already filed applications for nomination by convention, so their form, content, and procedure requirements are met prior to their nomination conventions and available for the general public to inspect. Requiring Plaintiffs to pay before they are nominated does not reasonably related to any state interest and only serves to chill their rights of association.

### *Irreparable Harm*

32. The Challenged Law is causing Plaintiffs irreparable harm. Although one can determine the amount of money that would compensate LPTexas and its candidates for having to completely self-fund their nominating process, money damages can never fully compensate them for the chilling effect of participation in the nomination process and participation in a given election cycle. No two elections are the same.

### *Compensatory Damages*

33. As the Court has held, some of the injuries Plaintiffs claim may be compensable through monetary damages. In the alternative to their claims for injunctive relief, Plaintiffs LPTexas, Ash, Hale, Lindsey, Tippetts, and Thomas seek to recover compensatory damages.

34. Plaintiffs Ash, Hale, Lindsey, Tippetts, and Thomas have paid the filing fees under the Challenged Law. They are entitled to recover their monetary damages and disgorgement of the fees that the Challenged Law wrongfully imposed on them, and Defendants, as the State's chief election officers, have or will enforce against Plaintiffs.

35. Plaintiff LPTexas has been forced to self-fund its nominating process, without being subsidized by its own candidate's filing fees, whereas the Primary Parties can use their candidate's filing fees to subsidize their nominating process. To the extent this is not irreparable harm, Plaintiffs are entitled to recover their compensatory damages.

## Argument & Authority

### I. The Ex parte Young exception to sovereign immunity applies to this case.

Plaintiffs' declaratory and injunctive claims fall squarely within the *Ex parte Young* exception to sovereign immunity. The exception requires that the suit: "(1) be brought against state officers who are acting in their official capacities; (2) seek prospective relief to redress ongoing conduct; and (3) allege a violation of federal, not state, law." *See Williams On Behalf of J.E. v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020); *Ex parte Young*, 209 U.S. 123, 129, 28 S. Ct. 441, 444, 52 L. Ed. 714 (1908). First, Plaintiffs have brought this case against the Chief Election Officer of the State and their deputy, both in their individual capacities. Second, Plaintiffs seek an injunction baring enforcement of the challenged law, prospectively. Third, Plaintiffs assert that that their rights under the Federal Constitution have been violated, and they assert claims under 42 U.S.C. §§ 1983 & 1988.

In considering a Rule 12(b)(1) motion, the Court may consider: (1) the complaint alone; (2) the complaint supplemented by undisputed facts in the record; or (3) the complaint,

undisputed facts, and the Court's resolution of disputed facts. *Spotts v. United States*, 613 F.3d 559, 566 (5th Cir. 2010). In other words, the Court may "weigh the evidence and satisfy itself" that subject matter jurisdiction exists. *MDPhysicians & Assocs. v. State Bd. of Ins.*, 957 F.2d 178, 181 (5th Cir. 1992) (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Tex. Democratic Party v. Scott*, 617 F. Supp. 3d 598, 606 (W.D. Tex. 2022), *aff'd sub nom. Cascino v. Nelson*, No. 22-50748, 2023 WL 5769414 (5th Cir. Sept. 6, 2023)

Although Defendants do not raise the issue in their motion, "injunctive or declaratory relief are allowed against a state official acting in violation of federal law if there is a sufficient connection to enforcing an allegedly unconstitutional law." *See Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (internal quotations omitted). The core provision of the challenged law specifically names the Secretary of State as the enforcement mechanism in removing candidates from the ballot:

> (b) Except as provided by Subsection (f-1), **a candidate in the general election for state and county officers may be declared ineligible before the 30th day preceding election day by:**
>
> (1) the party officer responsible for certifying the candidate's name for placement on the general election ballot, in the case of a candidate who is a political party's nominee;
>
> (2) the authority with whom the candidate's application for a place on the ballot is required to be filed, in the case of an independent candidate; or
>
> (3) **the secretary of state**, if the candidate is ineligible under Subsection (f)(3) [for failure to pay the filing fee].

*See* Tex. Elec. Code § 145.003 (emphasis added).

If it is indeed true that sovereign immunity bars Plaintiffs' claims for damages, then Plaintiffs are left with no adequate remedy at law and thus declaratory and injunctive relief are appropriate remedies. *See Bilyeu v. Scott*, No. 1:21-CV-1089-RP, 2022 WL 607889, at *5 (W.D. Tex. Mar. 1, 2022), *citing Danden Petroleum, Inc. v. N. Nat. Gas Co.*, 615 F. Supp. 1093, 1099 (N.D. Tex. 1985) ("Injuries which can be compensated by money damages at a later time are not irreparable and do not warrant the extraordinary remedy of an injunction."); *DFW Metro Line Servs. v. Sw. Bell Tel. Co.*, 901 F.2d 1267, 1269 (5th Cir. 1990) ("There can be no irreparable injury where money damages would adequately compensate a plaintiff."). If sovereign immunity bars Plaintiffs' claims, it only does so for those claims for monetary *damages*.

## II. Plaintiffs have pleaded plausible claims and dismissal under Rule 12(b)(6) is inappropriate.

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) is appropriate only if the plaintiff has not provided fair notice of its claim and factual allegations that—when accepted as true—are plausible and rise above mere speculation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). *See generally* Wright and Miller et al., Federal Practice and Procedure, Civil §§ 1356, 1357 (3d ed.) (discussing purpose of and practice under Rule 12(b)(6)).

As this Court has explained in a similar case:

> Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.' " *In re Katrina Canal Breaches Litig.*, 495 F.3d 191,

205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

"To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.' " *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955).

* * *

"[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.' " *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009)).

*Miller v. Doe*, 422 F. Supp. 3d 1176, 1183 (W.D. Tex. 2019).

### B. Plaintiffs assert plausible claims under the *Anderson-Burdick* test.

As fully detailed in the Fourth Amended Complaint, Plaintiffs assert four counts: Violation of Plaintiffs' Rights Guaranteed by the First and Fourteenth Amendments, Violation of Plaintiffs' Rights Guaranteed by the Due Process & Equal Protection Clauses, Claims under 42 U.S.C. § 1983 & 43 U.S.C. § 1988; and Declaratory Judgment under 28 U.S.C. §§ 2201 & 2202.(Dkt. 61 at 18 to 23.) Defendants do not specify which counts they attack, but their motion focuses on the timing of the filing fee.

Under *Anderson-Burdick*, "a court first considers the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Miller v. Hughes*, 634 F. Supp. 3d 340, 351 (W.D. Tex. 2022) *citing Anderson v.*

*Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). That is weighed against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id*. "The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (*citing Burdick v. Takushi*, 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)). Provisions that "impose 'severe restrictions' ... must be 'narrowly drawn' and support 'compelling' state interests, whereas 'reasonable, nondiscriminatory restrictions' require only 'important regulatory interests' to pass constitutional muster." *Meyer v. Texas*, No. H-10-3860, 2011 WL 1806524, at *3 (S.D. Tex. May 11, 2011) (quoting *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059). After weighing those factors, the court can decide whether the challenged provisions are unconstitutional. *Anderson*, 460 U.S. at 789, 103 S.Ct. 1564.

Defendants challenge Plaintiffs' free speech and association claims that "the filing fee or petition deadline approximately five months before their convention violates their free speech and association rights." (Dkt. # 64: Defs' Mt. Dismiss at 5.) Defendants mischaracterize the claim that Plaintiffs assert.

Plaintiffs do not assert that their obligations to file their applications for nomination by convention four months prior to the convention are unconstitutionally burdensome. Rather, they only challenge the *payment of the filing fee* before the nominating convention:

> 29. The Challenged Law also unfairly discriminates because it forces LPTexas' candidates to pay it before nomination by convention. As above, Plaintiffs do not challenge whether a requirement to pay the fee in and of itself is constitutionally impermissible.

1:21-CV-01089-RP; *Bilyeu v. Nelson*
Resp. to Mt. to Dismiss                                                                                                              Page 15

> 30. However, the State's interests in reducing ballot overcrowding are not served by requiring Plaintiffs to pay the filing fee *before* they are nominated, because a maximum of one Libertarian *will appear in each race on the general ballot*.
>
> 31. To the extent the State asserts its interests that only "eligible" non-frivolous appear on the ballot, LPTexas candidates will have already filed applications for nomination by convention, so their form, content, and procedure requirements are met prior to their nomination conventions and available for the general public to inspect. Requiring Plaintiffs to pay before they are nominated does not reasonably related to any state interest and only serves to chill their rights of association.

(Dkt. 61 at 16-17.) Payment of a filing fee is a burden, and as pleaded by Plaintiffs, a severe one that chills their rights of association. (Dkt. 61 at 17.) At this stage of the proceeding, and taking the allegations in the Fourth Amended Complaint as true, it is plausible that Plaintiffs could prove that the statute is unconstitutionally burdensome by making them pay the filing fee prior to their nominating convention and making that filing fee payable to the State's general fund.

The state argues that *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 180 (5th Cir. 1996), forecloses Plaintiffs claims. But *Kirk* is distinguishable. In *Kirk*, payment of a filing fee was not an issue in the case. Rather, the case dealt with a declaration of intent to run as an independent candidate a candidate under Section 142.002 of the Texas Election Code and the petition signature burden on an independent or unaffiliated candidate. *See* Tex. Elec. Code Ann. § 142.002 (West 1986). As the *Kirk* Court observed, "The declaration is basically a simple matter that requires only the candidate's name, address, and office sought." *Id*. The *Kirk* Court concluded, understandably, that the burden of filing the declaration was slight. *See id*. The *Kirk* Court then went on to conclude that requiring independent candidates to submit petitions six months after filing the declaration of intent was constitutionally permissible. *See id*. at 185.

In contrast to this case, *Kirk* did not address the burden of submitting a filing fee at the same time the application was submitted, and *Kirk* was decided at the summary judgment stage. The challenged law was enacted just last year; this is its first election cycle. Disposing of Plaintiffs' claims relating to the timing of the payment of the fee on a motion to dismiss is not appropriate. *See Miller v. Doe*, 422 F. Supp. 3d 1176, 1186 (W.D. Tex. 2019) (holding in a similar case with a similar posture that "Court will not dismiss Plaintiffs' petition requirement claims at this [motion to dismiss] stage.").

The State's alleged justifications for challenged law do not foreclose Plaintiffs claims at the motion to dismiss stage. Even if the challenged law does not pose an undue burden, the challenged law must still bear a rational relationship to the state's legitimate interest. *See Miller v. Hughs*, 634 F. Supp. 3d 340, 357 (W.D. Tex. 2022) ("The Court therefore holds that the challenged provisions, to the extent they require paper petitions, violate Plaintiffs' fundamental rights because there is no connection between those burdensome provisions and the Defendants' stated interest.").

Defendants' justifications for the challenged law are opportunistic at best. The state cannot have it both ways. On one hand, it claims that the challenged law is non-discriminatory because it treats "all candidates equally, placing all candidates in the same starting position at the beginning of a race[.]" (Dkt. 64 at 6.) Then, on the other hand, it asserts that Plaintiffs cannot prevail on their equal protection claims because they "are not similarly situated to the primary parties because they do not shoulder the heavy burden of administering primary elections open to large segments of the voting population." (Dkt. 64 at 8.) There is one time that all the citizens come together and elect their representatives: the general election. Plaintiffs have asserted that plausible claims that the challenged law unconstitutionally burdens them when compared to major party candidates all ultimately

competing against each other in the general election. There is no controlling case stating that Plaintiffs pleadings are foreclosed as a matter of law. The Court should deny the motion to dismiss.

Defendants assert that the State need not use public money to fund Plaintiffs' nominating process. . . ." (Dkt. 64 at 8.) Plaintiffs agree. Plaintiffs do not assert a claim for any public subsidy or use of public funds in their nominating process. Plaintiffs only ask that their own funds be used to fund their own conventions. Indeed, it would be antithetical to Plaintiffs to take public money for their nominating process. It is true that the primary parties do get subsidies from the general fund because the filing fees are not enough to pay for the primary elections. That does not mean that Plaintiffs claims are foreclosed.

Requiring that a candidate show "sufficient public support to gain access to the *convention*". There is a difference between standing for nomination at a convention and appearing on an election ballot. The two things are not interchangeable. In addition, the states' interest in protecting ballot overcrowding would be served if the fee was required after the convention but before the general election. The State's interest in "enhancing voter education" about the candidates is served by requiring candidates to file their applications, containing the form, content, and procedure information.

Should the Court find that the *Fourth Amended Complaint* fails to state a plausible claim, Plaintiffs ask the Court for leave to amend their pleading.

## Prayer

FOR THESE REASONS, Plaintiffs respectfully request that the Court DENY *Defendants' Motion to Dismiss*, alternatively grant them leave to amend their *Fourth Amended Complaint*, and grant them all relief, in law or in equity, to which they are justly entitled.

Dated: March 18, 2024                               Respectfully submitted,

1:21-CV-01089-RP; *Bilyeu v. Nelson*
Resp. to Mt. to Dismiss                                                                                           Page 18

By: */s/ Jared G. LeBlanc*
Jared G. LeBlanc
Texas Bar No. 24046279
jleblanc@leblancflanery.com

**Attorney-In-Charge**

**OF COUNSEL:**

LeBlanc Flanery PLLC

2929 Allen Parkway, Suite 200
Houston, Texas 77019
(346) 315-1150

**Attorneys for Plaintiffs**

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon Defendants, by and through their counsel of record, electronically through the Clerk's ECF system on March 18, 2024.

> */s/ Jared G. LeBlanc*
> Jared G. LeBlanc