IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | |
|---|---|
| WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS, IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS,<br>　　*Plaintiffs*,<br><br>v.<br><br>JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and DAVID NELSON, in his official capacity as the Deputy Secretary of State of the State of Texas,<br>　　*Defendants*. | CIVIL ACTION No. 1:21-CV-01089 |

**Defendants' Reply in Support of Motion to Dismiss**

Defendants Jane Nelson ("the Secretary") and David Nelson[1] ("the Deputy Secretary") file this Reply in Support of Motion to Dismiss and respectfully offer the following in support:

---

[1] Jose A. "Joe" Esparza resigned as Deputy Secretary of State on November 8, 2023. David Nelson was appointed to the position on March 1, 2024. Press Release, Tex. Sec. of St. (Feb. 8, 2024), available at https://www.sos.state.tx.us/about/newsreleases/2024/020824.shtml. Defendant David Nelson should be immediately substituted as the Deputy Secretary defendant per Fed. R. Civ. P. 25(d).

1

### BACKGROUND

On December 29, 2023, Plaintiffs filed a Fourth Amended Complaint asserting: (1) that the deadline for candidates seeking their party's nomination to submit a petition or filing fee violates Plaintiffs' free speech and association rights to the extent it occurs prior to the selection of party nominees at the nominating convention; and (2) that their equal protection rights are violated by the state transferring their collected filing fees to the general revenue fund, while transferring collected filing fees from primary candidates to their party to defray the costs of primary elections. Dkt. 61.

On February 2, 2024, Defendants moved to dismiss Plaintiffs' Fourth Amended Complaint for lack of jurisdiction, to the extent Plaintiffs seek damages, and for failure to state a claim. Dkt. 64.

On March 19, 2024, Plaintiffs filed a response conceding their procedural due process claims, Dkt. 67 at 2 n.1, and seemingly conceding their claims for damages, *id.* at 11–13, but contending they have stated due process and equal protection claims, *id.* at 14–18.

### REPLY[2]

**I.    Plaintiffs' claims for damages are barred by sovereign immunity.**

Plaintiffs seemingly concede that their claims for damages against Defendants in their official capacities are barred by sovereign immunity, while contending that their claims for damages against Defendants in their individual capacities survive. Dkt. 67 at 11–12. But Plaintiffs sued Defendants *solely* in their official capacities. Dkt. 61 at 7. Nowhere in Plaintiffs' Fourth Amended

---

[2] Plaintiffs conceded their procedural due process claim. Dkt. 67 at 2 n.1.

Complaint are there claims alleged against Defendants in their individual capacities; instead, the pleading states that Defendants are sued in their official capacities. *Ibid*.

Assuming, *arguendo*, there were individual capacity claims for damages, the claims should still be dismissed as a matter of law. Defendants are entitled to qualified immunity from claims for damages in their individual capacities because accepting petitions and filing fees from candidates seeking party nomination and depositing collected filing fees into the state's general fund, as required by law, does not violate a clearly established constitutional right and was not objectively unreasonable in light of clearly established law. *See Thompson v. Mercer*, 762 F.3d 433, 436–37 (5th Cir. 2014). There are no allegations Defendants did anything other than comply with Texas law.

Alternatively, Defendants are entitled to dismissal of any individual capacity claims for damages due to the lack of personal involvement. "Personal involvement is an essential element" of demonstrating liability in constitutional and civil rights claims. *Delaughter v. Woodall*, 909 F.3d 130, 137 (5th Cir. 2018) (quoting *Thompson v. Steele*, 709 F.2d 381, 382 (5th Cir. 1983)). Plaintiffs Berlin, Burnes, Lindsey, Thomas, and Tippets allegedly paid their filing fees *prior* to the Secretary assuming her position on January 7, 2023.[3] Dkt. 61 at 3–6 (only Plaintiffs Ash and Hale have paid filing fees since Defendant Nelson became Secretary). The Deputy Secretary assumed his position *weeks* ago and there are no allegations he had any role in the alleged collection of Plaintiffs' filing fees. *See* Dkt. 61 at 7; *see also supra* at n.1. These claims should be dismissed as a matter of law.

---

___

[3] The Secretary was sworn in on January 7, 2023. Press Release, Tex. Sec. of St. (Jan. 7, 2023), available at https://www.sos.state.tx.us/about/newsreleases/2023/010723.shtml.

This Court should dismiss Plaintiffs' claims for damages against Defendants in their official capacities where there has been no waiver of sovereign immunity. In the event this Court finds that Plaintiffs sued Defendants in their individual capacities, it should dismiss these claims as well because Defendants are entitled to qualified immunity and for lack of personal involvement in the alleged collection of filing fees from the Plaintiffs.

## II.   Plaintiffs failed to state viable free speech and association claims.

Plaintiffs' clarification that they are challenging the timing of the petition or filing fee requirement at any point prior to their party selecting a nominee is fatal to their constitutional claims. Dkt. 67 at 15. Plaintiffs ask this Court to rule that the petition or filing fee requirement is unconstitutional unless: (1) candidates seeking nomination by convention apply the preceding December; (2) the parties hold their nominating conventions and select their nominees; (3) the candidates who sought their party's nomination (both winners and losers), after the selection process, submit a petition or filing fee to the Secretary; and (4) the state return the collected filing fees to the party to reimburse the costs of the nominating convention. Dkt. 67 at 8–10. Such a plan is entirely unworkable.

*First*, the "character and magnitude of the asserted injury" is minimal and borne equally by all candidates seeking their party's nomination—whether by primary or convention. In determining the character and magnitude of the burden a state law imposes on ballot access, "[t]he inquiry is whether the challenged restriction unfairly or unnecessarily burdens 'the availability of political opportunity." *Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983) (quoting *Clements v. Fashing*, 457 U.S. 957, 964 (1982)). The petition or filing fee requirement treats all candidates equally and is necessary to screen out candidates who do not have some modicum of support.

4

Plaintiffs seek to upset this system of equality under the law by obtaining more favorable treatment than their rivals participating in primary elections.

*Second*, the petition or filing fee deadline prior to the nominating convention advances the state's interest in a fair and orderly democratic process. Plaintiffs' argument and requested relief, conversely, would defeat the very purpose of requiring a petition or filing fee "to be considered for nomination by convention." Tex. Elec. Code § 181.0311(a). If Plaintiffs succeed, it is unlikely in the extreme that any of the candidates seeking nomination by convention would, after losing at the nominating convention, *then* set out to collect petition signatures or pay the filing fee. Voters would have no incentive to sign a candidate's petition showing their support *after* the candidate has already lost the nomination contest. And the Secretary has no enforcement mechanism to collect the filing fee from unsuccessful candidates—only from the successful nominees. Tex. Elec. Code § 145.003(b)(3) (authorizing the Secretary to declare candidates ineligible for the general election if they do not submit a petition or filing fee). This would result in an unfair advantage for candidates seeking nomination by convention and would undermine the state's interest in requiring candidates seeking party nominations to show some modicum of support.

*Third*, only requiring successful party nominees to submit the petition or filing fee does not advance the state's interests. Plaintiffs' response largely ignored Defendants' proffered reasons that the petition or filing fee requirement advances legitimate state interests because it treats all candidates equally; places all candidates in the same starting position at the beginning of the election cycle; ensures that the candidates demonstrate sufficient public support to gain access to the nominating convention, primary, and general election ballots; and enhances voter education about the candidates by requiring them to file early enough that voters can identify the candidates,

5

decide whom they will support and whether to participate in the primaries or a convention. Dkt. 64 at 5–6. Plaintiffs, instead, argued that their proposed scheme would still advance the state's interest in candidates showing some modicum of support for placement on the general election ballot. Dkt. 67 at 14–18. But the state's interest in candidates showing some modicum of support is arguably greatest when candidates seek their party's nomination—not after they've successfully won their party nomination. Plaintiffs' proposed scheme would not address the state's interest in candidates seeking their party's *nomination* to show some modicum of support, nor any of the other proffered reasons for the petition or filing fee requirement, including the administrative interests of the state in having a single deadline for applications and filing fees for all candidates. Dkt. 64 at 5-6. *See Cowen v. Sec'y of State of Georgia*, 22 F.4th 1227, 1233 (11th Cir. 2022) (upholding challenge to filing fees), *cert. denied sub nom. Cowen v. Raffensperger*, 143 S. Ct. 214 (2022).

This Court should find that the petition or filing fee requirement passes the *Anderson/Burdick* test because the burden placed on Plaintiffs (the same burden placed on all candidates seeking party nomination) is minimal when weighed against the state's proffered interests.

### III.   Plaintiffs failed to state viable equal protection claims.

Plaintiffs' equal protection claim is likely not subject to the *Anderson/Burdick* test because there is no allegation that the state's use of collected filing fees imposes a burden on ballot access. *See* Dkt. 67 at 8–10; *see also generally* Dkt. 61. Plaintiffs have failed to state a viable claim under either traditional equal protection analysis or the *Anderson/Burdick* test.

The Equal Protection Clause of the Fourteenth Amendment forbids the government from giving differential treatment to people who are similarly situated, unless the government has a

6

rational basis for doing so. U.S. Const. amend. XIV, § 1; *see Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Gibson v. Tex. Dep't of Ins.—Div. of Workers' Comp.*, 700 F.3d 227, 238 (5th Cir. 2012) .

Here, Plaintiffs have not stated a viable equal protection claim because Plaintiffs are not similarly situated to their alleged primary party comparators. "Similarly situated" means "in all relevant respects alike." *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordlinger*, 505 U.S. at 10); *see also Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 468 (5th Cir. 2021). Parties nominating by convention are dissimilar from parties nominating by primaries both in the size of the respective parties, the popularity of the party, the process used to select nominees, and the respective costs of their nominee selection processes. Dkt. 64 at 7-8; *see Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 167–68 (5th Cir. 2009). Plaintiffs' response conflated the petition or filing fee deadline, which treats all candidates seeking their party's nomination equally, with the state's use of collected filing fees, which treats political parties differently because of their disparate sizes, popularity, method of nomination, and costs of their respective nomination processes. Dkt. 67 at 17–18. The two are obviously different. This Court should find that Plaintiffs have failed to state viable equal protection claims because they are not similarly situated to their alleged comparators.

Even if Plaintiffs were similarly situated to their alleged comparators, they've still failed to state a viable equal protection claim because the petition or filing fee requirement passes rational basis review. "If neither a suspect class nor a fundamental right is implicated, the classification need only bear a rational relationship to a legitimate governmental purpose." *Big Tyme Invs.*, 985 F.3d at 468 (quoting *Butts v. Aultman*, 953 F.3d 353, 358 (5th Cir. 2020)). The state's use of collected filing fees from candidates seeking nomination by convention in the general revenue fund

7

is rationally related to the legitimate state interests of preventing overcrowding on the ballot from nonserious candidates and providing public funding to political parties in corresponding relation to their demonstrated level of public support. Plaintiffs cannot credibly contend otherwise.

Alternatively, Plaintiffs fail to state a viable equal protection claim because the state's use of collected filing fees passes the *Anderson/Burdick* test. As discussed *supra*, there is no allegation that the state's use of collected filing fees imposes any burden on ballot access. *See* Dkt. 67 at 8-10; *see also generally* Dkt. 61. "The hallmark of a severe burden is exclusion or virtual exclusion from the ballot." *Miller v. Hughs*, 634 F. Supp. 3d 340, 354 (W.D. Tex. 2022) (quoting *Libertarian Party of Kentucky v. Grimes*, 835 F.3d 570, 575 (6th Cir. 2016)). But Plaintiffs have not alleged that the state's use of collected filing fees "operate as a mechanism to exclude certain classes of candidates from the electoral process." *Id.* at 357 (quoting *Anderson*, 460 U.S. at 793)). So, the "character and magnitude" of the asserted impediment to ballot access is nonexistent. The state's use of collected filings will, therefore, passes the *Anderson/Burdick* test if there are any regulatory interests advanced by it. *Meyer v. Texas*, No. H-10-3860, 2011 WL 1806524, at *3 (S.D. Tex. May 11, 2011) (quoting *Burdick v. Takushi*, 504 U.S. 428, 434 (1992)). And the state has important regulatory interests advanced by its use of collected filing fees. *Harrison v. Young*, 48 F.4th 331, 340 (5th Cir. 2022) ("Texas has a strong interest in deciding how it allocates state funds."). Candidates running for office participate in publicly-funded elections and their collected filing fees help prevent overcrowding on ballots from nonserious candidates and further the State's interest in providing funding to political parties in corresponding relation to their demonstrated level of public support. The state's use of collected filing fees easily passes the *Anderson/Burdick* test when weighed against Plaintiffs' injury.

\*\*\*

This Court has previously found that the challenged laws "likely represent reasonable and nondiscriminatory measures that are comparable to those the Fifth Circuit and the Supreme Court have previously upheld as reasonable under the *Anderson/Burdick* test." Dkt. 35 at 6. Recently, it rejected similar claims in a related lawsuit. *See Miller v. Hughs*, 634 F. Supp. 3d 340 (W.D. Tex. 2022). Texas courts considering similar claims have reached the same conclusion. *See Hughs v. Dikeman*, 631 S.W.3d 362 (Tex. App.—Houston [14th Dist.] 2020, pet. denied). Defendants ask this Court, for the same reasons, to again reject Plaintiffs' claims and dismiss them with prejudice.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court GRANT their Motion to Dismiss, disposing of all of Plaintiffs' claims in their entirety and for any further relief to which they are justly entitled.

Respectfully submitted,

**KEN PAXTON**
Attorney General of Texas

**BRENT WEBSTER**
First Assistant Attorney General

**RALPH MOLINA**
Deputy Attorney General for Legal Strategy

**RYAN WALTERS**
Chief for Special Litigation Division

*/s/Johnathan Stone*
**JOHNATHAN STONE**

        Special Counsel
        Texas State Bar No. 24071779
        Johnathan.Stone@oag.texas.gov

        Office of the Attorney General
        Special Litigation Division
        P.O. Box 12548, Capitol Station
        Austin, Texas 78711-2548
        Telephone: (512) 475-4196
        Facsimile: (512) 320-0667

        ***ATTORNEYS FOR DEFENDANTS***

## CERTIFICATE OF SERVICE

I certify that that on March 25, 2024, this document was filed electronically via the Court's CM/ECF system, causing electronic service upon all counsel of record.

        */s/Johnathan Stone*
        **JOHNATHAN STONE**
        Assistant Attorney General