IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, *individually and as Chair of the Libertarian Party of Texas*; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS, <br><br>Plaintiffs, <br><br>v. <br><br>JANE NELSON, *in her official capacity as the Secretary of State of the State of Texas*, and JOSÉ A. ESPARZA, *in his official capacity as the Deputy Secretary of State of the State of Texas*, <br><br>Defendants. | § § § § § § § § § § § § § § § § § § § | 1:21-CV-1089-RP |

**ORDER**

Before the Court is Defendants Jane Nelson and José A. Esparza's[1] ("Defendants") Motion to Dismiss. (Dkt. 64). Plaintiffs Whitney Bilyeu, Mark Ash, Stephanie Berlin, Joe Burnes, Arthur Dibianca, Kevin Hale, Desarae Lindsey, Arthur Thomas IV, Mark Tippetts, and the Libertarian Party of Texas ("LPT") (collectively, "Plaintiffs") filed a response, (Dkt. 67), and Defendants filed a reply, (Dkt. 68). Having considered the parties' submissions, the record, and the applicable law, the Court will grant in part and deny in part the motion.

**I. BACKGROUND**

---

[1] Nelson and Esparza are sued in their official capacities as Texas Secretary of State and Deputy Secretary of State, respectively.

1

### A. The Challenged Statutes

In Texas, political parties that received at least 20 percent of the vote in the last gubernatorial election nominate their candidates by primary election. *See* Tex. Elec. Code § 172.001. For the last century, only the Democratic Party and Republican Party have qualified as "primary parties." (Pls.' Resp., Dkt. 67, at 1). All other parties (i.e., "third parties") must nominate their candidates through a convention and are subject to different nominating laws and requirements. (*Id.*).

To be entitled to a place on the primary election ballot, primary party candidates must make an application for a place on the ballot. Tex. Elec. Code § 172.021(a). As part of that process, primary party candidates are required to: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See id.* §§ 173.031-173.034. Those filing fees are paid to the primary party itself and are used to reimburse the primary party for the costs it incurs "in connection with the primary election." *Id.* §§ 173.033–.034. For the primary parties, access to the general election ballot is determined by the outcome of the primary election and the certification of those results. *Id.* § 172.122(a). The winners of each primary race are designated as the party's nominee, and the nominees are then placed on the general election ballot. *Id.* §§ 172.116; 172.117(a); 172.120(a),(h); 172.122.

In contrast to the primary parties, third parties must nominate their candidates through a convention. *Id.* §§ 181.002, 181.003, 172.002. A third party is entitled to have candidates placed on the general election ballot if, within the last five years, one of its statewide candidates received votes equal to at least two percent of the total number of votes received by all candidates for that office. *Id.* § 181.005(c). That is, after meeting such requirements, a third party becomes a ballot-qualified convention party (a "Qualified Convention Party"), which means it is entitled to have its candidates on the general election ballot.

Starting in 2019, the Texas Legislature began to impose additional requirements on Qualified Convention Party candidates through the passage of H.B. 2504 (86th Leg. R), *codified as* Texas Election Code § 141.041(a) (repealed). That legislation mandated that to appear on the general election ballot in the 2020 cycle, third-party candidates would be required to either: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code § 141.041(a) (repealed). To be eligible for nomination at a convention under this new law, a candidate must file an application and pay a filing fee with the state or county chair, which contains the information necessary to show that the candidate is eligible for public office should that candidate be elected. *Id.* §§ 141.031 & 181.031(a). This contrasts with the procedures that apply to Primary Parties, whose candidates file their applications and pay their fee directly to the parties themselves. *Id.* §§ 172.021(b) & 172.022. Most critically, while primary parties use the filing fees to help offset the costs of hosting a primary, third parties must pay the filing fees to the state or county chair, and do not receive a corresponding rebate to offset the cost of their conventions.[2]

## B. Procedural History

Plaintiffs include the LPT and several candidates who have run for office and continue to run for office on the LPT ticket. (4th Am. Compl., Dkt. 61). Plaintiffs filed suit on December 1, 2021, and filed an amended complaint on December 23, 2021. (Compl., Dkt. 1; Am. Compl., Dkt. 12). In their first amended complaint, Plaintiffs challenged Section 181.0311 of the Texas Election Code, which was amended in 2021 to require payment of a filing fee (or a petition in lieu thereof) in order for a third party to be considered at a nominating convention. (Am. Compl., Dkt. 12).

---

[2] This regulation was further modified on June 18, 2023, when Governor Greg Abbott signed S.B. 994 into law. Acts 2023, 88th Leg., R.S., Ch. 1150 (S.B. 994). The new changes allow the Secretary of State to disqualify candidates for failure to pay the filing fee or submit a petition, a decision that was previously assigned only to the nominating parties. S.B. 994 is now codified in Sections 145.003 and 145.036 of the Texas Election Code.

With their first amended complaint, Plaintiffs also moved for a preliminary injunction to enjoin Section 181.0311 from taking effect. (Mot. Prelim. Inj., Dkt. 14). The Court held a hearing on the preliminary injunction on February 24, 2022, (Dkt. 32), and denied the motion on March 1, 2022. (Order, Dkt. 35). In its order, the Court noted that the "restrictions here likely represent reasonable and nondiscriminatory measures" comparable to those upheld by other courts. (*Id.* at 6). Because Defendants argued that Section 181.0311 advanced the State's interest of a showing a modicum of support, the Court found that Defendants were likely to establish "important, if not compelling, state interests," which was "all that is required to uphold this likely reasonable and nondiscriminatory election law. . . ." (*Id.* at 7–8). Plaintiffs also challenged Section 181.0311's requirement that third parties must pay fees to the state without receiving funds back for its nominating process. (Am. Compl., Dkt. 12; Mot. Prelim. Inj., Dkt. 14, at 10). Here, the Court noted that Plaintiffs were unlikely to suffer irreparable harm sufficient to warrant a preliminary injunction and denied the motion on that basis without addressing the likelihood of success on the merits. (Order, Dkt. 35, at 9–10).

Following Texas's passage of S.B. 994 in 2023, Plaintiffs filed an updated amended complaint. (4th Am. Compl., Dkt. 61).[3] The amended complaint maintains Plaintiffs' challenge to Section 181.0311 while also alleging that S.B. 994 violates their First and Fourteenth Amendment rights by vesting the Texas Secretary of State with unilateral authority to disqualify candidates. (*Id.* at 18). Plaintiffs also maintain that Section 181.0311 intrudes on their constitutional rights by using filing fees to support the costs of hosting primary party elections, but not to defray the costs of third-party conventions. (*Id.* at 18–20).

Defendants moved to dismiss the fourth amended complaint on February 2, 2024. (Dkt. 64). Defendants allege that any claims for damages are barred by sovereign immunity; that the First

---

[3] During the interim period, Plaintiffs filed their second and third amended complaints. (*See* Dkts. 46, 57).

Amendment claims fail because Texas's restrictions are reasonable, are nondiscriminatory, and advance legitimate governmental interests; and that the due process and equal protection claims fail because Plaintiffs identify no property right and are not similarly situated parties. (*Id.*). Plaintiffs responded, conceding any Procedural Due Process claims, but arguing that the remaining claims should survive past the pleading stage. (Dkt. 67).

## II. LEGAL STANDARD

### A. Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a party to assert lack of subject-matter jurisdiction as a defense to suit. Fed. R. Civ. P. 12(b)(1). Federal district courts are courts of limited jurisdiction and may only exercise such jurisdiction as is expressly conferred by the Constitution and federal statutes. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). A federal court properly dismisses a case for lack of subject matter jurisdiction when it lacks the statutory or constitutional power to adjudicate the case. *Home Builders Ass'n of Miss., Inc. v. City of Madison*, 143 F.3d 1006, 1010 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001), *cert. denied*, 536 U.S. 960 (2002). "Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Id.* In ruling on a Rule 12(b)(1) motion, the court may consider any one of the following: (1) the complaint alone; (2) the complaint plus undisputed facts evidenced in the record; or (3) the complaint, undisputed facts, and the court's resolution of disputed facts. *Lane v. Halliburton*, 529 F.3d 548, 557 (5th Cir. 2008).

### B. Rule 12(b)(6)

Pursuant to Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a 12(b)(6) motion, a "court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina*

*Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (quoting *Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). That is, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* A court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Dorsey v. Portfolio Equities, Inc.,* 540 F.3d 333, 338 (5th Cir. 2008) (citations and internal quotation marks omitted). A court may also consider documents that a defendant attaches to a motion to dismiss "if they are referred to in the plaintiff's complaint and are central to her claim." *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004). But because the court reviews only the well-pleaded facts in the complaint, it may not consider new factual allegations made outside the complaint. *Dorsey,* 540 F.3d at 338. "[A] motion to dismiss under 12(b)(6) 'is viewed with disfavor and is rarely granted.'" *Turner v. Pleasant*, 663 F.3d 770, 775 (5th Cir. 2011) (quoting *Harrington v. State Farm Fire & Cas. Co.*, 563 F.3d 141, 147 (5th Cir. 2009)).

## III. DISCUSSION

### A. Plaintiffs' Damages Claims Are Barred by Sovereign Immunity

Plaintiffs' claims for damages are barred by sovereign immunity. In their complaint, Plaintiffs request compensatory damages to recover the filing fees that the Texas Election Code "wrongfully imposed on them, and Defendants . . . have or will enforce against Plaintiffs." (4th Am. Compl., Dkt. 61, at 17–18). Defendants, who are sued in their official capacities as officers of the state, are entitled to sovereign immunity. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). Suits against these employees are effectively suits against the state, which are barred by sovereign immunity subject only to limited exceptions. *See id.*; *Green v. State Bar of Tex.*, 27 F.3d 1083, 1087–88 (5th Cir. 1994).

Plaintiffs' claim for declaratory and injunctive relief falls within the *Ex parte Young* exception to immunity, which Defendants do not contest. 209 U.S. 123 (1908); *Va. Off. for Prot. & Advoc. v. Stewart*, 563 U.S. 247, 255 (2011) (noting *Ex parte Young* is available where a plaintiff "alleges an ongoing violation of federal law and seeks relief properly characterized as prospective"). However, the *Ex parte Young* exception applies only to prospective relief, not claims for monetary damages. *See J.E. ex rel. Williams v. Reeves*, 954 F.3d 729, 736 (5th Cir. 2020). While Plaintiffs' injunctive claims may proceed, their claims for monetary damages against officials of the state are barred by sovereign immunity and must be dismissed.[4]

### B. Plaintiffs' Procedural Due Process Claim

Next, the Court briefly addresses Plaintiffs' Procedural Due Process claim. In their Fourth Amended Complaint, Plaintiffs allege that the recent changes to Texas's Election Code violate "rights guaranteed by the Due Process & Equal Protection Clauses." (4th Am. Compl., Dkt. 61, at

---

[4] Plaintiff Desarae Lindsey brings claims only for past filing fees and alleges that she has since moved to California. (4th Am. Compl., Dkt. 61, at 5). As she has no valid prospective claim for relief and her monetary damages claim is barred by sovereign immunity, the Court will dismiss her as a party in this case.

20). However, Plaintiffs note in a footnote in their response to the motion to dismiss that "[t]o the extent Plaintiffs did assert a claim under Procedural Due Process, they withdraw it." (Dkt. 67 at 2 n.1). Accordingly, because that claim has been withdrawn, Defendants' motion to dismiss the Procedural Due Process claim is moot.[5]

### C. First Amendment Claims

1. Plaintiffs Allege No Valid Speech Injury

Plaintiffs allege that Texas Election Code Section 181.0311 intrudes on their rights of speech and association by prohibiting a candidate from being considered unless the filing fee or petition requirement has been met. (4th Am. Compl., Dkt. 61, at 15). As a result, candidates must decide by "the second Monday in December of an odd-numbered year" whether they will seek nomination at a third-party convention. Tex. Elec. Code § 172.023(a) (setting deadline for primary party candidates); *id.* at § 181.033 (setting deadline for third-party candidates to be the same as primary party candidates). In their response, Plaintiffs argue that this regulation "effectively makes payment of the filing fee or submission of signed petitions a prerequisite for a Qualified Convention Party to even think about, much less debate, the merits of an individual candidate for nomination for a particular office at convention." (Resp., Dkt. 67, at 8).

For the reasons stated in its preliminary injunction order, Plaintiffs do not allege a First Amendment *speech* injury. (Order, Dkt. 34, at 8–9). As the Court held:

> If [Plaintiffs' interpretations] were the meaning of the law at issue, Plaintiffs would likely have a stronger case. But Defendants note, and the Court agrees, that § 181.0311 does not go so far. It does not regulate how parties conduct their conventions, nor regulate anyone's speech. Rather, it creates a series of steps an individual must take to be put up for election at the convention, just as elsewhere the election code imposes requirements for primary party candidates to be placed on their respective primary ballots. It does not restrict a party from

---

[5] *See also Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 235 (5th Cir. 2020) ("Because *Anderson/Burdick*—unlike *Eldridge*—appropriately accounts for the state's interest in regulating voting, it provides the appropriate test for procedural due process claims challenging election laws.").

> nominating anyone who meets these requirements. The statute therefore only regulates the limited act of selecting names to place on the general election ballot and is unlikely to constitute and intrusion into internal party activities. A party remains free to host any speakers or discussions at its convention that it chooses so long as those "considered"—effectively, those placed on the primary ballot—follow the statutory requirements. The same is required of primary parties and their candidates.

(*Id.* at 8) (internal citations omitted).

Put another way, Plaintiffs do not describe a restriction on their First Amendment speech. *See Voting for Am., Inc. v. Steen*, 732 F.3d 382, 392 (5th Cir. 2013) ("[N]ot every procedural limit on election-related conduct automatically runs afoul of the First Amendment. The challenged *law* must restrict political discussion or burden the exchange of ideas.") (emphasis in original). Plaintiffs remain welcome to discuss and debate anyone they choose to discuss at their nominating convention, and the state will not (and cannot) punish them for that speech. Discussing ineligible candidates will likely be pointless, and conventions will presumably choose to discuss only eligible candidates, but that does not transform the eligibility requirement into a regulation of speech. *See Burdick v. Takushi*, 504 U.S. 428, 438 (1992) ("Attributing to elections a more generalized expressive function would undermine the ability of States to operate elections fairly and efficiently.").

2. Plaintiffs Allege a Valid Freedom of Association Claim

While Plaintiffs' complaint and Defendants' motion to dismiss both focus on the restrictions on Plaintiffs' speech, Plaintiffs also allege a violation of their right to freely associate. (*See* 4th Am. Compl., Dkt. 61, at 2 (Texas election code "severely infringe[s] on Plaintiffs' rights of . . . association[.]"); *id.* at 21 ("[T]he Challenged Law impermissibility infringes on Plaintiffs' First Amendment rights of speech and association.")); *see also Johnson v. City of Shelby*, 574 U.S. 10, 11 (2014) (federal rules "do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted."). Texas Election Code § 181.0311 regulates Plaintiffs' associational rights, as it requires Plaintiffs to pay a filing fee month in advance of their nominating

convention. *See Anderson v. Celebrezze*, 460 U.S. 780, 793 (1983) ("A burden that falls unequally on new or small political parties or on independent candidates impinges, by its very nature, on associational choices protected by the First Amendment."); *Burdick*, 504 U.S. at 439 ("[T]he State's ban on write-in voting imposes only a limited burden on voters' rights to make free choices and to associate politically through the vote."). Accordingly, while Plaintiffs do not allege a valid claim for restriction of their free speech rights, their First Amendment challenge can proceed under their freedom of association claim.

Because Plaintiffs allege a restriction on their right to freely associate, the Court analyzes Texas Election Code § 181.0311 under the *Anderson/Burdick* test. *See Anderson*, 460 U.S. at 789; *Burdick v. Takushi*, 504 U.S. at 434. Under that test, a court first considers the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Anderson*, 460 U.S. at 789. That is then weighed against "the precise interests put forward by the State as justifications for the burden imposed by its rule." *Id.* "The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (citing *Burdick*, 504 U.S. at 434). Provisions that "impose 'severe restrictions' . . . must be 'narrowly drawn' and support 'compelling' state interests, whereas 'reasonable, nondiscriminatory restrictions' require only 'important regulatory interests' to pass constitutional muster." *Meyer v. Texas*, No. H-10-3860, 2011 WL 1806524, at *3 (quoting *Burdick*, 504 U.S. at 434). After weighing those factors, the court can decide whether the challenged provisions are unconstitutional. *Anderson*, 460 U.S. at 789.

Defendants allege that dismissal is appropriate under the *Anderson/Burdick* framework because Texas's election restrictions present a reasonable, nondiscriminatory burden that advances legitimate governmental interests. (Mot. Dismiss, Dkt. 64). As a general matter, however, dismissal

under the *Anderson/Burdick* framework is rarely appropriate at the 12(b)(6) stage. That framework requires balancing the "character and magnitude" of Plaintiffs' injury against the "the precise interests put forward by the State as justifications" for the rule. *Anderson*, 460 U.S. at 789. That level of factual balancing is particularly difficult in a 12(b)(6) motion, where the Court must view facts in the light most favorable to Plaintiffs and limit its consideration to the four corners of Plaintiffs' complaint. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205; *Villarreal v. Wells Fargo Bank, N.A.*, 814 F.3d 763, 766 (5th Cir. 2016) ("A district court is limited to considering the contents of the pleadings and the attachments thereto when deciding a motion to dismiss under Rule 12(b)(6).").

Perhaps for that reason, Defendants' citations almost exclusively refer to cases that deal with evidentiary challenges to the merits of the case, whether at summary judgment, in a preliminary injunction proceeding, or at trial. (*See* Mot. Dismiss, Dkt. 64).[6] The few cases in the Fifth Circuit to consider 12(b)(6) motions to an *Anderson/Burdick* challenge have all done so in conjunction with a preliminary injunction.[7] Other district courts in this circuit, including this one, have explicitly deferred consideration of plausible ballot challenges on similar grounds. *See Miller v. Doe*, 422 F. Supp. 3d 1176, 1185 (W.D. Tex. 2019); *Veasey v. Perry*, 29 F. Supp. 3d 896, 922 (S.D. Tex. 2014) ("This case is not yet at a posture that sufficiently informs the Court of the character and magnitude

---

[6] *See, e.g.*, *Richardson*, 978 F.3d at 222 (granting stay of preliminary injunction pending appeal); *SAM Party of N.Y. v. Kosinski*, 987 F.3d 267, 277 (2d Cir. 2021) (affirming denial of preliminary injunction); *Kucinich v. Tex. Democratic Party*, 563 F.3d 161, 167–68 (5th Cir. 2009) (bench trial); *Kirk*, 84 F.3d at 184–87 (summary judgment); *Crawford v. Marion Cnty. Elec. Bd.*, 553 U.S. 181 (summary judgment).

[7] *Lewis v. Hughs*, 475 F. Supp. 3d 597 (W.D. Tex. 2020) (denying 12(b)(6) motion along with preliminary injunction), *aff'd and remanded*, No. 20-50654, 2020 WL 5511881 (5th Cir. Sept. 4, 2020), *order withdrawn*, No. 20-50654, 2020 WL 6066178 (5th Cir. Oct. 2, 2020), *rev'd and remanded sub nom. Lewis v. Scott*, 28 F.4th 659 (5th Cir. 2022) (dismissing for lack of jurisdiction under *Ex parte Young*); *Tex. All. for Retired Americans v. Hughs*, 489 F. Supp. 3d 667 (S.D. Tex. 2020) (denying all 12(b)(6) as to voting challenge), *rev'd in part, vacated in part sub nom. Tex. All. for Retired Americans v. Scott*, 28 F.4th 669 (5th Cir. 2022) (reversing for lack of jurisdiction under *Ex parte Young*); *Tex. Democratic Party v. Scott*, 617 F. Supp. 3d 598 (W.D. Tex. 2022) (granting dismissal following remand of preliminary injunction), *aff'd sub nom. Cascino v. Nelson*, No. 22-50748, 2023 WL 5769414 (5th Cir. Sept. 6, 2023), *cert. denied*, No. 23-612, 2024 WL 1706020 (U.S. Apr. 22, 2024). One district court granted dismissal pursuant to Rule 12(b)(6), but did so on the basis that the Fifth Circuit had affirmed the constitutionality of identical provisions. *Faas v. Cascos*, 225 F. Supp. 3d 604, 612–13 (S.D. Tex. 2016).

of the asserted injury. Thus no decision may be made at this juncture regarding the level of scrutiny to be afforded to [the challenged] restrictions.").

Like the courts in *Veasey* and *Miller*, this Court is not yet in a position to fairly evaluate the burdens and justifications of the challenged provisions. The only uncontested issue is that Section 181.033 is nondiscriminatory because the Texas Election Code applies the same deadlines and filing fee requirement to all parties. Tex. Elec. Code § 172.023(a) (setting deadline for primary party candidates); *id.* at § 181.033 (setting same deadline for all other candidates). Beyond that element, however, the parties raise factual disputes. Plaintiffs allege that Section 181.033 lacks any justification while Defendants allege that it furthers the State's interest in preventing an overcrowded ballot. (*Compare* 4th Am. Compl., Dkt. 61, at 20 ("Those burdens are not justified by any rational basis or reasonable relationship to the State's interests."), *with* Mot. Dismiss, Dkt. 64, at 6 ("The challenged deadline advances Defendants' legitimate interests in . . . ensuring that the candidates demonstrate sufficient public support to gain access to the convention.")).

As this remains a 12(b)(6) motion, all plausible inferences must be drawn in favor of Plaintiffs. *In re Katrina Canal Breaches Litig.*, 495 F.3d at 205. Plaintiffs have alleged that the early filing fee deadline burdens their ability to freely associate and is not justified by any policy goals. (4th Am. Compl., Dkt. 61). It is plausible that a deadline of the second Wednesday in December before the election year unconstitutionally burdens Plaintiffs without advancing the State's purported interests. The Court is cognizant that it should "[give] little weight to the interest the candidate and his supports may have in making a late rather than an early decision to seek independent ballot status." *Burdick*, 504 U.S. at 437 (citing *Storer v. Brown*, 415 U.S. 724, 736 (1974)). Still, that burden is entitled to *some* weight, and the Court cannot say that the burden is so marginal that it is constitutionally irrelevant as a matter of law. The Court must accept at this stage that the burdens are as severe as Plaintiffs claim and cannot yet decisively evaluate the evidentiary connection between that burden

and advancement of the State's goals. Because Section 181.033 plausibly sets the filing fee deadline unconstitutionally early, the Court will deny the 12(b)(6) motion.

### D. Challenge to Texas's Filing Fee Structure

1. The *Anderson/Burdick* Framework Applies

Plaintiffs also bring a Fourteenth Amendment claim against Texas's filing fee structure. In Texas, primary party candidates pay their filing fees to their party, which then uses those fees to reimburse the costs incurred in the primary election. *See* Tex. Elec. Code §§ 173.033–.034. By contrast, third-party candidates pay their filing fees to the state or county, who keep the fees. Third parties must then fund their own conventions, without any rebate from their filing fees. Tex. Elec. Code § 181.0311. Plaintiffs allege that this unequal structure places a heightened burden on third parties and violates the Due Process and Equal Protection Clauses of the U.S. Constitution. (4th Am. Compl., Dkt. 61, at 16). Plaintiffs do not allege that this fee structure violates their freedom of association. (*See id.*).

Plaintiffs' heading references both due process and equal protection, but the body of their complaint appears to only mention equal protection. The result is that Defendants solely move to dismiss the equal protection claim on the basis that the parties are not similarly situated, and therefore cannot claim an equal protection violation. (Mot. Dismiss, Dkt. 64, at 8 ("Plaintiffs cannot establish an equal protection violation without first establishing that they are similarly situated to the primary parties or their candidates.")).

As the Fifth Circuit has stated, *Anderson* and *Burdick* "based their approach 'on the fundamental rights strand of equal protection analysis.'" *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 233 (5th Cir. 2020) (quoting *Anderson*, 460 U.S. at 787). Claims under the Fourteenth Amendment relating to ballot access, then, fall under the specific *Anderson/Burdick* framework rather than a more generalized equal protection analysis. *See id.* at 233–34 ("For several reasons, the *Anderson/Burdick*

13

framework provides the appropriate test for the plaintiffs' due process claims."); *id.* at 234 ("[O]ur sister circuits . . . apply *Anderson/Burdick* to all Fourteenth Amendment challenges to election laws."). Plaintiffs do not challenge just their alleged differential treatment, but also the restriction on their fundamental rights to vote and run for office, and that Fourteenth Amendment challenge must be analyzed under the *Anderson/Burdick* test. *See id.*; *Obama for America v. Husted*, 697 F.3d 423, 429–30 (6th Cir. 2012) ("However, when a state regulation is found to treat voters differently in a way that burdens the fundamental right to vote, the *Anderson/Burdick* standard applies."). Accordingly, the *Anderson/Burdick* framework applies to Plaintiffs' Fourteenth Amendment challenge, and the Court will not dismiss Plaintiffs' claims on the basis that third parties are not similarly situated to primary parties.

2. The Filing Fee Structure Plausibly Fails the *Anderson/Burdick* Test

Finding that the *Anderson/Burdick* test applies, the Court turns to the merits of Defendants' arguments. (*See* Mot. Dismiss, Dkt. 64, at 10 ("[T]he challenged provisions pass the *Anderson/Burdick* test because they are reasonable, nondiscriminatory, and advance legitimate government interests.")). Here, Section 181.031 is likely discriminatory compared to Section 172.021. *See* Tex. Elec. Code §§ 171.021, 181.031. The Texas Election Code allows primary parties to use their fees to offset the cost of hosting a primary, while third parties must pay the filing fee and the full cost of their nominating convention. *Id.* This is differential treatment: Texas is potentially requiring third-party candidates to pay more to run for office than primary candidates. It is also plausible that the regulation is unreasonable, as it appears to lessen the financial burden of candidacy for primary party candidates but not for third parties.

Defendants raise plausible defenses, suggesting the different filing fee structures are reasonable and advance an important state interest because primaries are more costly than conventions. (Defs.' Reply, Dkt. 68, at 8 ("Candidates running for office participate in publicly

14

funded elections and their collected filing fees help prevent overcrowding on ballots from nonserious candidates and further the State's interest in providing funding to political parties in corresponding relation to their demonstrated level of public support.")). Again, those factual defenses are premature because they rest on an evaluation of the parties' competing evidence, not on the plausibility of Plaintiffs' claims. It is a reasonable possibility that, by providing filing fee rebates to primary parties but not to third parties, Texas's election code imposes a significant burden on the cost of third-party nominations. Similarly, it is a reasonable possibility that this filing fee structure does little to advance Texas's interest in preventing ballot overcrowding or ensuring public support. Under the fact-intensive *Anderson/Burdick* inquiry, it is plausible that Section 181.031 does not pass constitutional muster.

Defendants raise two final arguments. First, they argue that Plaintiffs ignore "that they could receive the reimbursements they claim they are denied if they obtained sufficient support" to become a primary party. (Mot. Dismiss, Dkt. 64, at 8 (citing *Jenness v. Fortson*, 403 U.S. 431, 441–42 (1971))). However, Texas law determines primary or third-party status based on the results of the prior election. Tex. Elec. Code § 172.002. As Plaintiffs have not yet achieved the requisite threshold to become a primary party, their claims are not yet moot. Defendants are correct that a state may impose certain additional burdens on third parties without automatically violating the Constitution. *See Jenness*, 403 U.S. at 441. Still, Defendants must show that those additional burdens are constitutional under the *Anderson/Burdick* test. The mere fact that a state is given some leeway in regulating third parties does not automatically render all burdens placed upon them reasonable.

Last, Defendants contend that "requiring Plaintiffs . . . to conduct statewide, expensive primary elections would likely run afoul of the ballot-access standards established by the [United States] Supreme Court that prohibit States from requiring third parties to establish the same

15

elaborate party machinery required of primary parties." (Mot. Dismiss, Dkt. 64, at 9). Here, Plaintiffs do not ask the Court to order Texas to require primary elections for third parties. (*See* 4th Am. Compl., Dkt. 61). Rather, Plaintiffs seek a declaration that certain burdens placed on their nominating conventions are unconstitutional. (*See id.*). Accordingly, there is no risk that Plaintiffs' claims will unconstitutionally require them to participate in primary elections.

## IV. CONCLUSION

For these reasons, **IT IS ORDERED** that Defendants' Motion to Dismiss, (Dkt. 64), is **GRANTED IN PART** and **DENIED IN PART**. Specifically, the Court **GRANTS** Defendants' motion to dismiss Plaintiffs' claim for monetary damages. Further, to the extent Plaintiffs plead a Procedural Due Process claim, that claim is **WITHDRAWN**, and Defendants' motion to dismiss those claims is **MOOT**. The motion to dismiss is **DENIED** as to all other claims.

**IT IS FURTHER ORDERED** that Plaintiff Desarae Lindsey is **TERMINATED** as a party in this case.

**SIGNED** on June 5, 2024.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE