# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the Libertarian Party of Texas; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS, and LIBERTARIAN PARTY OF TEXAS, | § § § § § § | |
| *Plaintiffs,* | § | CIVIL ACTION NO. 1:21-cv-01089-RP |
| v. | § | |
| JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and DAVE NELSON, in his official capacity as the Deputy Secretary of State of the State of Texas, | § § § § § | |
| *Defendants.* | § | |

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................... iii

Introduction ........................................................................................................................ 1

Background .......................................................................................................................... 1

   I.    Texas's multiparty system and requirements for candidacy. ........................................ 1

   II.   The Libertarian Party's conventions ...................................................................... 2

   III.  The Major Parties' primary elections ...................................................................... 4

   IV.  Plaintiffs file a lawsuit seeking to invalidate certain provisions of the Election Code related to ballot access. .................................................................................... 5

Legal Standard ................................................................................................................... 5

   I.    Summary Judgment Standard ............................................................................... 5

   II.   The Anderson/Burdick Standard .......................................................................... 6

Argument ............................................................................................................................ 6

   I.    Defendants have not violated Plaintiffs' right to freedom of association by requiring that third parties submit filing fees with their application. .......................... 7

      A.  The timing of the filing fee requirement does not burden Plaintiffs' right to freedom of association. ............................................................................. 7

      B.  Even if the filing fee requirement burdens Plaintiff's associational rights, such a burden is minimal, nondiscriminatory and reasonable. .............................. 8

   II.   The requirement that filing fees be paid to the Secretary of State or County Judge, as opposed to state or local party chairs, does not violate the Equal Protection Clause. .................................................................................................................... 10

      A.  Individual Minor Party candidates do not face unequal treatment, and their Fourteenth Amendment claims fails outright. ...................................... 12

      B.  The LPT is not similarly situated to Major Parties thus rendering their equal protection claim dead on arrival. ............................................................. 13

      C.  Payment of filing fees to the Secretary of State and the counties does not impose a significant burden on Plaintiffs. ............................................... 15

   III.  The challenged statutes further important State interests. .................................... 18

Conclusion and Prayer .................................................................................................... 20

Certificate of Service ...................................................................................................... 21

## TABLE OF AUTHORITIES

**Cases**

*Am. Party of Tex. v. White*,
   415 U.S. 767 (1974) ................................................................................................ 14

*Anderson v. Celebrezze*,
   460 U.S. 780 (1983) ........................................................................................ passim

*Beeler v. Rounsavall*,
   328 F.3d 813 (5th Cir. 2003) .............................................................................. 12

*Big Tyme Invs., L.L.C. v. Edwards*,
   985 F.3d 456 (5th Cir. 2021) .............................................................................. 14

*Boudreaux v. Swift Transp. Co.*,
   402 F.3d 536 (5th Cir. 2005) ................................................................................ 5

*Bullock v. Carter*,
   405 U.S. 134 (1972) .............................................................................................. 19

*Burdick v. Takushi*,
   504 U.S. 428 (1992) ........................................................................................ passim

*Crawford v. Marion Cty. Election Bd.*,
   553 U.S. 181 (2008) (Scalia, J., concurring) .............................................. 12, 20

*Duffie v. United States*,
   600 F.3d 362 (5th Cir. 2010) ................................................................................ 5

*Faas v. Cascos*,
   225 F. Supp. 3d 604 (S.D. Tex. 2016) ............................................................. 12

*Hunt v. Cromartie*,
   526 U.S. 541 (1999) ................................................................................................ 5

*Ill. State Bd. of Elections v. Socialist Workers Party*,
   440 U.S. 173 (1979) (Stevens, J., concurring) ............................................... 19

*In re Tex. House Republican Caucus PAC*,
   630 S.W.3d 28 (Tex. 2020) .................................................................................. 14

*Jenness v. Fortson*,
   403 U.S. 431 (1971) .............................................................................................. 18

*Johnson v. Rodriguez*,
   110 F.3d 299 (5th Cir. 1997) .............................................................................. 14

*Kucinich v. Tex. Democratic Party*,
   563 F.3d 161 (5th Cir. 2009) .............................................................................. 14

*Lubin v. Panish,*
    415 U.S. 709 (1974) .................................................................................................... 18, 19

*Meyer v. Texas,*
    Civ. No. H-10-3860, 2011 WL 1806524 (S. D. Tex. May 11, 2011) ...................................... 6, 14

*Miller v. Nelson,*
    116 F.4th 373 (5th Cir. 2024) ............................................................................................ passim

*Munro v. Socialist Workers Party,*
    479 U.S. 189 (1986) ....................................................................................................... 18

*Nader v. Connor,*
    332 F. Supp. 2d 982 (W.D. Tex. 2004), *aff'd*, 388 F.3d 137 (5th Cir. 2004) ...................... 14, 18

*Obama for Am. v. Husted,*
    697 F.3d 423 (6th Cir. 2012) ........................................................................................... 12

*Richardson v. Tex. Sec'y of State,*
    978 F.3d 220 (5th Cir. 2020) ......................................................................................... 6, 18

*Ross v. Moffitt,*
    417 U.S. 600 (1974) ....................................................................................................... 12

*Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.,*
    547 U.S. 47 (2006) .......................................................................................................... 8

*Tex. Ent. Ass'n, Inc. v. Hegar,*
    10 F.4th 495 (5th Cir. 2021) ......................................................................................... 14, 15

*Tex. Indep. Party v. Kirk,*
    84 F.3d 178 (5th Cir. 1996) ............................................................................................ 6, 11

*Tex. League of United Latin Am. Citizens v. Hughs,*
    978 F.3d 136 (5th Cir. 2020) ........................................................................................... 12

*Voting for Am., Inc. v. Steen,*
    732 F.3d 382 (5th Cir. 2013) ............................................................................................ 8

*Wilson v. Birnberg,*
    667 F.3d 591 (5th Cir. 2012) ........................................................................................... 14

**Statutes**

1 Tex. Admin. Code § 81.109 (2017)
    (Sec'y of State, Costs not Payable with Primary Funds) ....................................................... 17

Fed. R. Civ. P. 56(a) .......................................................................................................... 5

Tex. Elec. Code § 141.001 ................................................................................................. 2

Tex. Elec. Code § 141.003 ................................................................................................. 2

Tex. Elec. Code § 141.031 ................................................................. 2, 7, 10

Tex. Elec. Code § 141.032(c) ................................................................. 10

Tex. Elec. Code § 142.032(a) ................................................................. 10

Tex. Elec. Code § 145.003(b)(3) ............................................................ 13

Tex. Elec. Code § 145.003(f)(3) ............................................................. 13

Tex. Elec. Code § 161.008 ...................................................................... 2

Tex. Elec. Code § 172.001 ...................................................................... 1

Tex. Elec. Code § 172.002 ...................................................................... 1

Tex. Elec. Code § 172.021 ................................................................... 2, 9

Tex. Elec. Code § 172.021(b) ................................................................ 13

Tex. Elec. Code § 172.022 .................................................................. 2, 13

Tex. Elec. Code § 172.023 ................................................................... 2, 9

Tex. Elec. Code § 172.024 ............................................................... 2, 9, 13

Tex. Elec. Code § 172.116 ...................................................................... 2

Tex. Elec. Code § 172.117 ...................................................................... 2

Tex. Elec. Code § 172.120 ...................................................................... 2

Tex. Elec. Code § 172.122 ...................................................................... 2

Tex. Elec. Code § 173.001 ............................................................ 4, 16, 17

Tex. Elec. Code § 173.032 .................................................................... 15

Tex. Elec. Code § 173.033 .................................................................... 15

Tex. Elec. Code § 173.061 ...................................................................... 2

Tex. Elec. Code § 173.062 ...................................................................... 2

Tex. Elec. Code § 173.063 ...................................................................... 2

Tex. Elec. Code § 181.002 ...................................................................... 1

Tex. Elec. Code § 181.031 .............................................................. passim

Tex. Elec. Code § 181.0311 ............................................................ passim

Tex. Elec. Code § 181.0311(a) ............................................................ 2, 13

Tex. Elec. Code § 181.0311(b) ............................................................... 9

Tex. Elec. Code § 181.032 ................................................................... 2, 9

Tex. Elec. Code § 181.033(a) ...................................................................... 10

Tex. Elec. Code. § 181.005 ............................................................................ 2

**Rules & Regulations**

1 Tex. Admin. Code § 81.109 (2017)
    (Sec'y of State, Costs not Payable with Primary Funds) ........................... 4

**Other Authorities**

*Platform of the Libertarian Party of Texas*, https://www.lptexas.org/platform#election-
    reform ........................................................................................................ 1

*Texas Election Results*, https://results.texas-election.com/races ................................... 14

## INTRODUCTION

Plaintiffs, the Libertarian Party of Texas (LPT) and members thereof, (collectively Plaintiffs) sued Secretary Nelson and Deputy Secretary Nelson in their official capacities challenging, among other things, a relatively benign state election statute that requires that LPT candidates either pay a filing fee or valid petition to be considered for nomination for the general election ballot. Contrary to their pleas, however, the relevant portions of the Texas Election Code do not violate either the First or Fourteenth Amendments.

Plaintiffs' goal is simple—they seek to "[do] away with a two-party duopoly" because they believe "that party primaries are not a function of the state, and rather are processes which should be self-funded." *Platform of the Libertarian Party of Texas*, https://www.lptexas.org/platform#election-reform (last visited Apr. 16, 2025). And while this may be their preferred method of governing elections, the ends Plaintiffs seek should be achieved through legislative means and not through the judicial system. The Court should deny Plaintiffs' claims, and grant summary judgment in favor of Defendants.

## BACKGROUND

### I.  Texas's multiparty system and requirements for candidacy.

Texas employs a multiparty election system that affords almost anybody who seeks political office the opportunity to secure a place on the ballot. If a party's nominee for governor in the most recent gubernatorial election received at least twenty percent of the votes in that election, the party is considered to be a Major Party and must nominate its candidates via primary election. Tex. Elec. Code § 172.001. A Minor Party, by contrast, *may* nominate its candidates via primary election or by convention if its nominee for governor in the most recent gubernatorial election received at least two percent but less than twenty percent of the votes in that election, *id.* §§ 172.002, 181.002; a Minor Party must nominate its candidates by convention if it is not required or authorized to make nominations by primary election, *id.* § 181.003. A Minor Party is entitled to have a candidate placed on a ballot for general election if (among other instances), within the last five general elections, at

least one of its statewide candidates received votes equal to at least two percent of the total number of votes received by all candidates for that office. *See id.* § 181.005(c).

The Texas Election Code prescribes a set of procedures for both Major Party candidates and Minor Party candidates to be placed on a general election ballot. At the outset, each candidate must meet the general eligibility requirements to run for office. *See id.* §§ 141.001, .003. A Major Party candidate must then submit an application to the proper election authority and submit with that application either a filing fee or a valid petition. *Id.* §§ 172.021–172.024. Any filing fees paid by Major Party candidates are paid to either the state or county party chair, depending on whether the office the candidate is seeking is state or county level, and are used to pay expenses incurred by the chairs in connection with the Major Party's primary election. *See, e.g.*, *id.* §§ 172.022, 173.061–173.063.The winners of each primary election are then placed on the applicable general election ballot. *Id.* §§ 161.008, 172.116, 172.117(a), 172.120(a), (h), 172.122.

Similarly, a Minor Party candidate must also submit an application with a state or county chair. *Id.* §§ 141.031, 181.031(a), 181.032. The candidate also must pay a filing fee or submit a valid petition. *Id.* § 181.0311(a). The *only* difference between the requirements for Major Party candidates and those for Minor Party candidates is that the latter must submit their filing fee or petition "to the secretary of state for a statewide or district office or the county judge for a county or precinct office[.]" *Id.* § 181.0311(a). When a Minor Party pays a filing fee to the Secretary of State, that money is deposited in the State treasury to the credit of the general election fund, while fees paid to the county judge are deposited into the county treasury to the credit of the county general fund. *Id.* §§ 181.0311(c)–(d).

## II.    The Libertarian Party's conventions

The LPT has held state conventions in each of the last three election years—2020, 2022, and 2024. App'x at 8–10, 201. In all three years, section 181.0311's filing fee requirement applied to LPT candidates.

The LPT's conventions serve two roles. They comply with the Election Code's directive to Minor Parties to nominate by convention, but they also serve as opportunities for LPT supporters to socialize, network, and recreate. App′x at 74. The LPT's conventions last three days, App′x at 56, and his time is split between the business of nominating candidates and handling internal party affairs and numerous non-electoral activities.

The business side of LPT conventions, nominating LPT candidates, is conducted by floor vote where between a pre-selected number of delegates choose candidates for state-level races. App′x at 40–42. In the past three years, the floor vote has been mediated by voting software and moderated by a paid parliamentarian. App′x at 61. In 2020, LPT delegates considered 74 candidates and 50 candidates in each of 2022 and 2024. App′x at 242. Immediately after choosing candidates for public office, LPT delegates select party officers, and the LPT conducts internal party business, such as amending the LPT's bylaws. App'x at 48–49, 62–63,

After official business is finished, LPT conventions appear to be a fun time filled with socials and lunches aplenty. Each year's convention has culminated in a fundraising gala, and convention-goers are treated to a panoply of pay-to-attend events. *See e.g.*, App′x at 56, 73, 78. Some of these peripheral events have political substance; for example, the 2020 convention included a debate between two Libertarian candidates for president. App′x at 60. But others like the gala appear not to. This non-electoral side of LPT conventions is akin to the myriad social and networking events held at the partisan conventions of Major Parties. In short, LPT conventions have two unrelated components, the legally mandated nominating process and the entirely voluntary slate of social activities.

These conventions are money makers. The LPT testified that each of the last three conventions generated positive net revenue from ticket sales and donations. App′x at 69, 88, 104–06. Surplus revenue is kept by the Party and saved to pay for future conventions and events. App′x at 70–71. Put another way, LPT's state conventions are self-funding and then some. Indeed, the LPT's current Chair testified that "we want the convention to pay for itself," commented that the Party had been successful at generating net revenue thus far, and anticipated continued success. App'x

at 104–06. Convention costs stem almost entirely from the many social and other events peripheral to the nominating process. App'x at 8–9, 10, 218–19. For example, food and beverage costs totaled around $45,000 for the 2024 convention, more than half of the total. App'x at 10.

To pay for these extracurriculars, as well as the modest costs of nomination, LPT charges for admission to its lunches, dinners and parties. App'x 58, 74–76. In the last three years respectively the LPT raised $130,185, $89,466, and $55,466 in gross revenue, netting $58,251, $35,744, $37461 in the same years.[1] App'x at 8–9, 10, 218–19. Some convention-goers pay to be "VIPs" and receive extra perks such as access to an exclusive lounge and gift bags. App'x at 56, 65. The LPT does not charge anyone to attend or participate in nominating candidates or the other official party business it conducts during its state conventions. App'x at 67. Accordingly, the expenses that are incurred strictly from nominating candidates are covered by the revenues collected from ticket sales and donations raised during the convention.

## III. The Major Parties' primary elections

The simplicity of nominating by conventions contrasts starkly with the onerous process entailed by a primary election. Millions of voters participate in primary elections. The magnitude of that engagement means the scope and size of primary races for state-level offices is roughly the same as for the general election. Voting infrastructure must be set up in every county and nearly every precinct across the State. The Major Parties must facilitate this immense logistical undertaking, and the costs they incur doing so consistently run into the millions. In 2022, election-related primary expenses for the GOP primary election amounted to $12,749,049 and for the Democratic party those costs totaled $10,901,671. App'x at 237–38. And though Texas law allows for reimbursement of some expenses, those expenses are limited to legitimate costs of running the primary elections. *See* Tex. Elec. Code § 173.001; 1 Tex. Admin. Code § 81.109 (2017) (Sec'y of State, Costs not Payable with Primary Funds).

---

[1] Rounded down to the nearest dollar.

## IV. **Plaintiffs file a lawsuit seeking to invalidate certain provisions of the Election Code related to ballot access.**

Presumably upset by the requirement that LPT candidates show a modicum of support to be placed on the general election ballot Plaintiffs filed this suit challenging the constitutionality of several portions of the Election Code. *See, e.g.*, Dkt. 1, 61. Relevant here, the LPT maintains two[2] claims: (1) that the requirement that their candidates' filing fees be paid or petitions be submitted prior to a candidate being considered for nomination, as required by section 181.0311 violates their First Amendment right to free association; and (2) that the requirement that Minor Parties pay their filing fees to the State or county while Major Parties pay filing fees to party chairs to offset primary election costs violates their Fourteenth Amendment right to equal protection under the law. As discussed below, neither of these challenges passes muster, and the Court must grant summary judgment for Defendants.

### Legal Standard

### I. **Summary Judgment Standard**

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th Cir. 2010). The movant "must demonstrate the absence of a genuine issue of material fact," but does not have "to negate the elements of the nonmovant's case." *Id.*; *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005).

---

[2] This Court previously struck down Plaintiffs' claim that the challenged statutes violate their First Amendment right to freedom of speech, Dkt. 71 at 8–9, and Plaintiffs have dropped their claim that the relevant Election Code provisions violate their right to due process, Dkt. 71 at 16.

## II.    The Anderson/Burdick Standard

"Voting is of the most fundamental significance in our constitutional system." *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (citing *Burdick v. Takushi*, 504 U.S. 428, 433 (1992)). The right to "vote in any manner and the right to associate for political purposes through the ballot," however, are "not absolute." *Id.* States have substantial authority to regulate elections "to ensure fairness, honesty, and order." *Id.* (citing *Anderson v. Celebrezze*, 460 U.S. 780, 788 (1983)). One way Texas has exercised that authority is by enacting ballot-access laws, including the ones Plaintiffs challenge here.

"In the Fifth Circuit, the proper test for [evaluating] the constitutionality of" ballot-access laws "is the *Anderson/Burdick* Test." *Meyer v. Texas*, Civ. No. H-10-3860, 2011 WL 1806524, at *3 (S. D. Tex. May 11, 2011) (citations omitted); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 233–34 (5th Cir. 2020). Under *Anderson/Burdick*, "[a] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Kirk*, 84 F.3d at 182 (citing *Burdick v. Takushi*, 504 U.S. at 434; *Anderson*, 460 U.S. at 789).

"The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Id.* (citing *Burdick*, 504 U.S. at 434). "If a court deems a voting law to be a 'severe' burden on the rights of voters, 'the regulation must be narrowly drawn to advance a state interest of compelling importance.'" *Richardson,* 978 F.3d at 233 n.26 (quoting *Burdick*, 504 U.S. at 434). "Conversely, if a court deems a voting law to be a 'reasonable, nondiscriminatory restriction[ ]' on the rights of voters, 'the State's important regulatory interests are generally sufficient to justify the restrictions.'" *Id.*

## ARGUMENT

The challenged Election Code provisions do not impose any burden on the Plaintiffs. Plaintiffs are free to associate in any way they wish, and to gather and discuss issues and candidates as

they see fit. Moreover, under the current filing fee or petition scheme, LPT candidates do not receive disparate treatment, and the LPT is not similarly situated to Major parties. Plaintiffs' claims are therefore dead on arrival.

But even if the challenged sections impose some sort of burden on either of the Plaintiffs' applicable rights, such burden is small, reasonable, and nondiscriminatory, thus paling in comparison to the important State interests that these provisions further.

## I.    Defendants have not violated Plaintiffs' right to freedom of association by requiring that third parties submit filing fees with their application.

Plaintiffs first take issue with the requirement that Minor Party candidates must submit an application, along with a filing fee or petition, to be considered for nomination at their party convention. Dkt. 61 at 18–20; *see also* Tex. Elec. Code § 181.0311. They argue that this requirement violates their first amendment right to freedom of association because it "effectively makes payment of the filing fee or submission of signed petitions a prerequisite for a Qualified Convention Party to even think about, much less debate, the merits of an individual candidate for nomination for a particular office at convention." Dkt. 61 at ¶ 23. For the reasons discussed below, however, this claim does not pass muster under the *Anderson/Burdick* framework.

### A.    *The timing of the filing fee requirement does not burden Plaintiffs' right to freedom of association.*

To begin, section 181.0311 does not burden Plaintiffs' right to freedom of association. *See Anderson,* 460 U.S. at 789 (1983) (looking to the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate."); *see also Burdick,* 504 U.S. at 434 (1992). Section 181.0311, and Chapter 181 of the Election Code more generally, lay out the requirements for a candidate to be eligible for nomination by convention. *See* Tex. Elec. Code §§ 181.031, .0311. To be eligible for nomination, a third-party candidate must, *inter alia*, submit an application in compliance with the election code, *see* Tex. Elec. Code §§ 141.031, 181.031, and either pay a filing fee or submit a petition. *Id.* § 181.0311.

7

In reality, Chapter 181 does not burden Plaintiffs' associational rights and, even if it did, such burden is minimal compared to the government interest forwarded by Chapter 181. At the outset, Chapter 181 prescribes the requirements for candidacy as a Minor Party candidate, among which is the requirement that a candidate either pay a filing fee or submit a petition. *See* Tex. Elec. Code §§ 181.031, .0311. The language "[i]n addition to any other requirements" alerts a reasonable reader that this statute gives the requirements for candidacy. *Id.* § 181.0311. The word "considered" in this context simply means that a candidate is not entitled to stand for nomination by a party unless the candidate first meets the filing-fee/petition requirement. It does not, as Plaintiffs seem to suggest, prevent LPT from nominating a candidate who satisfies the otherwise content-neutral requirements of section 181.0311. *See id.*

Moreover, the First Amendment protects only "inherently expressive" conduct. *Rumsfeld v. Forum for Acad. & Institutional Rights, Inc.*, 547 U.S. 47, 66 (2006); *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 388 (5th Cir. 2013). And Chapter 181 does not limit LPT's expressive conduct in any way. In fact, it is content-neutral. *See* Tex. Elec. Code § 181.0311. Neither section 181.0311 nor any other portion of Chapter 181 place any restriction on the LPT's ability to gather and discuss issues or candidates. These provisions do not exclude candidates from the ballot; rather, they merely prescribe baseline requirements for candidates to be eligible for the general election ballot through the convention nomination process.

**B. *Even if the filing fee requirement burdens Plaintiff's associational rights, such a burden is minimal, nondiscriminatory and reasonable.***

Nonetheless, while the exclusion of candidates from a ballot can constitute a burden on an individual's freedom of association, *Anderson*, 460 U.S. at 787, "'reasonable, nondiscriminatory restrictions' are subject to less exacting review[.]" *Miller v. Nelson*, 116 F.4th 373, 380 (5th Cir. 2024) (quoting *Burdick*, 504 U.S. at 434). And so, to the extent the Court finds that section 181.0311 "excludes" individuals from the general election ballot and burdens Plaintiffs' associational rights, such burden is minimal. Here, Plaintiffs specifically challenge *when* a filing fee must be paid or a petition filed as the burden on their right to free association. *See* Dkt. 61 at 15 ("Although the state

has an interest in reducing ballot overcrowding and limiting frivolous candidates on an election ballot, it has no similar interest in determining what a political party—any political party—can or cannot consider or discuss at their conventions."). Put succinctly, Plaintiffs bemoan that a candidate cannot be considered at convention for a place on the general election ballot absent a valid application, accompanied by a filing fee or petition. *Id.*

*First*, if this were a burden, such a burden would be identical to one faced by the Major Parties, which require a filing fee or petition to be considered in the Major Parties' respective primary elections. All candidates who run for political office as a party's nominee through the State's current structure must submit an application and satisfy other preliminary requirements to be considered by that party for nomination. Tex. Elec. Code §§ 172.021–.024 (Major Parties); 181.031–.032 (Minor Parties). And the deadline for Minor Party candidates is the same as for Major Party candidates. *See id.* §§ 172.023, 181.033.

*Second*, Plaintiffs' evidence of their alleged burden is scant. Historical evidence shows that LPT candidates have had consistent access to the ballot for years. *Miller*, 116 F.4th at 381. And for the past four statewide elections, LPT has admitted that it has fielded at least fifty candidates across the state for races that require the candidate to pay either a filing fee or a submit a petition. In the 2018 and 2020 general elections, LPT nominated seventy-five and seventy-four candidates respectively, and it fielded fifty candidates in both the 2022 and 2024 elections. *See* App'x at 242. The rather mild requirements of Chapter 181 notwithstanding, LPT has still been able to nominate candidates throughout the state, given the size of the party.

*Third*, the filing fees required by the Election Code are not overly burdensome. Depending on the office sought, filing fees run from $75.00 (for county surveyor) up to $5,0000.00 (for President). *See* Tex. Elec. Code § 172.024; *see also id.* § 181.0311(b). The burden of paying such a fee is both reasonable and nondiscriminatory. *See Burdick*, 504 U.S. at 434. Indeed, the more expansive and consequential the election, the greater the filing fee—thus requiring candidates to show that they have a vested interest in their campaign. For example, if an individual cannot pay a $5,000 filing fee to run for President as the Libertarian Candidate, that individual cannot conceivably run

a statewide, much less a nationwide, campaign for the Nation's highest office. In this case, the candidate's name would likely be nothing more than another name crowding the ballot.

Importantly, if a candidate wishes to be the nominee for a Minor Party, that candidate must comply with all requirements for eligibility. And to be the nominee for a Minor Party, a candidate must be nominated by convention. Tex. Elec. Code § 181.003. One requirement for nomination by convention is, *inter alia*, that a candidate pay a filing fee or submit a petition in lieu of a filing fee. And reading the relevant portions of the Election Code as a whole, of these requirements constitutes one to appear on the general election ballot. To illustrate, if an individual seeks nomination as a Minor Party candidate, that candidate must submit an application for nomination by convention, at which they seek to be selected for a place on the *general election ballot*. *See* Tex. Elec. Code §§ 141.031, 181.031. That application must be accompanied by either a filing fee or valid petition. *See id.* § 181.0311. The candidate must file his or her application "not later than the regular deadline for candidates to file applications for a place on the general primary ballot." *Id.* § 181.033(a).

The relevant election authority is then *required* to review the application for compliance with applicable law. *Id.* § 142.032(a). This review includes verifying the validity of any petition. *Id.* § 141.032(c). A plain reading of the Election Code necessitates that the filing fee is due at this stage as well, lest a candidate who is unable to pay a filing fee *after* nomination by convention lose an alternate avenue to the general election ballot. *See id.* § 181.0311. In other words, for the process to work in a smooth and efficient manner, the candidates need to satisfy the requirements for access to the general election ballot at the beginning of the process, and not halfway through.

## II. The requirement that filing fees be paid to the Secretary of State or County Judge, as opposed to state or local party chairs, does not violate the Equal Protection Clause.

Plaintiffs also challenge the application of Texas's filing fee requirement as violative of the Fourteenth Amendment's Equal Protection Clause. Dkt. 61 at 20–22. All candidates for public office must pay a filing fee to be eligible for the general ballot regardless of partisanship, so Plaintiffs do not contest the constitutionality of the fee requirement per se. *Id.*, Dkt. 67 at 9 n.6. Instead, they challenge the difference that Section 181.0311 makes as to whom filing fees are paid. Dkt. 61 at 20–

10

22. Major party candidates must pay the requisite filing fees to their party chair, but convention party candidates are required to pay their fees to the Secretary of State or county judge. This situation is unfair, Plaintiffs claim, because it allows primary parties to use fees to offset the costs of their primary elections without allowing convention parties to collect fees for their nominating process. *Id.* at 20.

Those claims notwithstanding, the Fifth Circuit has already decided against the same Equal Protection Clause attack on section 181.0311 in *Miller v. Nelson*. 116 F.4th 373, 382 (5th Cir. 2024). There, the Fifth Circuit concluded that "Section 181.0311" did not "run afoul of the Equal Protection Clause" even though "'[i]t requires that Minor Party candidates pay filing fees identical to those paid by Major Party candidates, but while the Major Parties retain the fees their candidates pay, the State retains the fees that Minor Party candidates pay.'" *Id.* (quoting plaintiffs). In short, *Miller* specifically and pointedly refuted an almost identical argument to the one raised by Plaintiffs here.

This should be definitive, and the Court need go no further than the Fifth Circuit's decision in *Miller* to dismiss Plaintiffs' Fourteenth Amendment equal protection claim. But even apart from that precedent, Plaintiffs cannot prevail in their claim under the Equal Protection Clause. *First*, while both the Libertarian Party and individual Plaintiffs assert the same Equal Protection Clause claim, Section 181.0311 does not treat Minor Party *candidates* any differently than their Major Party counterparts. Both sets of candidates pay the same filing fees at roughly the same time, and the difference in recipient neither injures convention hopefuls nor benefits primary contenders. Individual Plaintiffs do not face differential treatment and accordingly lack a cognizable equal protection claim. *Second*, the enormous difference in cost and logistical demands between primary elections—statewide dress-rehearsals for the general election—and convention nominations—involving a few hundred delegates in one location and lasting a few hours—in turn justifies the difference section 181.0311 sets for payability. States enjoy considerable discretion over how they conduct their elections, *Kirk*, 84 F.3d at 182, and Texas is well within its authority to direct election-related funds to where there is a need for them.

The *Anderson/Burdick* framework applies to "[c]onstitutional challenges to specific provisions of a State's election laws" under the "Fourteenth Amendment[]," *Anderson*, 460 U.S. at 789, including claims brought under the Equal Protection Clause. Dkt. 71 at 13 (citing *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 233 (5th Cir. 2020)).

### A. *Individual Minor Party candidates do not face unequal treatment, and their Fourteenth Amendment claims fails outright.*

Before Plaintiffs' claim can be evaluated under *Anderson/Burdick*'s "two-track approach," *Crawford v. Marion Cty. Election Bd.*, 553 U.S. 181, 205 (2008) (Scalia, J., concurring), Plaintiffs must provide the minimum for a coherent equal protection claim—an injury caused by the unequal application of state law. *See Tex. League of United Latin Am. Citizens v. Hughs*, 978 F.3d 136, 148 (5th Cir. 2020) (reversing lower court's application of *Anderson/Burdick* because it mistook "a uniform rule" for "disparate treatment"); *see also Ross v. Moffitt*, 417 U.S. 600, 609 (1974) (stating "'Equal protection' . . . emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable."). Much like traditional equal protection analysis, *Anderson/Burdick* is only applicable where "a state regulation is found to treat voters differently in a way that burdens the fundamental right to vote." *Obama for Am. v. Husted*, 697 F.3d 423, 430 (6th Cir. 2012); *Anderson*, 460 U.S. at 793–94. This is because "the Equal Protection Clause guarantees that every voter is equal to every other voter in his State," and therefore cannot provide the basis for a claim in the absence of unequal treatment. *Hughs*, 978 F.3d at 148. Where plaintiffs receive the exact same treatment as other regulated individuals, they do not have a viable equal protection claim. *Id.*; *Beeler v. Rounsavall*, 328 F.3d 813, 817–18 (5th Cir. 2003); *Faas v. Cascos*, 225 F. Supp. 3d 604, 612 (S.D. Tex. 2016) (ruling that because ballot restriction requirements were "reasonable and identical" as applied to both minor party and independent candidates they did not violate the Equal Protection Clause).

Section 181.0311 does not burden individuals seeking nomination at a Minor Party's convention any differently than it does a candidate running in a primary. The pocketbook burden is identical; both subsets of candidate pay the same fees and both are free to submit a petition in

lieu of that fee if they obtain the requisite signatures. Tex. Elec. Code §§ 172.021(b), 172.024, 181.0311. And while Plaintiffs complain that the fee deadline poses a detriment to their freedom to associate, Dkt. 61 at 15, by setting the roughly the same deadline for both types of candidates the Election Code guarantees equal treatment amongst and between Major and Minor Party candidates. The only distinction is that section 181.0311 makes is in to whom candidates send their cheques. *Compare* Tex. Elec. Code § 172.022 *with* Tex. Elec. Code § 181.0311(a). But that difference does not affect candidates, leading to the inevitable conclusion that Minor Party candidates are not subject to lesser, unequal treatment under the law.

Plaintiffs have argued that the filing fee requirement has dissuaded several individuals from seeking nomination to the Libertarian ticket, Dkt. 61 at 20 and have pointed to, among other things, Mark Ash's disqualification for failure to pay the fee or submit a qualifying petition. App'x at 246–47. However, Mr. Ash failed to pay the filing fee because he believed it to be an unconstitutional poll tax. App'x at 186–87 (Depo. of Mark Ash). Similarly, other individual Plaintiffs refused to meet the fee requirement for principled objections, *see e.g.*, App'x at 199 (Depo. of Joes Burnes, Mr. Burnes testifying "I have the financial means to pay that filing fee, but I consider it to be extortion."), and no Plaintiff that refused to comply claimed inability to pay as the sole reason for non-payment. App'x at 190–92 (Depo. of Mark Tippetts); App'x at 194–95 (Depo. of Stephanie Berlin). But more significantly, Plaintiffs' allegations do not establish an equal protection violation. Since every office seeker is subject to an identical filing fee requirement, would-be Libertarian Party candidates merely face the same disincentive as everyone else. Likewise, section 145.003(b)(3) authorizes the Secretary to disqualify any individual who does not timely pay, and Plaintiffs have not alleged that the Secretary has pursued this duty selectively against convention party candidates. Tex. Elec. Code § 145.003(b)(3).

## B. *The LPT is not similarly situated to Major Parties thus rendering their equal protection claim dead on arrival.*

Plaintiffs cannot prove a violation of Equal Protection without first establishing that they are similarly situated to the primary parties or their candidates. *See Kucinich v. Tex. Democratic*

*Party*, 563 F.3d 161, 167–68 (5th Cir. 2009) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). "Similarly situated" means "in all relevant respects alike." *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992)); *Big Tyme Invs., L.L.C. v. Edwards*, 985 F.3d 456, 468 (5th Cir. 2021). "[I]f the challenged government action does not appear to classify or distinguish between two or more relevant persons or groups, then the action—even if irrational—does not deny them equal protection of the laws." *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997) (quoting *Brennan v. Stewart*, 834 F.2d 1248, 1257 (5th Cir. 1988)) (internal quotation marks omitted).

And this basic requirement that plaintiffs be similarly situated holds for challenges to ballot regulations that are governed by *Anderson/Burdick*. *See e.g., Nader v. Connor*, 332 F. Supp. 2d 982, 989–92 (W.D. Tex. 2004), *aff'd*, 388 F.3d 137 (5th Cir. 2004); *Kucinich*, 563 F.3d at 167–68; *Wilson v. Birnberg*, 667 F.3d 591, 599 (5th Cir. 2012); Meyer, 2011 WL 1806524, at *5 ("states may reasonably treat party, independent and write-in candidates differently because not all candidates are similarly situated"). Indeed, *Nader* turned on the proposition that "independent and minor political-party candidates are not similarly situated under a state's election laws." 332 F.Supp.2d at 989–90.

LPT is not similarly situated to the Major Parties because it has significantly less support statewide than do the Major Parties. In the 2022 general election, Mark Tippetts, the LPT gubernatorial candidate, earned roughly 82,000 votes or 1.01% of the total votes cast for Governor. *See Texas Election Results*, https://results.texas-election.com/races (last visited April 16, 2025). This is a small share of the votes compared to the Major Party Candidates, who received over 2 million votes each. *Id*. The difference is even more stark in the 2024 Presidential election, where Chase Oliver received only 68,557 votes compared to Donald Trump's 6.3 million in Texas. *Id*.

Because the LPT draws such modest support, they do not need to shoulder the heavy burdens of administering primary elections open to large segments of the voting population. *See Kucinich*, 563 F.3d at 167–68 (5th Cir. 2009); *In re Tex. House Republican Caucus PAC*, 630 S.W.3d 28, 35 n.7 (Tex. 2020); *see also Am. Party of Tex. v. White*, 415 U.S. 767, 781 (1974) (quoting *Ferguson*

*v. Skrupa*, 372 U.S. 726, 732 (1963)). And because they do not incur these larger burdens borne by the Major Parties, they are not "in all relevant respects alike" when challenging the manner in which the State has chosen to disburse candidate filing fees. *Tex. Ent. Ass'n, Inc.*, 10 F.4th at 513 (quoting *Nordlinger*, 505 U.S. at 10). Because the LPT has such little support compared to the two Major Parties, the State cannot plausibly treat it equally in all aspects. It is not similarly situated to its alleged comparators, and the Court's analysis should stop there.

C.  ***Payment of filing fees to the Secretary of State and the counties does not impose a significant burden on Plaintiffs.***

Individual Plaintiffs: Since section 181.0311 requires Minor Party candidates to pay identical filing fees as Major Party candidates, Libertarian candidates are not unequally burdened by Texas's fee structure.

At times, Plaintiffs suggest that Major Party candidates receive their fee payments back, *see e.g.*, Dkt. 61 at 16 ("primary...candidates get a direct public benefit from the filing fees"), but that is inaccurate. Major Parties' use of proceeds from candidate filing fees is tightly cabined to the administration of primary elections, Tex. Elec. Code §§ 173.031–.033, so individual candidates never receive the fees they pay back in the form of rebates or any other direct benefit. Perhaps Plaintiffs mean to characterize the primary election itself as a benefit that primary candidates receive in exchange for their fees, but that is unclear from their complaint. This would be an odd sort of benefit as it would accrue as much to primary losers as to the eventual winners. But arguably all candidates, winners and losers alike, benefit from the opportunity to present themselves for public office, and primary candidates get to have their fees go towards funding that opportunity whereas convention candidates do not. *Cf.* Dkt. 61 at 16.

However, if the opportunity to seek office or party nomination constitutes a benefit, it is a benefit that Libertarian candidates currently receive even though section 181.0311 sends their fees to the State or county. Section 181.0311 has not forced the LPT to turn any candidates away. The LPT has consistently been able to finance its conventions, and by extending the fee requirement to Libertarian candidates the Legislature did not increase the costs of the Party's nominating process.

Accordingly, Libertarian candidates are not deprived of an equal opportunity to stand for election just because their filing fees are payable to the State.

<u>The Libertarian Party:</u> Meanwhile, the burden that the Libertarian Party suffers by not receiving filing fees is far from severe. The costs entailed in nominating convention candidates is small compared to the cost of running primary elections. The Party spent totals of approximately $72,000, $54,000, and $18,000 for its last three conventions respectively. However, most of these amounts were spent on the numerous lunches, socials and other ancillary events that take place during the weekend the Party holds its nominating convention. App'x at 8–10, 218–19. The actual business of nominating candidates was inexpensive. At its 2020 convention, the Party incurred $2,871.39 to pay for an auditorium, voting software, a parliamentarian, and registration and other supplies—these were the only expenses strictly related to the nomination process. App'x at 218–19. The Party's convention expense reports for its 2022 and 2024 conventions do not provide enough budget detail to isolate the nomination-related expenses, but it is nonetheless clear that the bulk of spending in those years was not related to nominating candidates. App'x at 8–10. In all years, the largest single nomination-related expense has been the rent paid to secure a venue. The size of this expense is up to the Party since it varies depending on the venue the Party selects. While the Party needs a venue to host nominations, that venue need only be a location large enough for a convention of approximately 300 people, not a chain luxury hotel.

The expenses that the LPT incurred from its numerous social, networking, and other peripheral events cannot be considered part of the LPT's burden for the Fourteenth Amendment analysis because primary parties are not allowed to use filing fees or other public money to defray the costs of any expenses that are not strictly related to the business of conducting their primary elections. *See* Tex. Elec. Code § 173.001; 1 Tex. Admin. Code § 81.109. Nor can Major Parties use filing fees to fund their partisan conventions. In addition to primary elections, the Election Code requires Major Parties to hold conventions where they formally declare primary winners and choose party chairs. *See* Tex. Elec. Code §§ 174.001–.010. Much like the LPT, Major Parties also use their conventions as a platform for various partisan activities that have no connection to the

State's interest in fair and orderly elections. Filing fee proceeds do not finance any of the primary parties' convention-related expenditures. *See* Tex. Elec. Code § 173.001; 1 Tex. Admin. Code § 81.109. Since primary candidate fees only go towards the costs of nomination, i.e. the cost of conducting primaries, to track comparable burdens, the equal protection analysis must stick to the LPT's nomination-related expenses and exclude from its scope the LPT's extracurricular spending.

Tellingly, the LPT has no trouble funding its conventions, much less the nomination process that takes up a fraction of its convention schedule. The LPT chair testified at deposition that the LPT makes money at its conventions, App'x at 69, 88, 104–06, and his statements are echoed by the Party's bookkeeping. App'x at 8–10, 218–19. Libertarian conventions are well funded because the Party charges admission to the many lunches and social events that it hosts during its convention. For each of the last three election years, proceeds from these ticketed events more than offset the total costs of the Party's nominating process. App'x at 8–10, 218–19. The Party does not require affiliated members to pay dues; the only dues it does collect are solicited as voluntary donations. App'x at 33–36. And notably the Party does not charge anyone to attend or participate in the nominating process. App'x at 67. Accordingly, the Party does not pass on nomination-related costs to its members, convention delegates, or candidates.

Nor has the difference in payee injured the LPT indirectly by reducing its roster of candidates. The "primary concern" of the Fourteenth Amendment in relation to ballot regulations "is with the tendency of ballot access restrictions to limit the field of candidates from which voters might choose." *Anderson*, 460 U.S. at 786 (quotation omitted). No evidence shows that the difference in payee has shrunk the pool of Libertarian candidates for office. Plaintiffs have offered some—dubious—evidence that the fee requirement has discouraged prospective candidates from pursuing nomination and disqualified some nominees from the ballot. *See* App'x at 246. But, even if true, that has occurred as a consequence of changing the filing fee requirement to apply equally between primary party and convention party candidates. The difference in the recipient of the filing fees—the only feature of Texas's election laws that Plaintiffs assail under the Equal Protection

Clause—has no practical effect on *individual candidates'* decision to seek office—no effect that Plaintiffs can demonstrate and none that Defendants can conceive. Accordingly, section 181.0311 does not "exclude certain classes of candidates from the electoral process" or otherwise "burden[] 'the availability of political opportunity.'" *Anderson*, 460 U.S. at 793 (quoting *Lubin*, 415 U.S. at 716).

### III.    The challenged statutes further important State interests.

Assuming *arguendo* that section 181.0311 and its other relevant statutes place a burden on Plaintiffs' First and Fourteenth Amendment rights, such burden is minimal. Given that, the Court must then look at the State's interests in burdening these rights and determine whether the relevant State interests are important so as to warrant this minor burden. *Richardson,* 978 F.3d at 233; *see also Anderson*, 460 U.S. 780; *Burdick*, 504 U.S. 428.

The laws that Plaintiffs seek to invalidate nonetheless support important state interests. "[A] State has an interest, if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candidacies." *Jenness v. Fortson*, 403 U.S. 431, 442 (1971). Section 181.0311's filing fee requirement serves "several legitimate interests," including preserving "the integrity of the electoral process" and regulating "the number of independent candidates on the ballot by ensuring that: (1) the electorate is enough aware of the candidate either to know his views or to learn and approve of them in a short period; and (2) that at least a minimum of registered voters are willing to take him and his views seriously." *Nader*, 332 F. Supp. 2d at 992.

States have a legitimate need to restrict the ballot to serious candidates. *See Munro v. Socialist Workers Party*, 479 U.S. 189, 194 (1986) ("States have an undoubted right to require candidates to make a preliminary showing of substantial support in order to qualify for a place on the ballot.") (citation omitted). And States may gatekeep ballot access by charging reasonable fees as long as payment is not the only means of getting on the ballot. *Lubin v. Panish*, 415 U.S. 709, 716–18 (1974); *Miller*, 116 F.4th at 382 (in the context of section 181.0311). By requiring candidates to

back their bid for office with either a cash payment or collected signatures, section 181.0311 disincentivizes candidates with a merely casual interest in elections from crowding the ballot.

The fee requirement also serves the straightforward interest of defraying the costs of elections. Texas's "filing fees serve to relieve the State treasury of the cost of conducting the primary elections, and this is a legitimate state objective." *Bullock v. Carter*, 405 U.S. 134, 147 (1972); *see also Lubin*, 415 U.S. at 713; *Ill. State Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 191 (1979) (Stevens, J., concurring) (recognizing State's interest in controlling the costs of elections). *Bullock* invalidated the filing fee scheme at issue after applying strict scrutiny and finding that some fees were prohibitively high. 405 U.S. at 145, 147. That conclusion is not warranted for section 181.0311, however. First, the *Bullock* Court's decision followed from its application of strict scrutiny, but modern precedent assesses ballot restrictions under the more flexible *Anderson/Burdick* standard. And second, *Miller* has already determined that section 181.0311's fees are not prohibitive under *Anderson/Burdick*. 116 F.4th at 379, 382. Therefore, the filing fees do not limit the number of candidates due to their fiscal burden to an impermissible extent but instead constitutes a reasonable measure to relieve the taxpayer of some of the fiscal burdens of election administration.

Texas's filing fees framework alleviates the fiscal strain regardless of whether the payor is a convention party or primary party candidate. In the case of the fees paid by Major party candidates, the fees offset the costs of primary elections. Tex. Elec. Code § 172.022. This allows the State to facilitate an efficient and fair election framework where every viable candidate can have his or her voice heard, while still disincentivizing "unrestrained factionalism." *Buckley v. Valeo*, 424 U.S. 1, 96 (1976); *see also Storer v. Brown*, 415 U.S. 724, 736 (1974).

The difference in recipient plays into the State's fiscal interest. Primary elections are formidable undertakings that incur large expenses, so much so that the State must contribute public money to fund primary elections even with the offset provided by fees. Nominating conventions, in relative comparison, are inexpensive. Indeed, the costs of the most recent Texas Democratic primary exceeded the LPT's 2024 convention costs by three orders of magnitude. Primary

elections for both Major Parties have cost the State more than $10 million in each of the last three election years. App'x at 237–38. Accordingly, it makes sense for the State to make filing fees from primary party candidates payable to the primary parties in order to defray the prodigious costs of primary elections, while sending other filing fees to general revenue. Naturally, Plaintiffs complain that this scheme overlooks the cost of their conventions. But the actual costs the Libertarian Party incurs to nominate its candidates are so slight that the State should not be faulted for prioritizing the primaries by routing fees to cover those expenses.

Given the multitude of State interests at stake, any burden, real or perceived, that Plaintiffs incur is permissible. And while their stated goal of effectively undoing and rebuilding the Texas election framework may or may not be well-founded, the State interests in running elections and providing guiderails for the same cannot be swept aside and ignored. These legitimate regulatory interests undoubtedly overcome any small burden that the challenged Election Code provisions may place on Plaintiffs' First and Fourteenth Amendment rights, and thus their claims fail the *Anderson/Burdick* test. Section 181.0311 is "justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford*, 553 U.S. 181, 191 (2008) (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992).

## CONCLUSION AND PRAYER

For the foregoing reasons, Plaintiffs have failed to show that Chapter 181, or any other provision of the Texas Election Code governing Minor Parties or their candidates imposes any burden on them. And to the extent they do, such burden is miniscule and only serves to advance the State's important nondiscriminatory regulatory interests. Defendants are therefore entitled to summary judgment, and respectfully request the Court find in favor of Defendants and dismiss Plaintiffs claims in their entirety.

Date: April 18, 2025                          Respectfully submitted,

KEN PAXTON                                    /s/ Zachary L. Rhines
Attorney General of Texas                     ZACHARY L. RHINES
                                              Special Counsel
BRENT WEBSTER                                 Texas State Bar No. 24116957
First Assistant Attorney General             zachary.rhines@oag.texas.gov

RALPH MOLINA                                  KYLE S. TEBO
Deputy First Assistant Attorney General       Special Counsel
                                              Texas State Bar No. 24137691
RYAN D. WALTERS                               kyle.tebo@oag.texas.gov
Deputy Attorney General for Legal Strategy
                                              OFFICE OF THE ATTORNEY GENERAL OF TEXAS
RYAN G. KERCHER                               P.O. Box 12548 (MC-009)
Chief, Special Litigation Division            Austin, Texas 78711-2548
                                              Telephone: (512) 463-2100

                                              COUNSEL FOR DEFENDANTS


### CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on April 18, 2025, a true and correct copy of the above and foregoing document was filed electronically (via CM/ECF) and served on all counsel of record.

                                              /s/ Zachary L. Rhines
                                              ZACHARY L. RHINES
                                              Special Counsel