THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the LIBERTARIAN PARTY OF TEXAS; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS; and LIBERTARIAN PARTY OF TEXAS, | § § § § § § § § | |
| *Plaintiffs,* | § § | 1:21-CV-01089-RP |
| v. | § § | |
| JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and JOSE A. "JOE" ESPARZA, in his official capacity as the Deputy Secretary of State of the State of Texas, | § § § § § § | |
| *Defendants.* | § § | |

## **Plaintiffs' Response to Motion for Summary Judgment**

"Measures are too often decided, not according to the rules of justice and the rights of the minor party, but by the superior force of an interested and overbearing majority."

— Federalist No. 10, James Madison

## Request for Hearing

This is an important case implicating complicated as-applied constitutional challenges. Taking all of Plaintiffs' evidence as true and indulging every inference in their favor, Defendants' motion should be denied.

Plaintiffs respectfully request a hearing on Defendants' motion.

## Statement

Defendants assert that the State has legitimate reasons for imposing a filing fee on Plaintiffs. They say that the filing fees serve to prevent ballot overcrowding. LPTexas can put exactly one nominee on the general election ballot for each race. They say that the filing fees serve to prevent frivolous or fraudulent candidacies. There is zero evidence that LPTexas' nominees have ever been frivolous or fraudulent. They say that the filing fees serve to defray the costs of elections. Plaintiffs' filing fees go the state general fund. They do not go to any election fund and do not defray the costs of any election.

What did actually happen when the newly imposed filing fees went into effect was that the Republicans tried to kick all of the Libertarians off the general election ballot and the Democrats tried to kick some of the Green Party nominees off the general election ballot.[1] Then again in 2022, the Republicans again tried to get the Libertarians kicked off the general election ballot.[2] The more likely interest the State is trying to serve with the filing fees is the entrenchment of the status quo. In fact, the now-Speaker of the Texas House of Representatives (a Republican) posted

---

[1] *In re Tex. House Republican Caucus PAC*, 630 S.W.3d 28 (Tex. 2020); *In re Green Party of Tex.*, 630 S.W.3d 36 (Tex. 2020).
[2] *In re Self*, 652 S.W.3d 829 (Tex. 2022).

on Twitter (now X) that, "The 2020 failure to knock the Libertarians off the ballot was a

dereliction of duty."[3]



(Ex. 1.) The State has continually increased the burdens on Plaintiffs by imposing new

obstructions to ballot access, and under the guise of "we have a legitimate state interest," they get

away with it. The Framers valued protecting the minority from the tyranny of the majority,

especially regarding the fundamental right to vote.

The slide into authoritarianism does not happen overnight. The majority in this state and

in Washington are becoming more aggressive at suppressing dissenting voices. Law firms are

being sanctioned by executive fiat. The legislature appears to be contemplating a mid-cycle

redistricting to further entrench its majority. There is a military parade on the National Mall on

the same day as the president's birthday. The trajectory and risk are real. Plaintiffs' response

raises genuine issues of material fact. Defendants' motion should be denied.

---

[3] Ex. 1 and https://x.com/Burrows4TX/status/1507907099858251778, last visited June 12, 2025.

<u>Facts</u>[4]

*The Challenged Law*

Plaintiffs raise as-applied challenges to Texas Election Code § 181.0311, 145.004, and 145.036.[5] The Challenged Law imposes substantial burdens on Plaintiffs and is not reasonably related to a legitimate state interest. Its cumulative effects are severe and not reasonably related to a legitimate state interest.

For decades, LPTexas' candidates were not required to pay a filing fee or submit petitions in lieu of such a fee. Prior to 2019, the "fee or petition" requirement had applied only to Primary Party candidates and independents. But starting in 2019, the Texas legislature began to impose additional requirements on Plaintiffs through the passage of H.B. 2504 (86th Leg. R), codified as Texas Election Code § 141.041(a) (repealed). That legislation mandated—for the first time—that to appear on the general election ballot, LPTexas candidates would be required to either: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code § 141.041(a) (repealed). In 2022, the State enacted Texas Election Code Section 181.0311, which moved the § 141.041 from Chapter 141 to Chapter 181, which governs Qualified Convention Parties. That year the

---

[4] All exhibits are included in the Appendix. Plaintiffs incorporate those exhibits by reference.
[5] Plaintiffs challenge those provisions themselves and operating in conjunction with Sections 141.032, 141.034, 141.037, 141.041, and 141.062  ("Form/Process/Procedure Requirements"); 145.002, 145.003 ("Withdrawal, Death, and Ineligibility of a Candidate");  172.0223 ("Limitation for Applications for a Place on Ballot"); 172.024, 172.025, 172.026, 172.027, 172.031, 172.034 ("Procedures for Primary Party Applications for Place on the Ballot"); 173.001, 173.033, 173.034 ("Use of Primary Party Filing Fees to Fund their Primaries"); and 181.005; 181.031; 181.061; 181.066; and 181.067 ("Procedures Imposed on Convention Parties") of the Texas Election Code (collectively, the "Challenged Law").

State amended Section 145.003 to provide that the secretary of state had to declare LPTexas'
nominees ineligible if they failed to pay the filing fees.

The State's (pretextual) purpose in this new law was to "standardize filing fee
requirements for all parties and candidates to have their name placed on the ballot."[6] In fact, the
state anticipated it would collect $230,000 from the new filing fees per cycle.[7] There is nothing in
the legislative record to indicate a concern with ballot overcrowding, frivolous, or fraudulent
candidacies. There is no evidence or even an allegation that LPTexas has been nominating slates
of unqualified candidates, overcrowding ballots, or engaging in other nominating irregularities.
LPTexas has established a modicum of support through its almost continuous ballot qualification
since 1980.

### *Primary Parties' Nomination Process*

In Texas, political parties that received at least 20 percent of the vote in the last
gubernatorial election nominate their candidates by primary election. *See* Tex. Elec. Code §
172.001. To be entitled to a place on the general primary election ballot, Primary Party candidates
must make an application for a place on the ballot. Tex. Elec. Code § 172.021(a). (Ex. 9:
Application for Place on the Ballot.) Primary Party candidates are also required to: (a) pay a filing
fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is
signed by a specified number of eligible voters. *See* Tex. Elec. Code §§ 173.031-173.034.

---

[6] *See* S.B. 2093 (87th Leg.- Reg.); Bill Analysis;
https://capitol.texas.gov/tlodocs/87R/analysis/pdf/SB02093F.pdf#navpanes=0

[7] H.B. 2504 (86th Leg); https://capitol.texas.gov/tlodocs/86R/fiscalnotes/pdf/HB02504E.pdf#navpanes=0

The filing fees paid by the Primary Party candidates are paid to the Primary Party itself for use in the State Election Fund or County Election Funds of each party. The Primary Parties can use the money from the filing fees for the approved costs it incurs "in connection with the primary election." *See* Tex. Elec. Code §§ 173.033-.034.

For the Primary Parties' nominees, access to the general election ballot is determined by the outcome of the primary election and the certification of its results. *See* Tex. Elec. Code § 172.122(a). The ballot winners of each primary race are designated as the party's nominee, and the nominees are placed on the general election ballot. *See* Tex. Elec. Code §§ 172.116; 172.117(a); 172.120(a),(h); 172.122.

### *Convention Parties' Nominating Process*

A Convention Party like LPTexas is entitled to have its candidates placed on the *general election* ballot if, within the last five years, one of its statewide candidates receives votes equal to at least two percent of the total number of votes received by all candidates for that office. *See* Tex. Elec. Code § 181.005(c). That is; after meeting such requirements, it becomes a *ballot-qualified* Convention Party, entitled to have its candidates on the general election ballot. LPTexas is a Ballot Qualified Convention Party. In other words, by being a Ballot Qualified Convention Party, LPTexas has already shown that it and its candidates have support from an adequate amount of the electorate.

To be eligible for nomination at a convention, a candidate must file an application with the state or county chair, which contains the information necessary to show that the candidate is eligible for public office should that candidate be elected. *See* Tex. Elec. Code §§ 141.031 & 181.031(a). For Primary Parties, it is an Application for a Place on the Ballot. For Convention

Parties, it is an Application for Nomination by Convention. (See Exs. 9 & 10.) Plaintiffs do not challenge the requirement that they submit applications, which contain the information necessary to show that the candidate is eligible for public office should that candidate be elected. *See* Tex. Elec. Code §§ 141.031 & 181.031(a). For example, the applications, which are public records, include things like the candidate's residency, how long the candidate has resided there, and whether the candidate has ever been convicted of a felony. (*See* Exs. 9 & 10.) The burden imposed by the applications is slight and they serve the States' interest in avoiding fraudulent candidacies and ineligible candidates. All the candidates—Republican, Democratic, and Libertarian—know who their potential competitors will be. (*See* Ex. 11 at 48:2-49:13.)

Plaintiffs challenge the newly imposed requirement that they pay filing fees in the same amount, and at the same time, as the Primary Parties. Those fees range from $375 for a justice of the peace in a rural county to $5,000 for a United States senator. *See* Tex. Elec. Code Ann. § 172.024. Most of the fees fall in the range of $1,250 to $2,500. *See id.*

### *Discriminatory Timing of Filing Fees*

Although Primary Parties and Plaintiffs are required to pay their filing fees on the same date, the actual effect of that disproportionally burdens Plaintiffs. (*See* Ex. 12.) The timeline from the last election cycle illustrates the logical disconnect. For primary parties, the time between the filing fee deadline and the first time they will appear on the *ballot* is 71 days (December 11, 2023, to first day of in person primary voting February 20, 2024). (*See* Ex. 12.) In contrast, for the convention parties, the duration between the filing fee and the first time a candidate might appear on a *ballot* is 315 days. (December 11, 2023, to first day of in person general election voting October 21, 2024). (*See* Ex. 12.) This is a difference of 244 days. Furthermore, by paying the filing

fee, if the candidate is otherwise qualified, that candidate will appear on a ballot. In contrast, the Challenged Law requires convention party candidates to pay a filing fee that is the same as the primary parties but without the certainty that the candidate will appear on a *ballot*. It is extremely difficult for LPTexas and its candidates to raise money before the nominating conventions. (Ex. 6 at 39:2-40:15; Ex. 8 at 35:2-7.) The burdens therefore are much heavier on Plaintiffs than on their Primary Party counterparts.

### *Discriminatory Use of Filing Fees*

What Plaintiffs do challenge is the filing fee that goes into the State's General Revenue Fund. Tellingly, more than 80% of the money that goes into the General Revenue Fund comes from taxes.[8] This contrasts with the procedures that apply to Primary Parties, whose candidates file their applications and pay their fee directly to the parties themselves and those fees go into the State Primary Fund and the County Primary Funds. *See* Tex. Elec. Code §§ 173.031 & 173.033.

The discrepancies are stark. In 2024, LPTexas' filing fees amounted to approximately $40,550. (*See* Ex. 3 & 14.) The corresponding cost of the 2024 state convention was $71,934.46. (Ex. 15.) Regardless of whether LPTexas is entitled to be treated on a level playing field as the Primary Parties, the State took the equivalent of 56% of the costs of Plaintiffs' state convention out of their ecosystem. Compare that with the millions that Primary Parties got to retain. (*See* Ex. 16.)

### *Cumulative Burdens on Plaintiffs*

The Challenged Law substantially burdens Plaintiffs in multiple ways, and it has had a substantial negative impact on Plaintiffs' associational rights. It has severely impaired recruitment

---

[8] Texas Comptroller's Biennial Revenue Estimate 2026-27, last visited June 13, 2025; https://comptroller.texas.gov/transparency/reports/biennial-revenue-estimate/2026-27/

efforts. (Ex. 8 at 72:23-73:17.) In 2018, LPTexas had 75 nominees on the general election ballot. In 2016, 32 nominees 2018 75 candidates on general election ballot. In 2020, the year the Challenged Law's predecessor statute went into effect, that number dropped to 74. But then in 2024, LPTexas only had about 22 nominees on the general election ballot. (Ex. 14.) The filing fee requirement has cause LPTexas to have fewer candidates and therefore fewer nominees. (Ex. 28 at 29:2-17.) Even though they disagree with the filing fee, Mark Tippets paid filing fees out of concern and fear that the party would not have a candidate in that race otherwise. (Ex. 18 28:10-17 & 44:2-45:9) Kevin Hale paid his so that voters would have a choice (Ex. 8 at 73:20-74:8.)

In the 2024 election cycle, of the Plaintiffs: Aurthur DiBianca was the LPTexas nominee for congress in CD15, but he withdrew before being disqualified for failure to pay the filing fee; Kevin Hale was the LPTexas nominee for congress in CD32, paid the filing fee, and lost in the general election; and Mark Ash was the LPTexas nominee for Justice on the Court of Criminal Appeals, did not pay the filing fee, and was disqualified for failure to pay the filing fee. (*See* Ex. 14.) Whitney Bilyeu, Stephanie Berlin, Joe Burnes, Aurthur Thomas, and Mark Tippets all participated in LPTexas' state convention. (Ex. 17.)

### *State's Interests are Not Served by Imposing Restrictions on Plaintiffs*

At its conventions, LPTexas has process and procedures to verify that the delegates who are elected by the precinct, district, and county conventions. (*See* Exs. 3, 4 & 5.) Much like the Primary Parties, LPTexas has a credentials committee that verifies that each delegate was duly elected. (*See* Exs. 3, 4 & 5.) LPTexas uses OpaVote software to securely tabulate votes. (See Ex. 3.) The "voters" at the state convention are delegates who have been elected at lower conventions; they are not members of the public. (Ex.23 at 28:20–34:17.) As applied to Plaintiffs,

there is simply no need or justification for the State to inject itself farther into LPTexas' core function, determining its nominees for the general election cycle.

LPTexas has no interest in running frivolous candidates. (Ex. 3; Ex. 8 at 30:8-32:1.) It is important for the party to have serious candidates who would be exemplary elected officials. As Joe Burnes put it:

> Because I was a Republican for so long, there is a heck of a lot more done, in my opinion, within the Libertarian Party to ensure that we are running candidates that represent us properly; and we're not just running some random idiot on the ballot because we have—we can't—we can't go run random idiots and get away with it.

(Ex. 6 at 56:2-57:11.)  This is one of the reasons that the delegates to a convention can "NOTA" a candidate (or candidates) if the delegates do not find any of the candidates to be solid nominees. (Ex. 3 and Ex. 7 at 23:22-24:12 .) "NOTA" stands for "none of the above", and it is part of the LPTexas culture to treat NOTA as if it were a candidate. (Ex. 3; Ex. 8 at 24:1-25:23.) There have been several occasions when a lacking candidate has been "NOTA'd". That is a sign to the public that LPTexas would rather have no candidate in a general election race than a candidate who was not qualified and exemplified the Libertarian principles.  If the delegates to a convention do not think that there is a quality candidate from those seeking the nomination, the delegates can "NOTA" them, which is a vote for the party to have no candidate in a specific race.

### *There is No Realistic Path to a Legislative Solution*

In their motion, the State suggests that "the ends Plaintiffs seek should be achieved through legislative means and not through the judicial system." (Defs' Mt. S. J. at 7.) In the 2025 legislative session, LPTexas did just that. LPTexas advocated for SB 2197, HB 4390, which aimed to cure the constitutional deficiencies in the Challenged Law. Those bills did not pass.

## Summary Judgment Standard

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

## Argument & Authority

### I.     Under Anderson-Burdick, the Challenged Law's Burdens are Substantial if Not Severe.

The cumulate burden of the timing of the filing fee and the discriminatory timing and use of the filing fees as subsidies for one group's nominating process but not for another cumulatively place a substantial if not severe burden on Plaintiffs. Under *Anderson-Burdick*, "a court first considers the "character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate." *Miller v. Hughs*, 634 F. Supp.

3d 340, 351 (W.D. Tex. 2022) *citing Anderson v. Celebrezze*, 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). That is weighed against "*the precise interests* put forward by the State as justifications for the burden imposed by its rule." *Id.* (emphasis added). "The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (*citing Burdick v. Takushi*, 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992)). Provisions that "impose 'severe restrictions' ... must be 'narrowly drawn' and support 'compelling' state interests, whereas 'reasonable, nondiscriminatory restrictions' require only 'important regulatory interests' to pass constitutional muster." *Meyer v. Texas*, No. H-10-3860, 2011 WL 1806524, at *3 (S.D. Tex. May 11, 2011) (quoting *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059).

At the other end of the Anderson-Burdick spectrum, "when a state election law imposes only reasonable, *nondiscriminatory* restrictions upon the First and Fourteenth Amendment rights of voters, the State's important regulatory interests are generally sufficient to justify the restrictions." *See Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (emphasis added). As the Fifth Circuit recently observed, " in every case, the Supreme Court has emphasized that '[h]owever slight [the] burden may appear ... it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.' ' " *Miller v. Nelson*, 116 F.4th 373, 379 (5th Cir. 2024), cert. denied, 145 S. Ct. 1435 (2025), *citing Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191, 128 S.Ct. 1610, 170 L.Ed.2d 574 (2008) (quoting *Norman*, 502 U.S. at 288–89, 112 S.Ct. 698).

In this case, the burdens of the filing fee itself, the time it is due, and its discriminatory

uses are each substantial burdens. When viewed in combination, the burden is arguably severe.

Under *Anderson-Burdick*, the burdens of the Challenged Law outweigh the State's specified

interest, and they *certainly* outweigh the State's actual interest in freezing the status quo. The

Court must therefore weigh the burdens, and in the context of summary judgment, indulge all

inferences in Plaintiffs' favor.

## II.    The Challenged Law Forces Plaintiffs to Pay the Filing Fee Prior to the Convention and Well-Before LPTexas' Candidates Appear on a Ballot.

The Challenged Law also unfairly discriminates and infringes on Plaintiffs' associational

rights because it forces LPTexas' candidates to pay the filing fees long before they ever appear on

a ballot. The State claims that it just wanted to "normalize" the filing fees, and that it's fair

because the same requirements are imposed on all parties. As the Supreme Court has held,

"'[sometimes] the grossest discrimination can lie in treating things that are different as though

they were exactly alike.'" *See Anderson v. Celebrezze*, 460 U.S. 780, 801(1983) *citing Jenness v.*

*Fortson*, 403 U.S. 431, 442 (1971).

Although a state may regulate a party's internal processes, the Supreme Court has

"continually stressed that when States regulate parties' internal processes they must act within

limits imposed by the Constitution." *Cal. Democratic Party*, 530 U.S. at 573. Here, Section

181.0311 puts an additional barrier on the rights of elected delegates to choose their nominees.

The First Amendment, as applied to the states through the Fourteenth Amendment, protects the

right of citizens to associate for political purposes and stands as bulwark against governmental

attempts to restrict these rights. *See Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 217,

107 S. Ct. 544, 550, 93 L. Ed. 2d 514 (1986). Even more so, the "cases vigorously affirm the

special place the First Amendment reserves for, and the special protection it accords, the process by which a political party 'selects a standard bearer who best represents the party's ideologies and preferences.'" *Cal. Democratic Party*, 530 U.S. at 575, *citing Eu v. S.F. Cty. Democratic Cent. Comm.*, 489 U.S. 214, 224 (1989). For Plaintiffs, their rights to associate in the context of a nominating convention is at the very core of their deeply held political beliefs. (See Ex. 6 at 58:3-60-2; Ex. 18 at 39:4-40:19; & Ex. 20 at 22:2-23:4.)

The statutory scheme treats the application for a place on the ballot, and application for nomination by convention, and the payment of a filing fee as distinct things. Under Texas law, applications for a place on the ballot and applications for nomination by convention are two different things. *See In re Tex. House Republican Caucus PAC*, 630 S.W.3d 28, 33 (Tex. 2020). Primary elections have ballots and conventions have nominations and votes. "[T]he vote in an election is by official ballot." Tex. Elec. Code Ann. § 52.001. There are no "ballots" in the process. None of the political authorities charged with having the official ballot prepared provide ballots for Plaintiffs' conventions. *See* Tex. Elec. Code Ann. § 52.002.

As a convention party, Plaintiffs place high value on their conventions being the core of their nominating process. Although the conventions are open to the public to observe, delegates to the conventions must be duly elected. And it is those delegates who nominate the statewide candidates. At the state level, at least, this is a significant difference between the primary parties' primary elections.  See Tex. Elec. Code Ann. § 181.061(a) ("The state convention consists of delegates selected at the county conventions ...."). The filing fees themselves are already a burden, which is then furthered by making it even harder to freely associate.

As the Defendants point out, Plaintiff's filing fee deadline is not tied to the date of the Plaintiffs' nominating conventions. It is not even tied to the general election, which is the first time any of Plaintiffs could appear on a ballot. The application deadline by is set by "an application for nomination by a convention must be filed not later than the regular deadline for candidates to file applications for a place on the general primary ballot." *See* Tex. Elec. Code § 181.033.

In fact, making Plaintiffs pay the filing fee before the conventions is not even a statutory mandate—it is Defendants' interpretation of the statute that requires such an early payment. *See In re Green Party of Tex.*, 630 S.W.3d 36, 39 (Tex. 2020) ("[W]e also agree that the Secretary of State's advisory requiring payment of the filing fee at the time of filing an application is not required by, and indeed conflicts with, the Election Code.") (discussing § 141.041 of the Election Code, the predecessor statute to Section 181.033).

The timeline from the last election cycle illustrates the logical disconnect. For primary parties, the time between the filing fee deadline and the first time they will appear on the *ballot* is 71 days (December 11, 2023 to first day of in person primary voting February 20, 2024). In contrast, for the convention parties, the duration between the filing fee and the first time a candidate might appear on a *ballot* is 315 days. (December 11, 2023 to first day of in person general election voting October 21, 2024). This is a difference of 244 days. Furthermore, by paying the filing fee, as long as the candidate is otherwise qualified, that candidate will appear on a ballot. In contrast, the Challenged Law requires convention party candidates to pay a filing fee that is the same as the primary parties but without the certainty that the candidate will appear on a *ballot*.

**III.    Challenged Law Violates Equal Protection by Making Plaintiffs' Candidacies More Expensive than the Primary Parties Without Justification.**

Plaintiffs assert an as-applied challenge to the Challenged Law because it violates Plaintiffs' Fourteenth Amendment rights under the Equal Protection Clause by discriminating against Plaintiffs without a reasonable relationship to the state's interest in candidate's showing a modicum of support. This factor should be given less weight than it would receive is Plaintiffs were independents or a new political party. Plaintiffs are and members of a ballot qualified party who have *already shown* a modicum of support.

The law impermissibly discriminates as to the use of the filing fees. The filing fees imposed by Texas Election Code § 141.041(a) are the same amount as the filing fees and signature requirements imposed on candidates seeking to appear on a primary election ballot for the same office. *See* Tex. Elec. Code §§ 141.041(b), (e); 172.024-25.

Republicans and Democrats pay their filing fees to their respective party, and that party then uses those fees to reimburse itself for the costs incurred "in connection with the primary election." *See* Tex. Elec. Code §§173.033-.034. That is, the primary parties and their candidates get a direct public benefit from the filing fees: The filing fees directly fund their nomination process. Importantly, the state's interest in requiring that candidates show a modicum of support is satisfied ***at the time the filing fee is paid***. What happens to the money after that should not be justified by that factor.

In Contrast, LPTexas' candidates are forced by Texas Election Code § 181.0311 to pay their filing fees to the state's or county's general fund, but neither LPTexas nor its candidates receive any of those fees back from the State to defray the cost of their convention nominating

process. (Ex. 19 at 54:14-55:11.) Instead, LPTexas is left to fund its own conventions. Payment of

the filing fees is a substantial burden, and the state has no interest in increasing the burden by

requiring Plaintiffs to then fund their campaigns and nominating process on top of payment the

fee. As Kevin Hale testified:

> It doesn't always have to be a binary between the red evil guy and
> the blue evil guy or gal, and it's just -- it's frustrating to see them
> stack the deck like this and now have to damage my opportunity to
> run with this new fee because, to me, the $3,125 could have been
> three billboards talking about our convention season or it could
> have been one billboard for ten months with my name on it and I
> don't have that now. Because the Secretary of State has my money,
> I don't have the ability to put that up.

(Ex. 8 at 22:6-23:6.) Because the burden on Plaintiffs is not reasonably related to the State's

interest, the discriminatory treatment of the filing fees is not constitutionally permissible.

Even if this were true, "'[sometimes] the grossest discrimination can lie in treating things

that are different as though they were exactly alike.'" *See Anderson v. Celebrezze*, 460 U.S. 780,

801(1983) *citing Jenness v. Fortson*, 403 U.S. 431, 442 (1971). The logistics of the filing fee

discriminates in practice. (Ex. 13.) Republicans and Democrats pay their filing fees to their

respective party, which then uses those fees to reimburse its costs incurred "in connection with

the primary election." *See* Tex. Elec. Code §§173.033-.034. LPTexas candidates instead are to pay

their filing fees directly to the State's general fund. LPTexas will not receive any of those fees

back from the State to defray the cost of its convention process. Instead, LPTexas is left to fund

its own conventions. The unequal treatment and discrimination suffered by the Libertarians

results solely from and because of their political affiliation, is substantial, and is not justified by

any legitimate state interest. Any state interest in requiring a "modicum of support" is fully

served when a candidate tenders the fee, but there is no legitimate reason that explains why filing

fees similarly cannot be paid directly to the LPTexas and be used to pay for expenses "in

connection" with its conventions.

Even if the challenged law does not pose an undue burden, the challenged law must still bear a

rational relationship to the state's legitimate interest. *See Miller v. Hughs*, 634 F. Supp. 3d 340, 357

(W.D. Tex. 2022) ("The Court therefore holds that the challenged provisions, to the extent they

require paper petitions, violate Plaintiffs' fundamental rights because there is no connection between

those burdensome provisions and the Defendants' stated interest*."), rev'd on other grounds as Miller

v. Nelson*, 116 F.4th 373 (5th Cir. 2024), cert. denied, 145 S. Ct. 1435 (2025).

Defendants assert that the State's interest in easing the costs of elections outweighs the

burden. That argument should be given little weight, because there was a floor amendment to replace

"general revenue fund" with "Election Improvement Fund under Section 31.011." It failed. (*See* Ex.

2 at Senate Journal 2083.)

## IV.    Defendants' Specified Interests are Not Connected with the Disparate Use of the Fees.

Defendants' justifications for the challenged law are opportunistic at best, and the Court

should afford them an according weight. *Cf. Vote.Org v. Callanen*, 89 F.4th 459, 484 (5th Cir. 2023)

(noting in a Voting Rights Act case that, "[T]he principal probative weight of a tenuous state policy is

its propensity to show pretext."), *citing League of United Latin Am. Citizens, Council No. 4434 v.

Clements*, 999 F.2d 831, 871 (5th Cir. 1993).

To the extent the State asserts its interests that only "eligible" non-frivolous appear on

the ballot, LPTexas' candidates will have already filed applications for nomination by convention,

so their form, content, and procedure requirements are met prior to their nomination conventions

and available for the general public to inspect. Requiring Plaintiffs to pay before they are nominated does not reasonably related to any state interest and only serves to chill their rights of association.

Plaintiffs do not assert that their obligations to file their applications for nomination by convention four months prior to the convention are unconstitutionally burdensome. Rather, they only challenge the *payment of the filing fee* before the nominating convention. The State's interests in reducing ballot overcrowding are not served by requiring Plaintiffs to pay the filing fee *before* they are nominated, because a maximum of one Libertarian *will appear in each race on the general ballot*.

The State's smooth and efficient manner argument fails because certifications for the general election ballot are not due until, after the conventions and primaries. The Election Code allows that, " An executive committee may make a replacement nomination following an administrative declaration of ineligibility under Section 145.003(f)(3) only if the replacement candidate pays the filing fee or submits a petition in lieu of a filing fee."

Defendants cannot have it both ways. On one hand, it claims that the challenged law is non-discriminatory because it treats all candidates equally, placing all candidates in the same starting position at the beginning of a race. Then, on the other hand, Defendants asset that Plaintiffs cannot prevail on their equal protection claims because they "not similarly situated to the Major Parties because it has significantly less support statewide than do the Major Parties." (Dkt. 87 at 20.) There is one time that all the citizens come together and elect their representatives: the general election. Plaintiffs have asserted that plausible claims that the challenged law unconstitutionally burdens them when compared to major party candidates all ultimately competing against each other in the general election.

V.    **Defendants' Assertion that Plaintiffs' Claims are Foreclosed as a Matter of Law are Misplaced.**

a.    *Miller v. Nelson*

Defendants assert that the Court can and should end its analysis with *Miller v. Nelson*, 116 F.4th 373 (5th Cir. 2024), cert. denied, 145 S. Ct. 1435 (2025). As the Court likely recalls, the disparate treatment of the filing fees was a minor issue in the case, and not fully briefed by either side. The main reason, however, that Miller is distinguishable is that Miller addressed a *facial* attack on Section 181.0 311. *See Miller v. Nelson*, 116 F.4th 373, 382 (5th Cir. 2024), cert. denied, 145 S. Ct. 1435 (2025) ("Plaintiffs–Appellees also argue that section 181.0311 . . . runs afoul of the Equal Protection Clause because it is *facially* discriminatory . . . .) (emphasis added). In contrast to *Miller*, Plaintiffs are only making an as-applied challenge. *See Citizens United v. Fed. Election Comm'n*, 558 U.S. 310, 331, 130 S.Ct. 876, 893, 175 L.Ed.2d 753 (distinguishing facial and as-applied challenges by "the breadth of the remedy employed by the Court"); *see also United States v. Treasury Employees*, 513 U.S. 454, 477–78, 115 S.Ct. 1003, 1018, 130 L.Ed.2d 964 (1995) (contrasting "a facial challenge" with "a narrower remedy").

b.    *Tex. Indep. Party v. Kirk*

The state argues that *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 180 (5th Cir. 1996), forecloses Plaintiffs claims. But *Kirk* is distinguishable. In *Kirk*, payment of a filing fee was not an issue in the case. Rather, the case dealt with a declaration of intent to run as an independent candidate a candidate under Section 142.002 of the Texas Election Code and the petition signature burden on an independent or unaffiliated candidate. *See* Tex. Elec. Code Ann. § 142.002 (West 1986). As the *Kirk* Court observed, "The declaration is basically a simple matter that requires only the candidate's name, address, and office sought." *Id.* The *Kirk* Court concluded, understandably, that

the burden of filing the declaration was slight. *See id.* The *Kirk* Court then went on to conclude that requiring independent candidates to submit petitions six months after filing the declaration of intent was constitutionally permissible. *See id.* at 185.

In contrast to this case, *Kirk* did not address the burden of submitting a filing fee at the same time the application was submitted.

### c.  *Bullock v. Carter*

Bullock addressed only filing fees along. It did not speak to discriminatory treatment of convention parties and their candidates.  *See Bullock v. Carter*, 405 U.S. 134, 145, 92 S. Ct. 849, 857, 31 L. Ed. 2d 92 (1972).  Defendants assert that the State need not use public money to fund Plaintiffs' nominating process. . . ." (Dkt. 64 at 8.) Plaintiffs agree. Plaintiffs do not assert a claim for any public subsidy or use of public funds in their nominating process. Plaintiffs only ask that their own funds be used to fund their own conventions. Indeed, it would be antithetical to Plaintiffs to take public money for their nominating process. It is true that the primary parties do get subsidies from the general fund because the filing fees are not enough to pay for the primary elections. That does not mean that Plaintiffs claims are foreclosed.

### d.  *Am. Party of Tex. v. White*

Similarly, *Am. Party of Tex. v. White* does not address the use of filing fees paid by candidates or desperate treatment of the use of filing fees. That case dealt with a statute that "generally provided for public financing from state revenues for primary elections of only those political parties casting 200,000 or more votes for governor in the last preceding general election." *Am. Party of Tex. v. White* 415 U.S. 767, 791–92, 94 S. Ct. 1296, 1311, 39 L. Ed. 2d 744 (1974). Plaintiffs do not seek to use public money; Plaintiffs seek to use their *own* money.

## Prayer

FOR THESE REASONS, Plaintiffs respectfully request that the Court DENY

*Defendants' Motion for Summary Judgment*, and grant them all relief, in law or in equity, to which

they are justly entitled.

Dated: June 16, 2025                          Respectfully submitted,


                                             By: */s/ Jared G. LeBlanc*
                                                  Jared G. LeBlanc
                                                  Texas Bar No. 24046279
                                                  jleblanc@leblancflanery.com

                                             **Attorney-In-Charge**

**OF COUNSEL:**

LEBLANC FLANERY PLLC

2929 Allen Parkway, Suite 200
Houston, Texas 77019
(346) 315-1150

**Attorneys for Plaintiffs**

## **Certificate of Service**

The undersigned hereby certifies that a true and correct copy of the foregoing was served upon Defendants, by and through their counsel of record, electronically through the Clerk's ECF system on June 16, 2025.

*/s/ Jared G. LeBlanc*
Jared G. LeBlanc
