**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION**

| | | |
|---|---|---|
| WHITNEY BILYEU, individually and as Chair of the Libertarian Party of Texas; MARK ASH; STEPHANIE BERLIN; JOE BURNES; ARTHUR DIBIANCA; KEVIN HALE; DESARAE LINDSEY; ARTHUR THOMAS IV; MARK TIPPETTS, and LIBERTARIAN PARTY OF TEXAS, | § § § § § § § | |
| *Plaintiffs*, | § | |
| v. | § | CIVIL ACTION NO. 1:21-cv-01089-RP |
| JANE NELSON, in her official capacity as the Secretary of State of the State of Texas, and DAVE NELSON, in his official capacity as the Deputy Secretary of State of the State of Texas, | § § § § § | |
| *Defendants.* | § | |

---

**DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

---

T ABLE OF C ONTENTS

T ABLE OF C ONTENTS ............................................................................................................ II

I NTRODUCTION .....................................................................................................................1

A RGUMENT............................................................................................................................1

I.      Plaintiffs' claims can be disposed of under *Miller v. Nelson*. ............................................1

II.     Plaintiffs do not consider that the LPT is not similarly situated to the major
        parties.........................................................................................................................3

III.    Plaintiffs cannot show that the filing deadline is unconstitutionally burdensome. ......... 4

     A.    The timing of the filing fees do not burden Plaintiffs.................................................. 4

     B.    The filing fee deadline is non-discriminatory. ........................................................... 4

IV.     Plaintiffs cannot show that the difference in filing fee recipient is
        unconstitutionally burdensome......................................................................................... 6

     A.    Any burden stemming from the difference in recipient is incurred only by the
           LPT. ......................................................................................................................... 6

     B.    Any burden stemming from the difference in recipient is slight. ............................... 6

V.      Texas's interests in ballot integrity and defraying election expenses outweighs any
        burden on Plaintiffs. ..........................................................................................................7

C ONCLUSION ..................................................................................................................... 9

C ERTIFICATE OF S ERVICE .................................................................................................10

## INTRODUCTION

Plaintiffs, the Libertarian Party of Texas (LPT) and members thereof, (collectively Plaintiffs) sued Secretary Nelson and Deputy Secretary Nelson in their official capacities challenging Tex. Election Code section 181.0311, and related statutes, which require that LPT candidates either pay a filing fee or submit a valid petition to be considered for nomination for the general election ballot. On April 19, following discovery, State Defendants moved for summary judgment on Plaintiffs' remaining claims, arguing that under the *Anderson/Burdick* standard the State's filing fee requirement is a reasonable election regulation that enables the State to limit the ballot to serious candidates and to defray the costs of elections. *See generally*, Dkt. 87. This Reply addresses the arguments Plaintiffs raise in their Response, Dkt. 92.

## ARGUMENT

### I.    Plaintiffs' claims can be disposed of under *Miller v. Nelson*.

The Fifth Circuit has determined that Texas may require minor party candidates, including candidates from the Libertarian Party, to submit to the same filing fee and application system that Texas has long used for individuals seeking office under the banner of one of the major parties. *See Miller v. Nelson*, 116 F.4th 373, 382 (5th Cir. 2024) (upholding the validity of candidate filing fees); *see also Tex. Indep. Party v. Kirk*, 84 F.3d 178, 184-87 (5th Cir. 1996) (upholding applications). That precedent furnishes the appropriate starting point for the Court's analysis in this case, where LPT refashions their challenge to the same legislation—Texas Election Code section 181.0311—that the Fifth Circuit upheld in *Miller*.

Plaintiffs seek to fully enjoin the application of section 181.0311 as applied to them. *See*. Dkt. 61 at 24. Nonetheless, in the wake of *Miller*, Plaintiffs have narrowed the scope of their claims so that they target two provisions: 1) the requirement under section 181.033 that LPT candidates pay their filing fees or submit their petitions in lieu in advance of being considered for nomination, which Plaintiffs term "discriminatory timing," Dkt. 92 at 7, and 2) the requirement under section 181.0311(c), (d) that LPT candidates pay their filing fees to the State or county, "discriminatory use" in Plaintiffs' parlance. Dkt. 92 at 8. Plaintiffs have thus made an unhappy peace with their

1

payment obligations set by the State's filing fee requirements and merely resort to nitpicking the Election Code for the minute inconveniences it allegedly imposes on minor parties and their candidates.

Plaintiffs attempt to sideline *Miller* by arguing that it "addressed a *facial* attack on Section 181.0311" whereas the "Plaintiffs are only making an as-applied challenge." Dkt. 92 at 20. But Plaintiffs do not explain why that matters. Facial and as-applied challenges to legislation often raise the same issues, and *Miller* disposed of an equal protection clause challenge to section 181.0311 that is not obviously distinguishable from Plaintiffs' claim here. The Fifth Circuit has concluded that "[w]hile rejection of a facial challenge to a statute does not preclude all as-applied attacks, surely it precludes on resting upon the same asserted principle of law." *In re Cao,* 619 F.3d 410, 430 (5th Cir. 2010) (quoting *Penry v. Lynaugh,* 492 U.S. 302, 354 (1989) (Scalia, J. dissenting)).

Aside from that curious attempt, Plaintiffs appear to ignore *Miller*'s conclusion that "Section 181.0311 serves [the] state interest" of ensuring "all party candidates . . . regardless of party affiliation, must demonstrate that they are serious candidates with some public support." 116 F.4th at 382. Rather, Plaintiffs' Response approaches section 181.0311 as if it were unadjudicated legislation whose service of legitimate ends is uncertain. *See e.g.*, Dkt. 92 at 2. Since the Fifth Circuit has already affirmed the constitutionality of applying the filing fee requirement to minor parties, to succeed in this rearguard action, Plaintiffs must raise issues not addressed by *Miller* or related precedent that indicate burdens to their rights that outweigh the State's interests. *See Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983) (noting that the Court must weigh the plaintiff's injury against the State's interests). Because they re-urge barely-modified arguments, Plaintiffs' challenge is foreclosed.

Conversely, State Defendants are entitled to summary judgment because the only new issues Plaintiffs assert entail at most mild burdens that are easily counterbalanced by the State's need to protect the integrity of its ballot and to offset the cost of election administration.

**II.    Plaintiffs do not consider that the LPT is not similarly situated to the major parties.**

The Equal Protection Clause protects parties that are "[s]imilarly situated," which means that they are "in all relevant respects alike." *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordinger v. Hahn*, 505 U.S. 1, 10 (1992)). The Fifth Circuit has previously affirmed a district court's assertion that "independent and minor political-party candidates are not similarly situated under a state's election laws." *Nader v. Connor*, 332 F. Supp. 2d 982, 989–90 (W.D. Tex. 2004), *aff'd*, 388 F. 137 (5th Cir. 2004). The Plaintiffs breeze past this reality in their effort to claim disparate treatment. Plaintiffs' claim of unequal treatment, then, ignores the case law articulating the distinction between Major and Minor Parties for the purposes of Equal Protection claims.

But they cannot escape the reality that "LPT is not similarly situated to the Major Parties because it has significantly less support statewide than do the Major Parties." ECF 87 at 20. As a result, "they do not need to shoulder the heavy burdens of administering primary elections open to large segments of the voting population." *Id.* The Plaintiffs offer up no rebuttal to this point. Instead, they cite *Anderson* for the proposition that "the grossest discrimination can lie in treating things that are different as though they were exactly alike." 460 U.S. 780, 801 (1983) (quoting *Jennes v. Fortson*, 403 U.S. 431, 442 (1971)). But that is not what the State claims here. Indeed, it is the Plaintiffs who seek to treat things recognized as different under the law as though they were the same. The State, on the other hand, highlights the distinction between major and minor parties recognized in the case law. Because major parties face much higher resource demands to conduct their nominating process—the primary elections—the Legislature's decision to direct candidate fees to offset the costs of the primaries, while not doing the same for minor parties, is reasonable.

Plaintiffs' failure to engage with the case law once again dooms their effort to defeat summary judgment. Because Plaintiffs are not "[s]imilarly situated," they are not entitled to the relief that they seek. *Tex. Ent. Ass'n, Inc.*, 10 F.4th at 513.

**III.    Plaintiffs cannot show that the filing deadline is unconstitutionally burdensome.**

Plaintiffs fail to show a burden related to the fee deadlines that disproportionately impacts minor parties or their candidates. Candidates for both major and minor parties pay their fees at the same time. Because *Miller* upheld the constitutionality of the State's filing fee system and because Plaintiffs do not raise a novel issue related to the timing of the fees, the Court should grant summary judgment against this set of their claims.

**A.  *The timing of the filing fees do not burden Plaintiffs.***

The Election Code requires all major party and minor party candidates seeking office to pay applicable filing fees or submit a petition when they file their application for a place on the primary ballot (major parties) or for nomination by convention (minor parties). Tex. Election Code §§ 172.021, 172.024, 181.0311, 181.033. Plaintiffs contend that it is unfair for minor party candidates to be held to the same deadline as candidates who will stand in a major party primary. Dkt. 92 at 7–8, 12–15. In their bid to show that this provision "unfairly discriminates[] and infringes[] on Plaintiffs' associational rights," Dkt. 92 at 13, Plaintiffs offer two arguments. *First*, they point out that the length of time for a minor party candidate to appear on the general ballot after paying a fee or submitting a petition is considerably longer than the time for a major party candidate to appear in the primary for his party's nomination. Dkt. 92 at 7. Plaintiffs believe this discrepancy between when minor party candidates appear on the general election ballot versus when major party candidates appear on the primary ballot amounts to an unfair difference. *Second*, Plaintiffs assert that a pre-convention deadline is discriminatory because it requires minor party candidates to pay the fee without a guarantee they will appear on the general election ballot after receiving their party's nomination.

**B.  *The filing fee deadline is non-discriminatory.***

Neither of these arguments show a burden that applies differently to minor and major party candidates. Plaintiffs would have the Court compare the time between the payment deadline and the *general election* for minor party candidates to the time between the payment deadline and the *primary election* for major party candidates. This is not a commensurate comparison because LPT

hopefuls must receive their party's nomination before proceeding to the general election no less than major party aspirants. Accordingly, Plaintiffs are incorrect that the general election ballot is the earliest opportunity for LPT candidates to receive any consideration for office, since their names will appear on the convention ballot for nomination. Minor party conventions are held at roughly the same time of year as the primary elections, *see* Tex. Elec. Code §§ 41.007, 181.061, so the Election Code does not burden LPT candidates by making them pay fees substantially earlier than their major party counterparts.

Similarly, both major and minor party candidates pay filing fees with the risk that they may not secure their party's nomination. And by the same logic, both categories of candidate benefit from the same opportunity to be considered for office through their party's nomination process, whether by primary or convention. Just as qualifying major party candidates get their chance in the primaries, minor party candidates have the same opportunity to solicit their party's candidacy at convention. Finally, Plaintiffs attempt to sharpen this argument by referencing testimony that "[i]t is extremely difficult for LPTexas and its candidates to raise money before the nominating conventions," Dkt. at 8 (citations omitted), but do not show that early fundraising is any less difficult for candidates seeking nomination in a primary. *Cf. Miller v. Hughs*, 634 F. Supp. 3d 340, 356 (W.D. Tex. 2022) (ruling that LPT candidate's declaration alleging difficulty in raising the amount of the filing fee did not suffice to show severe burden), *aff'd in part, sub nom. Miller v. Nelson*, 116 F.4th 373 (5th Cir. 2024).

Thus, contrary to Plaintiffs, the timing requirements for payment of the filing fee do not impose different burdens for major versus minor party candidates. Since "the State's important regulatory interests are generally sufficient to justify" "reasonable, non-discriminatory restrictions," *Burdick*, 504 U.S. at 428 (quoting *Anderson*, 460 U.S. at 788), the State's interest in limiting ballot access to serious candidates, *Miller*, 116 F.4th at 382, outweighs the modest and equal burden the filing fees create.

Moreover, *Miller* has settled the constitutionality of requiring minor party candidates to pay filing fees as a general matter. *Id.* Because Plaintiffs fail to show that the timing requirements burden

LPT candidates in a way that was not presented in *Miller*, they do not raise a new issue that might support a different conclusion than the *Miller* Court reached.

## IV.    Plaintiffs cannot show that the difference in filing fee recipient is unconstitutionally burdensome.

Plaintiffs also reprise their challenge to section 181.0311's directive that minor party candidates for statewide office pay their fees into the State's general revenue fund. To be sure, this does mark a difference between the filing fee requirement for minor party candidates and major party candidates whose fees are payable to the party chairs and go to offset the prodigious costs of the primaries.

### A.    *Any burden stemming from the difference in recipient is incurred only by the LPT.*

Plaintiffs incorrectly regard the difference in recipient as affecting both the minor parties and their individual candidates. Dkt. 92 at 16. However, any unequal burden arising from the difference in recipient falls exclusively on the LPT. Minor and major party candidates alike pay the same fees at the same time. The difference in recipient does not alter the dollar cost to individual candidates. Nor do major parties' individual candidates derive an indirect benefit. Filing fee proceeds from major party candidates are strictly limited to financing primary elections. *See* Tex. Elec. Code §§173.031-.034. Filing fees may not be used to fund campaigns or be rebated to individual candidates. *Id.*; *see also id.* § 173.001. Instead, if the difference in recipient creates any burden at all, that burden only falls on minor parties.

### B.    *Any burden stemming from the difference in recipient is slight.*

Plaintiffs exaggerate the burden that the difference in recipient places on the LPT. Plaintiffs contrast the amount of filing fees collected from LPT candidates with the *total* cost of the LPT's 2024 state convention and conclude that "the State took the equivalent of 56% of the costs of Plaintiffs' state convention." Dkt. 92 at 8. Plaintiffs do not account for the fact that the total cost includes the LPT's expenditures on social events and other ancillary expenses. In fact, in all the years for which the LPT produced expense reports of its state conventions, the bulk of convention-related spending went towards costs that were unrelated to nominating candidates. Def. App'x at 8–10,

218–19. Plaintiffs cannot claim that their inability to defray these non-electoral costs constitutes a burden on their electoral rights.

The actual costs of nominating candidates are modest. Once the LPT's convention costs for its 2020 convention are adjusted to filter out ancillary expenses, the remaining costs related to nominating candidates totaled $2,871.39. Def. App'x at 218–19. Remarkably, Plaintiffs avoid any discussion of their own accounting. They do not contest that "[t]he actual business of nominating candidates was inexpensive," or that the 2020 convention cost the Party "$2,817.39 to pay for an auditorium, voting software, a parliamentarian, and registration and other supplies." ECF 87 at 22. Nor do they contest the fact that "the bulk of spending in [2022 and 2024] was not related to nominating candidates." *Id.* Accordingly, assuming that Plaintiffs are correct to view the LPT's inability to defray the costs of its nominations as a burden, the genuine dollar cost of that burden is measured in the low thousands.

Furthermore, the LPT's unbroken success at self-funding its conventions through ticket sales and donations demonstrates that any burden from not receiving filing fees is low. The LPT testified that revenue raised from the convention has consistently exceeded costs. Def. App'x at 104–06. Accordingly, the LPT is more than able to fund the nomination of its candidates without receiving filing fees. Since the LPT's alleged burden does not hinder the party from performing its core partisan functions, the challenged provision constitutes a mild burden at most.

V.    **Texas's interests in ballot integrity and defraying election expenses outweighs any burden on Plaintiffs.**

All the State must show to prevail on summary judgment is that it has an important enough interest to outweigh Plaintiffs' minor burdens. *Richardson*, 978 F.3d at 233 n. 26 (quoting *Burdick*, 504 U.S. at 424)). The State easily meets this bar because "the *Anderson/Burdick* approach recognizes that 'the state's important regulatory interests are generally sufficient to justify reasonable, nondiscriminatory restrictions." *Id.* at 235 (quoting *Anderson*, 460 U.S. at 788).

*Miller* affirmed that section 181.0311 served the State's interest in gatekeeping ballot access. 116 F.4th at 382; *see also Jenness v. Fortson*, 403 U.S. 431, 442 (1971) (stating "a State has an interest,

if not a duty, to protect the integrity of its political processes from frivolous or fraudulent candida-cies."). Nevertheless, Plaintiffs argue that this important interest cannot justify the difference in recipient, arguing that "the state's interest in requiring that candidates show a modicum of support is satisfied at the time the filing fee is paid. What happens to the money after that should not be justified by that factor." Dkt. 92 at 16; *id.* at 18-19. Restated, Plaintiffs contend that ballot integrity cannot justify section 181.0311, because the State's interest in ballot integrity would be equally served by directing payment to the LPT as to the general revenue fund.

This argument amounts to a demand that section 181.0311 be narrowly tailored to minimize the burdens on minor parties. Plaintiffs tacitly admit that requiring payment of a filing fee protects the ballot from unserious candidates but prefer that end be achieved by routing fee proceeds to them. However, "strict scrutiny is appropriate only if the burden is severe." *Clingman v. Beaver*, 544 U.S. 581, 592 (2005) (citation omitted); *see also Burdick*, 504 U.S. at 434. When instead "the burden of an election law is reasonable—instead of severe—the state must show only a 'legitimate interest[ ]' that is 'sufficient to outweigh the limited burden' imposed by the regulation." *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 240 (5th Cir. 2020) (quoting *Burdick*, 504 U.S. at 440). Since the only burden that is remotely plausible—the lack of reimbursement for the LPT's nomination expenses—is minor, section 181.0311 passes *Anderson/Burdick* review.

Nor do the Plaintiffs adequately address the State's argument that "[t]he fee requirement also serves the straightforward interest of defraying the costs of elections." Dkt. 87 at 25. In *Bullock v. Carter*, the Supreme Court recognized in the primary election context that "filing fees serve to relieve the State treasury of the cost of conducting primary elections, and this is a legitimate state objective." 405 U.S. 134, 147 (1972). In response, Plaintiffs argue that *Bullock* doesn't apply because "[i]t did not speak to discriminatory treatment of convention parties and their candidates." Dkt. 92 at 21. But the State raises *Bullock* to explain why the fee requirement exists for all parties, not to justify discrimination against some parties. Whatever minor burden the fee places on the Plaintiffs, the case law makes it clear that the State's interest in relieving costs clearly outweighs that burden.

8

In the end, they "constitute[] a reasonable measure to relieve the taxpayer of some of the fiscal burdens of election administration." Dkt. 87 at 25. Plaintiffs fail to adequately contest this.

### CONCLUSION

The Court should grant summary judgment for Defendants. Plaintiffs cannot establish that section 181.0311 or any other provision of the Texas Election Code imposes an unconstitutional burden on them.

Date: June 30, 2025

KEN PAXTON
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

RALPH MOLINA
Deputy First Assistant Attorney General

RYAN D. WALTERS
Deputy Attorney General for Legal Strategy

RYAN G. KERCHER
Chief, Special Litigation Division

Respectfully submitted,

*/s/ Zachary L. Rhines*
ZACHARY L. RHINES
Special Counsel
Texas State Bar No. 24116957
zachary.rhines@oag.texas.gov

KYLE S. TEBO
Special Counsel
Texas State Bar No. 24137691
kyle.tebo@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL OF TEXAS
P.O. Box 12548 (MC-009)
Austin, Texas 78711-2548
Telephone: (512) 463-2100

COUNSEL FOR DEFENDANTS

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(a), I hereby certify that on June 30, 2025, a true and correct copy of the above and foregoing document was filed electronically (via CM/Dkt.) and served on all counsel of record.

*/s/ Zachary L. Rhines*
ZACHARY L. RHINES
Special Counsel

10