IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| WHITNEY BILYEU, MARK ASH, STEPHANIE BERLIN, JOE BURNES, ARTHUR DIBIANCA, KEVIN HALE, DESARAE LINDSEY, ARTHUR THOMAS IV, MARK TIPPETTS, and LIBERTARIAN PARTY OF TEXAS, | § § § § § § § | |
| | § | 1:21-CV-1089-RP |
| Plaintiffs, | § § | |
| | § | |
| v. | § | |
| | § | |
| JOSE A. ESPARZA, *in his official capacity as the Deputy Secretary of State of the State of Texas*, and JOHN B. SCOTT, *in his official capacity as the Secretary of State of the State of Texas*, | § § § § § | |
| | § | |
| Defendants. | § | |

**<u>ORDER</u>**

Before the Court is Defendants John B. Scott and Jose A. Esparza's[1] ("Defendants") Motion

for Summary Judgment. (Dkt. 87). Plaintiffs Whitney Bilyeu, Mark Ash, Stephanie Berlin, Joe

Burnes, Arthur Dibianca, Kevin Hale, Arthur Thomas IV, Mark Tippetts, and Libertarian Party of

Texas's ("LPT") (collectively, "Plaintiffs") filed a response, (Dkt. 92), and Defendants filed a reply,

(Dkt. 96). The Court held a hearing on the motion on July 16, 2025. (Min. Entry, Dkt. 97). Having

considered the parties' arguments, the evidence presented, and the applicable law, the Court will

grant the motion for summary judgment.

---

[1] Scott and Esparza are sued in their official capacities as Texas Secretary of State and Deputy Secretary of State, respectively.

# I. BACKGROUND

## A. The Challenged Statutes

In Texas, political parties that received at least 20 percent of the vote in the last gubernatorial election nominate their candidates by primary election. *See* Tex. Elec. Code § 172.001. For the last century, only the Democratic and Republican Parties have qualified as "Primary Parties." (*See* Pls.' Resp., Dkt. 92, at 6). For other parties, if the party received between two and twenty percent of the vote, it may choose to nominate candidates by either primary election or convention; if the party received less than two percent of the vote, it must nominate by convention. Tex. Elec. Code §§ 172.001–02; 181.002–03. In this suit, LPT and several candidates who run for office on the LPT ticket bring an as-applied challenge to Texas laws that allegedly impose unfair burdens on LPT, which nominates its candidates by convention ("Convention Party"). (4th Am. Compl., Dkt. 61).

To be entitled to a place on the primary election ballot, Primary Party candidates must make an application for a place on the ballot. Tex. Elec. Code § 172.021(a). Primary Party candidates are also required to: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See id.* § 172.021(b). Those filing fees are paid to either the state or county party chair and are used to reimburse the Primary Party for the costs it incurs "in connection with the primary election." *Id.* § 173.001(a). For Primary Parties, access to the general election ballot is determined by the outcome of the primary election and the certification of its results. *Id.* § 172.122(a). The winners of each primary race are designated as the party's nominees, and the nominees are placed on the general election ballot. *Id.* §§ 172.116; 172.117; 172.120; 172.122.

In contrast to the Primary Parties, LPT nominates its candidates by convention. To be eligible for nomination at a convention, Convention Party candidates must file an application for nomination by convention. *Id.* § 181.031(a). Like the application for a place on the ballot for Primary

Party candidates, the application for nomination by convention contains information necessary to show that the candidate is eligible for public office, including the candidate's residency, how long the candidate has resided there, and whether the candidate has ever been convicted of a felony. *See id.* § 141.031; (Dkts. 92-10, 92-11). The deadline for the application for nomination by convention is the same as that for an application for a place on the ballot—that is, no later than 6 P.M. on the second Monday in December of the year before the election. Tex. Elec. Code §§ 172.023, 181.033.

Unlike the Primary Parties, a Convention Party is entitled to have candidates placed on the general election ballot only if one of its statewide candidates received votes equal to at least two percent of the total number of votes received by all candidates for that office within the last five years. *Id.* § 181.005(c). After meeting that requirement, the third party is considered a ballot-qualified Convention Party, entitled to have its candidates on the general election ballot. *See id.* LPT is a ballot-qualified Convention Party. (Pls.' Resp., Dkt. 92, at 6).

Starting in 2019, the Texas legislature began to impose additional requirements on Convention Party candidates through the passage of H.B. 2504, 86th Leg., Reg. Sess. (Tex. 2019), codified as Texas Election Code Section 141.041(a) (repealed). In 2021, the provision was amended and recodified as Texas Election Code Section 181.0311. S.B. 2093, 87th Leg., Reg. Sess. (Tex. 2021). The legislation requires Convention Party candidates to either: (a) pay a filing fee; or (b) submit a nomination petition that complies with Texas Election Code § 141.062 and is signed by a specified number of eligible voters. *See* Tex. Elec. Code § 181.0311.[2] This is the same requirement that is imposed upon Primary Party candidates. *See id.* § 172.021(b). The Secretary of State requires the filing fee be paid when candidates file the application for nomination by convention, which, as

---

[2] H.B. 2504, the original legislation, required the filing fee or petition for a "candidate nominated by convention" to be "placed on the ballot for the general election." H.B. 2504, 86th Leg., Reg. Sess. (Tex. 2019). In contrast, S.B. 2093 requires the filing fee or petition for a candidate "to be considered by nomination by convention." S.B. 2093, 87th Leg., Reg. Sess. (Tex. 2021).

explained above, is due the second Monday in December the year before the general election. (*See* Resp., Dkt. 92, at 15).

Plaintiffs additionally take issue with the recipient and permitted uses of the filing fee. Unlike Primary Party candidates, who pay filing fees directly to the parties themselves, Tex. Elec. Code §§ 172.021(b), 172.022, Convention Party candidates must file the filing fee or petition "to the secretary of state for a statewide or district office or the county judge for a county or precinct office." *Id.* § 181.0311(a). Most critically, while Primary Parties use the filing fees to help offset the costs of hosting a primary election, Convention Parties do not receive a corresponding rebate to offset the cost of their convention. Defendants contend that the difference is justified because the cost of running a convention pales in comparison to the cost of running a primary election in which millions of voters participate. (Mot. Summ. J., Dkt. 82, at 2–4).

### B. Procedural History

Plaintiffs filed suit on December 1, 2021, and amended their complaint on December 23, 2021. (Compl., Dkt. 1; Am. Compl., Dkt. 12). With their first amended complaint, Plaintiffs moved for a preliminary injunction to enjoin Section 181.0311 from taking effect. (Mot. Prelim. Inj., Dkt. 14). The Court denied the motion on March 1, 2022. (Order, Dkt. 35). In its order, the Court noted that the filing fee or petition in lieu of a filing fee requirement likely represents "reasonable and nondiscriminatory measures" comparable to those upheld by other courts. (*Id.* at 6). Because Defendants argued that Section 181.0311 advanced the state's interest of showing a modicum of support, the Court found that they were likely to establish "important, if not compelling, state interests" which was "all that is required to uphold this likely reasonable and nondiscriminatory election law." (*Id.* at 7–8). Plaintiffs also challenged Section 181.0311's requirement that third parties pay fees to the state without receiving funds back for its nominating process. (Am. Compl., Dkt. 12; Mot. Prelim. Inj., Dkt. 14, at 10). Here, the Court noted that Plaintiffs were unlikely to suffer

4

irreparable harm sufficient to warrant a preliminary injunction and denied the motion on that basis without addressing the likelihood of success on the merits. (Order, Dkt. 35, at 9–10).

In 2023, the Texas legislature passed S.B. 994, 88th Leg., Reg. Sess. (Tex. 2023). The law allows the Secretary of State to disqualify candidates for failure to pay the filing fee or submit a petition, a duty that was previously assigned to only the nominating parties. *Id.* The law also allows an executive committee to make a replacement nomination if a candidate is declared ineligible, but only if the replacement candidate submits a filing fee or a petition in lieu of a filing fee. *Id.* S.B. 994 is codified as Sections 145.003 and 145.036 of the Texas Election Code. Following S.B. 994's passage, Plaintiffs filed an amended complaint. (4th Am. Compl., Dkt. 61). The amended complaint maintains Plaintiffs' challenge to Section 181.0311 while also alleging that Sections 145.003 and 145.036 violate their First and Fourteenth Amendment rights by vesting the Texas Secretary of State with unilateral authority to disqualify candidates. (*Id.* at 18).

Defendants moved to dismiss on February 2, 2024. (Dkt. 64). The Court granted the motion in part and denied it in part on June 5, 2024. (Order, Dkt. 71). First, the Court dismissed Plaintiffs' freedom-of-speech claims because the laws "do not regulate how parties conduct their conventions"—instead, they merely create "a series of steps an individual must take to be put up for election at the convention." (*Id.* at 8). Second, the Court allowed Plaintiffs' freedom-of-association claim to move forward because it was "not yet in a position to fairly evaluate the burdens and justifications of the challenged provisions." (*Id.* at 12). Third, and finally, the Court declined to dismiss Plaintiffs' Equal Protection challenge because Section 181.0311 plausibly discriminates against Plaintiffs by failing to allow candidates' filing fees to pay for the LPT convention, and it is plausible that the regulation is unreasonable. (*Id.*).

On April 18, 2025, Defendants filed this motion for summary judgment, once again arguing there is no dispute of material fact that (1) the filing fee and petition in lieu of filing fee requirements

do not violate Plaintiffs' freedom of association; and (2) the difference in filing-fee recipient does not violate Plaintiffs' right to Equal Protection. (Mot. Summ. J., Dkt. 87).

## II. LEGAL STANDARD

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation marks and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the

motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin Alliance v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

#### A. Filing Fee Deadline

Defendants require LPT candidates to pay their filing fee or submit their petition in lieu of a filing fee before the LPT convention takes place. (Resp., Dkt. 92, at 13). LPT argues this requirement infringes upon its associational rights because it limits which candidates LPT may consider at the convention. (*Id.* at 14).

The Court disagrees. "In the Fifth Circuit, the proper test for [evaluating] the constitutionality of" ballot-access laws "is the *Anderson/Burdick* Test." *Meyer v. Texas*, No. H-10-3860, 2011 WL 1806524, at *3 (S.D. Tex. May 11, 2011) (citations omitted); *Richardson v. Tex. Sec'y of State*, 978 F.3d 220, 233–34 (5th Cir. 2020). Under *Anderson/Burdick*, "[a] court considering a challenge to a state election law must weigh the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments against the precise interests put forward by the State as justifications for the burden imposed by its rule." *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996) (citing *Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). "The rigorousness of the inquiry into the propriety of the state election law depends upon the extent to which the challenged regulation burdens First and Fourteenth Amendment rights." *Id.* (citing *Burdick*, 504 U.S. at 434). "If a court deems a voting law to be a 'severe' burden on the rights of voters, 'the regulation must be narrowly drawn to advance a state interest of compelling importance.'" *Richardson*, 978 F.3d at 233 n.26 (quoting *Burdick*, 504 U.S. at 434). "Conversely, if a court deems a voting law to be a 'reasonable, nondiscriminatory restriction[]'

on the rights of voters, 'the State's important regulatory interests are generally sufficient to justify the restrictions.'" *Id.*

The Court finds that the timing of the filing fee imposes only a minimal burden on Plaintiffs. First, all candidates who run for political office as a party's nominee through the state's current structure must submit an application and satisfy other preliminary requirements to be considered by that party for nomination. Tex. Elec. Code §§ 172.021–.024 (Primary Parties); 181.031–.032 (Convention Parties). The deadline for Convention Party candidates is also the same as that for Primary Party candidates. *See id.* §§ 172.023, 181.033. Therefore, the burden faced by LPT candidates is identical to the one faced by Primary Party candidates.

Additionally, Plaintiffs offer little evidence of their alleged burden. To illustrate their burden, Plaintiffs assert that the number of LPT candidates has dropped since the requirements have gone into effect. In 2018, LPT had 75 candidates who sought to be elected on the LPT ticket. (Dkt. 88-1, at 242). In 2020, the year H.B. 2504 went into effect, that number dropped to 74. (*Id.*). In 2022 and 2024, that number dropped further to 50. (*Id.*). While the Court acknowledges this is a decrease, it is a relatively small one. Moreover, it is unclear whether the decrease can be attributed to the new law. Fewer candidates may have chosen to run or been disqualified for other reasons. Regardless, LPT has still been able to nominate candidates throughout the state, given the small size of the party compared to the Primary Parties. Indeed, historical evidence shows that LPT candidates have had consistent access to the ballot for years. *Miller v. Nelson*, 116 F.4th 373, 381 (5th Cir. 2024).

Plaintiffs also argue that the length of time between when a Primary Party candidate pays the filing fee and when they appear on a ballot is much shorter than the length of time between when an LPT candidate pays the filing fee and when they appear on a ballot. In 2024, for example, the time between the filing fee deadline and the first time a Primary Party candidate appeared on the ballot was 71 days (December 11, 2023, to the first day of in-person primary voting February 20, 2024).

(Resp., Dkt. 92, at 15). In contrast, for LPT, the duration between the filing-fee deadline and the first time a candidate appeared on a ballot was 315 days (December 11, 2023, to first day of in-person general-election voting October 21, 2024). (*Id.*). According to Plaintiffs, this creates a discriminatory, severe burden.

However, this argument would have the Court compare the time between the payment deadline and the *general election* for LPT candidates to the time between the payment deadline and the *primary election* for Primary Party candidates. This is not a commensurate comparison because LPT candidates must seek LPT's nomination before appearing on the general election ballot, just like Primary Party candidates. And, looking at the time between when LPT candidates pay the filing fee and when they appear on the *convention ballot* for nomination, the time is roughly the same as that for Primary Party candidates because the LPT convention is held at around the same time as the primary elections. Tex. Elec. Code §§ 41.007, 181.061. Accordingly, the Court finds the burden of the filing-fee deadline to be minimal, and that this is a reasonable and nondiscriminatory restriction.

The Court also finds that the deadline is justified by the State's "important regulatory interests." *Burdick*, 504 U.S. at 434. The State has an interest in keeping nonserious candidates off the ballot, and the Fifth Circuit has already held that "Section 18.0311 serves that state interest." *Miller*, 116 F.4th at 382. Accordingly, the deadline passes constitutional muster.

Plaintiffs argue that nothing in the statute requires the fees to be paid before the LPT convention. (Resp., Dkt. 92, at 15). According to Plaintiffs, the statutory scheme treats the application for a place on the ballot, application for nomination by convention, and the payment of a filing fee as distinct requirements. (*Id.* at 14). Defendants seem to assume that the statutes require Convention Party candidates to file the application for nomination by convention and pay the filing fee at the same time, and because the deadline for an application by convention is no later than the deadline for an application for a place on the ballot, Tex. Elec. Code § 181.033, the filing-fee

deadline is also tied to the deadline for an application for a place on the ballot. This deadline falls on the second Monday in December of the year before the election, months before the LPT convention. *Id.* § 172.023. The Court agrees with Plaintiffs that this reading is not required by statute. However, as explained, Defendants' interpretation is nonetheless constitutionally permissible.

Plaintiffs' invocation of *In re Green Party of Tex.*, 630 S.W.3d 36 (Tex. 2020), is unavailing. In that case, the Texas Supreme Court held that Green Party candidates were improperly denied access to the ballot for failure to pay the filing fee. In doing so, the court concluded, "[T]he Secretary of State's advisory requiring payment of the filing fee at the time of filing an application is not required by, and indeed conflicts with, the Election Code." *Id.* at 39. However, that case dealt with Section 141.041, the predecessor statutory provision to 181.0311. That provision required a "candidate *nominated* by convention" to pay the filing fee or submit the petition in order to be "placed on the ballot for the general election." Tex. Elec. Code § 141.041 (repealed). Section 181.0311, on the other hand, amended the statute to require the filing fee or petition for a candidate "to be *considered* by nomination by convention." *Id.* § 181.0311. *In re Green Party of Texas* likely turns on the language of the previous statute, which suggested that only candidates who have already been nominated by convention must pay the fee. The current statute clarifies that candidates must pay the fee to be considered for nomination at all. *In re Green Party of Texas* therefore has no bearing here.

In sum, while the Court agrees that the Defendants' interpretation is not mandated by law, the Court finds no constitutional problem with the interpretation. Finding that there is no dispute of material fact as to whether the filing-fee deadline infringes upon Plaintiffs' associational rights, the Court will grant summary judgment for Defendants as to the constitutionality of the timing of the filing fee or petition in lieu of a filing fee.

**B. Filing Fee Recipient and Use**

Next, Defendants urge summary judgment on Plaintiffs' Equal Protection Clause challenge. For this claim, Plaintiffs argue that the laws violate their Equal Protection rights by providing that the Primary Parties' filing fees may offset the cost of primary elections, while the Convention Parties' filing fees go to the state general revenue fund. (Resp., Dkt. 92, at 16–17).

This argument is foreclosed by the Fifth Circuit's recent decision in *Miller v. Nelson*. There, the Fifth Circuit concluded that "Section 181.0311" does not "run afoul of the Equal Protection Clause" even though "[i]t requires that Minor Party candidates pay filing fees identical to those paid by Major Party candidates, but while the Major Parties retain the fees their candidates pay, the State retains the fees that Minor Party candidates pay." *Miller*, 116 F.4th at 382 (quoting the plaintiffs). In that case, the Fifth Circuit addressed the exact statutory provision that is at issue here.[3]

Plaintiffs argue that *Miller* does not apply because they bring an as-applied challenge, rather than a facial challenge like the *Miller* plaintiffs, and Section 181.0311 was barely briefed in *Miller*. (Resp., Dkt. 92, at 20). However, Plaintiffs do not explain why the distinction between the facial challenge in *Miller* and as-applied challenge here matters. The Fifth Circuit has concluded that "[w]hile rejection of a facial challenge to a statute does not preclude all as-applied attacks, surely it precludes one resting upon the same asserted principle of law." *In re Cao*, 619 F.3d 410, 430 (5th Cir. 2010) (quoting *Penry v. Lynaugh*, 492 U.S. 302, 354 (1989) (Scalia, J., dissenting)). Thus, although *Miller* left open the possibility of future as-applied challenges to the law, Plaintiffs must still explain why this case warrants a different conclusion from *Miller*. On this point, Plaintiffs asserted at the hearing that LPT, as a ballot-qualified Convention Party, has more statewide support and is much more established than the independent candidates who were the plaintiffs in *Miller*. (Min. Entry,

---

[3] Plaintiffs also challenge Texas Elections Code Sections 145.003 and 145.036. However, those provisions, which give the Texas Secretary of State the unilateral authority to disqualify candidates, merely provide the enforcement mechanism for Section 181.0311.

Dkt. 97). But the reasoning in *Miller* applies here too. In *Miller*, the Fifth Circuit upheld the law because "all party candidates that seek ballot access through a primary or nominating convention, regardless of party affiliation, must demonstrate that they are serious candidates with some public support" and "Section 181.0311 serves that state interest." *Miller*, 116 F.4th at 382. Therefore, *Miller's* upholding of the law, justified by the state's asserted interest in ballot integrity, applies to all political parties regardless of support. *Miller* precludes Plaintiffs' claims.

Even if *Miller* does not apply, Defendants' motion for summary judgment should be granted because Plaintiffs have no Equal Protection Clause claim. The Equal Protection Clause protects parties that are "[s]imilarly situated," which means that they are "in all relevant respects alike." *Tex. Ent. Ass'n, Inc. v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quoting *Nordinger v. Hahn*, 505 U.S. 1, 10 (1992)). As Defendants explain in their motion, "LPT is not similarly situated to the Major Parties because it has significantly less support statewide than do the Major Parties." (Mot., Dkt. 87, at 20). As a result, LPT does not "need to shoulder the heavy burdens of administering primary elections open to large segments of the voting population." (*Id.*). Although the LPT convention in 2024 cost $71,934.46, LPT does not contest that it cost the party only "$2,817.39 to pay for an auditorium, voting software, a parliamentarian, and registration and other supplies." (*Id.* at 22). This is the only cost strictly associated with nominating candidates. This cost is small compared to the cost of running a primary election with millions of voters. The remaining expenses of the LPT convention included lunches, socials, and other ancillary events, for which the Primary Parties may not receive a reimbursement either. (*See id.*); *see also* Tex. Elec. Code § 173.001(b) ("Expenses incurred in connection with a convention of a political party or other party activity that is not necessary for the holding of a primary election may not be paid with state funds."). The difference in support and corresponding expenses between the Primary Parties and LPT explains the legislature's decision to

direct the Primary Parties' filing fees to offset the cost of primary elections, while not allowing the same for LPT.

Plaintiffs offer no rebuttal to this argument. Instead, they merely point out the logical inconsistency of Defendants on the one hand claiming that the "challenged law is non-discriminatory because it treats all candidates equally" and on the other hand claiming that the parties are not similarly situated. (Resp. Dkt. 92, at 19). But this argument does not even attempt to explain why LPT is similarly situated to the Primary Parties for the purposes of an Equal Protection claim. And the Court finds no logistical inconsistency with Defendants wishing to standardize some requirements for all candidates, while still treating them differently under the law in other respects. Because Plaintiffs are not similarly situated to the Primary Parties, the Court will grant summary judgment as to their Equal Protection Clause claim.

### IV. CONCLUSION

For the reasons stated above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 87), is **GRANTED**. Defendants are entitled to summary judgment as to all of Plaintiffs' claims against them.

The Court will enter final judgment by separate order.

**SIGNED** on August 5, 2025.

ROBERT PITMAN
UNITED STATES DISTRICT JUDGE